1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WEINER BRODSKY KIDER PC**
Mitchel H. Kider, CA Bar No. 116479
Timothy P. Ofak (*Forthcoming Pro Hac Vice*)
Lindsay L. Buchanan (*Forthcoming Pro Hac Vice*)
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone:  202.628.2000
Facsimile:  202.628.2011
Email: kider@thewbkfirm.com
        ofak@thewbkfirm.com
        buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**
Joshua A. Rosenthal, California Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: 707.570.2200
Facsimile: 510.832.2945
Email: jrosenthal@mhlawcorp.com

*Attorneys for Defendant Broker Solutions, Inc.*
*d/b/a New American Funding*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MALOU TUTANES-LUSTER,<br><br>Plaintiff,<br><br>vs.<br><br>BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING,<br><br>Defendant. | Civil Action No. 3:17-cv-04384-JST<br><br>**DEFENDANT NEW AMERICAN FUNDING'S MOTION TO DISMISS**<br><br>**Date:** February 14, 2019<br>**Time:** 2:00 p.m. (JST)<br>**Courtroom:** 9<br>**District Judge:** Jon S. Tigar |

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, February 14, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9 (19th Floor) at the United States Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Broker Solutions, Inc. d/b/a New

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1   American Funding ("NAF") will and hereby does move to dismiss this Action pursuant to

2   Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be

3   granted.  NAF moves to dismiss on the grounds that the Complaint does not plead sufficient

4   facts supporting a cause of action under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA").

5        Accordingly, NAF respectfully requests that this Action be dismissed.  This motion is based

6   upon this Notice of Motion and Motion; the records, pleadings, and documents on file in this

7   action; and such further and additional evidence and arguments as may be presented at or before

8   the time of hearing on this motion.

9                    **STATEMENT OF ISSUES TO BE DECIDED**

10       Has the Relator stated a claim against NAF under the FCA based upon NAF's

11   participation in the Federal Housing Administration ("FHA") and Department of Veterans

12   Affairs ("VA") insurance programs where:

13   • The FCA requires violations to be pled with particularity under Fed. R. Civ. P. 9(b),
14     and the Complaint fails to provide factual support for the generalized allegations;

15   • A violation of the FCA requires a misrepresentation on the claim for payment itself,
16     and Relator has not identified any specific claim for payment;

17   • Relator proffers no specific allegations concerning VA loans;

18   • A reverse false claim violation under the FCA requires identification of a false claim
       or statement made to avoid paying a debt or returning property to the government,
19     and Relator does not identify any false claims or statements, nor does she identify any
       debt or property owed by NAF to FHA or VA;
20

21   • The FCA's heightened materiality element requires pleading that compliance with a
       statutory or regulatory requirement is material to the government's decision to pay a
22     claim and Relator has not pled that compliance with any identified regulation was
       material to the decision to pay FHA or VA claims; and
23

24   • The FCA scienter element requires a pleading of "double falsity"—that the defendant
       knew a representation was false, and that the false statement is material to a false
25     claim—and the Relator has not provided any factual allegations regarding either.

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION .............................................................................................................. 1

PROCEDURAL BACKGROUND ..................................................................................... 2

LEGAL STANDARD ........................................................................................................ 2

ARGUMENT ..................................................................................................................... 4

I.      RELATOR FAILS TO PLEAD A COGNIZABLE FCA CAUSE OF ACTION .......... 4

      A.      The Complaint Does Not Allege A Single Claim For Payment ........................ 6

      B.      Relator Fails to Identify Specific Representations Made False or Misleading .... 7

      C.      The Complaint Does Not Identify A Single False Certification ......................... 8

      D.      Relator Makes No Allegations of Reverse False Claims .................................... 9

      E.      The Complaint Does Not Allege Plausible "Scheme To Defraud" .................... 9

              a.     Relator's First Scheme Has Not Been Pled with Sufficient Particularity .... 11

              b.     Relator's Second Scheme Has Not Been Pled with Sufficient
Particularity .............................................................................................. 12

              c.     Relator's Third Scheme Has Not Been Plead with Sufficient
Particularity .............................................................................................. 12

              d.     Relator's Fourth Scheme Has Not Been Pled with Sufficient
Particularity .............................................................................................. 13

              e.     Relator's Fifth Scheme Has Not Been Pled with Sufficient Particularity ... 14

              f.      Relator's Sixth Scheme Has Not Been Pled with Sufficient Particularity ... 14

              g.     Relator's Seventh Scheme Has Not Been Pled with Sufficient
Particularity .............................................................................................. 15

      F.      Relator Proffers No Specific Allegations Concerning VA Loans .................... 15

      G.      The Complaint Fails to Allege Materiality ...................................................... 16

      H.      The Complaint Fails to Allege that NAF Knowingly Violated Provisions
They Knew Were Material to HUD's Payment Decision ................................. 20

              i.      The Complaint Fails to Demonstrate the Knowing or Reckless Violation

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

of Any FHA or VA Requirement ................................................................ 21

ii. The Complaint Does Not Plead That NAF Knew That Compliance With the Alleged Regulations Was Material to HUD's Payment Decision .......... 22

II.      RELATOR FAILS TO ALLEGE FRADULENT INDUCEMENT ............................. 23

CONCLUSION ......................................................................................................... 25

WEINER BRODSKY KIDER PC

A Professional Corporation formed in the District of Columbia

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Dental Ass'n v. Cigna Corp.,
  605 F.3d 1283 (11th Cir. 2010) ................................................................................ 8

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) ................................................................................... 2, 3, 4

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ........................................................................................ 2, 3

Borsellino v. Goldman Sachs Grp., Inc.,
  477 F.3d 502 (7th Cir. 2007) .................................................................................. 3

Cafasso v. Gen. Dynamics C4 Sys.,
  637 F.3d 1047 (9th Cir. 2011) ....................................................................... 2, 3, 8, 9

Camasta v. Jos. A. Bank Clothiers, Inc.,
  761 F.3d 732 (7th Cir. 2014) .................................................................................. 8

Carlson v. DynCorp Int'l LLC,
  657 F. App'x 168 (4th Cir. 2016) ...................................................................... 18, 23

Ebeid ex rel. United States v. Lungwitz,
  616 F.3d 993 (9th Cir. 2010) ....................................................................... 3, 4, 8, 17

Gonzalez v. Planned Parenthood of L.A.,
  759 F.3d 1112 (9th Cir. 2014) ................................................................................. 4

Gunderson v. ADM Inv. Servs., Inc.,
  85 F. Supp. 2d 892 (N.D. Iowa 2000) ................................................................... 13

In re Century Aluminum Co. Sec. Litig.,
  729 F.3d 1104 (9th Cir. 2013) ................................................................................. 4

Lesnik v. Se,
  No. 16-CV-01120, 2018 U.S. Dist. LEXIS 170373 (N.D. Cal. Oct. 1, 2018) ...................... 6

Li v. Kerry,
  710 F.3d 995 (9th Cir. 2013) .................................................................................. 2

Lizza v. Deutsche Bank Nat'l Trust Co.,
  1 F. Supp. 3d 1106 (D. Haw. 2014) ...................................................................... 13

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

*Safeco Ins. Co. of Am. v. Burr,*
  551 U.S. 47 (2007) ................................................................................................ 20

*Shalaby v. Bernzomatic,*
  No. 11cv68, 2011 U.S. Dist. LEXIS 102172 (S.D. Cal. Sept. 9, 2011) ................ 11

*United States ex rel. Armstrong-Young v. Carelink Hospice Servs.,*
  No. 15-cv-04095, 2018 U.S. Dist. LEXIS 170334 (N.D. Cal. Oct. 1, 2018) ........... 5

*United States ex rel. Atkins v. McInteer,*
  470 F.3d 1350 (11th Cir. 2006) .............................................................................. 3

*United States ex rel. Calderon v. Carrington Mortg. Servs., LLC,*
  No. 16-cv-00920, 2018 U.S. Dist. LEXIS 5087 (S.D. Ind. Jan. 10, 2018) ...... 10, 11

*United States ex rel. Campie v. Gilead Scis.,*
  862 F.3d 890 (9th Cir. 2017) ........................................................................... 23, 24

*United States ex rel. Chang v. Acad. Mortg. Corp.,*
  16-cv-2120, 2018 U.S. Dist. LEXIS 70096 (N.D. Cal. Apr. 25, 2018) ................. 24

*United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,*
  290 F.3d 1301 (11th Cir. 2002) ........................................................................... 3, 6

*United States ex rel. Creighton v. Beauty Basics Inc.,*
  No. 2:13-cv-1989, 2016 U.S. Dist. LEXIS 83573 (N.D. Ala. 2016) ................. 8, 23

*United States ex rel. Dresser v. Qualium Corp.,*
  No. 5:12-cv-01745, 2016 U.S. Dist. LEXIS 93248 (N.D. Cal. July 18, 2016) ...... 17

*United States ex rel. Hansen v. Deming Hosp. Corp.,*
  992 F. Supp. 2d 1137 (D.N.M. 2013) ................................................................... 23

*United States. ex rel. Hendow v. Univ. of Phoenix,*
  461 F.3d 1166 (9th Cir. 2006) ........................................................................... 4, 24

*United States ex rel. Hopper v. Anton,*
  91 F.3d 1261 (9th Cir. 1996) ................................................................................ 23

*United States ex rel. Jajdelski v. Kaplan, Inc.,*
  517 F. App'x 534 (9th Cir. 2013) ........................................................................... 3

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency,*
  530 F.3d 980 (D.C. Cir. 2008) .............................................................................. 20

*United States ex rel. Kelly v. Serco, Inc.,*
  846 F.3d 325 (9th Cir. 2017) .........................................................................*passim*

*United States ex rel. Lee v. Corinthian Colls.,*
  655 F.3d 984 (9th Cir. 2011) ........................................................................... 21, 22

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

*United States ex rel. Marcus v. Hess,*
 317 U.S. 537 (1943)................................................................................24

*United States ex rel. Marlar v. BWXT Y-12, LLC,*
 525 F.3d 439 (6th Cir. 2008)....................................................................3

*United States ex rel. Mateski v. Raytheon Co.,*
 No. 17-56320, 2018 U.S. App. LEXIS 34796 (9th Cir. Dec. 11, 2018)...................................5

*United States ex rel. Purcell v. MWI Corp.,*
 807 F.3d 281 (D.C. Cir. 2015)................................................................20

*United States ex rel. Rose v. Stephens Inst.,*
 No. 17-15111, 2018 U.S. App. LEXIS 33176 (9th Cir. Nov. 26, 2018) ........................*passim*

*United States ex rel. Rostholder v. Omnicare, Inc.,*
 745 F.3d 694 (4th Cir. 2014)..................................................................19

*United States ex rel. Streck v. Allergan, Inc.,*
 894 F. Supp. 2d 584 (E.D. Pa. 2012) ........................................................20

*United States ex rel. Zwirn v. ADT Sec. Servs.,*
 No. 10-cv-2639, 2014 U.S. Dist. LEXIS 88841 (D.N.J. June 30, 2014) ..............................18

*United States v. Kaiser Found. Health Plan, Inc.,*
 No. 12-cv-03896, 2013 U.S. Dist. LEXIS 122859 (N.D. Cal. Aug. 28, 2013) .......................9

*United States v. Kitsap Physicians Serv.,*
 314 F.3d 995 (9th Cir. 2010)....................................................................6

*United States v. McNinch,*
 356 U.S. 595 (1958)............................................................................6, 7

*United States v. Quicken Loans, Inc.,*
 239 F. Supp. 3d 1014 (E.D. Mich. 2017).................................................15

*United States v. Reunion Mortg., Inc.,*
 No. 13-cv-2340, 2013 U.S. Dist. LEXIS 158505 (N.D. Cal. Nov. 5, 2013) .......................24

*United States v. Rivera,*
 55 F.3d 703 (1st Cir. 1995)....................................................................18

*United States v. Safran Grp., S.A.,*
 No. 15-CV-00746, 2017 U.S. Dist. LEXIS 8408 (N.D. Cal. Jan. 19, 2017) ....................4, 18

*United States v. San Bernardino Mts. Cmty. Hosp. Dist.,*
 No. 17-00002, 2018 U.S. Dist. LEXIS 166889 (C.D. Cal. Sept. 27, 2018) ..........................5

*United States v. Sanford-Brown, Ltd.,*
 788 F.3d 696 (7th Cir. 2015)....................................................................5

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

*United States v. Sanford-Brown, Ltd.*,
    840 F.3d 445 (7th Cir. 2016)..........................................................................5

*United States v. Sci. Applications Int'l Corp.*,
    626 F.3d 1257 (D.C. Cir. 2010) .........................................................17, 20

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016).......................................................................3

*United States v. United States Bank, N.A.*,
    No. 3:13-CV-704, 2015 U.S. Dist. LEXIS 62175 (N.D. Ohio May 12, 2015).........................9

*Universal Health Services., Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016) .......................................................................*passim*

*Urquilla Diaz v. Kaplan Univ.*,
    780 F.3d 1039 (11th Cir. 2015)..................................................................20

**Statutes, Regulations and Rules**

2 C.F.R. § 2424.1110 ...........................................................................19

24 C.F.R. § 25.6 ...................................................................................19

24 C.F.R. § 25.6(j) ...............................................................................19

24 C.F.R. § 30.35 .................................................................................19

12 U.S.C. § 1708(c) .............................................................................19

12 U.S.C. § 1735f-14 ...........................................................................19

31 U.S.C. § 3729 (a)(1)(A) ...............................................................4, 10

31 U.S.C. § 3729 (a)(1)(B) ...............................................................4, 10

31 U.S.C. § 3729(a)(1)(G) .................................................................9, 10

31 U.S.C. § 3729(b)(1) ..........................................................................20

Fed. R. Civ. P. 9(b) .......................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .....................................................................2, 23

WEINER BRODSKY KIDER PC

A Professional Corporation formed in the District of Columbia

**INTRODUCTION**

Relator alleges that Defendants Broker Solutions, Inc. d/b/a New American Funding ("NAF") violated the FCA in connection with NAF's participation in the Federal Housing Administration's ("FHA") mortgage insurance program and the Department of Veterans Affairs' ("VA") mortgage guaranty program, but falls woefully short of the FCA's stringent pleading standards. The Complaint fails to allege the submission of a single claim for payment to the government, let alone a false claim—which is the "*sine qua non*" of an FCA action. *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017). The Complaint further fails to allege the submission of any false or fraudulent statement by NAF. These deficiencies alone defeat Relator's claims.

While the Complaint makes sordid allegations regarding statements allegedly made by NAF employees and alleges an undifferentiated morass of garden-variety regulatory violations, Relator fails to tie such regulatory violations to the submission of any actual claims for payment to the U.S. Department of Housing and Urban Development ("HUD") or VA.[1] These basic deficiencies fail to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which apply here.

Perhaps most damaging to Relator's case is the Supreme Court's seminal decision in *Universal Health Services., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), which reinforces the "rigorous" standards for pleading materiality and scienter under the FCA. In *Escobar,* the Court emphasized that in implied false certification cases "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services, but knowingly fails to disclose . . . noncompliance with a statutory, regulatory, or contractual requirement[,] . . . render[ing] those representations misleading." *Id.* at 1995. This standard must be satisfied in the initial pleading and is fatal to the Complaint here, which does not identify a single claim made to the government, let alone any statement or representation contained on any claim submitted to HUD or VA.

---

[1] FHA is a part of HUD. *See* Compl. ¶ 7.

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1        Boiled down, the Complaint alleges numerous vague and inconsequential statements,

2  from a handful of employees, regarding independent cases of alleged regulatory non-compliance

3  (or the mere mention of non-compliance).  These allegations, however, have no connection to

4  any loans having gone into default, much less to any loans for which claims for FHA insurance

5  or VA guarantees have been filed.  Rule 9(b) was designed to prevent such vague and

6  implausible pleadings.  Because Relator fails to meet the *plausibility* standard required under

7  Rule 12(b)(6), the Complaint fails to state a claim and must be dismissed.

8                      **PROCEDURAL BACKGROUND**

9        Relator filed the instant *qui tam* Complaint under seal on August 2, 2017.  Dkt. 1.  The

10  United States, having had 11 months to investigate the allegations in the Complaint, declined to

11  intervene in this action on July 13, 2018.  *See* Dkt. 13.  The Complaint was subsequently

12  unsealed on August 6, 2018.  On December 21, 2018, Relator filed a Notice of Voluntary

13  Dismissal Without Prejudice as to Defendant Patty Arvielo.  *See* Dkt. 39.  NAF now files this

14  Motion to Dismiss the *qui tam* Complaint contemporaneously with its Motion to Transfer Venue

15  to the Central District of California.

16                      **LEGAL STANDARD**

17        Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if

18  the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."

19  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "The plausibility standard requires more

20  than the sheer possibility or conceivability that a defendant has acted unlawfully.  'Where a

21  complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

22  line between possibility and plausibility of entitlement to relief.'"  *Li v. Kerry*, 710 F.3d 995, 999

23  (9th Cir. 2013) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009)) (citations omitted).

24        "The heightened pleading standard of Rule 9(b) governs FCA claims."  *Cafasso v. Gen.*

25  *Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011).  Rule 9(b) provides that "[i]n alleging

26  fraud or mistake, a party must state with particularity the circumstances constituting fraud or

27  mistake."  Fed. R. Civ. P. 9(b).  "To satisfy Rule 9(b), a pleading must identify 'the who, what,

28

1    when, where, and how of the misconduct charged,' as well as 'what is false or misleading about

2    the purportedly fraudulent statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (*quoting*

3    *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  For instance,

4    particular details and reliable indicia have been properly alleged when a relator "'allege[d] his

5    first-hand experience of the scheme unfolding' and 'describe[d] *in detail, including the date,*

6    *place, and participants*,' [of] meetings during which the [fraudulent] scheme was revealed."

7    *United States ex rel. Jajdelski v. Kaplan, Inc.*, 517 F. App'x 534, 536 (9th Cir. 2013) (emphasis

8    added).  Broad and conclusory allegations that lack detail or facts in support are not sufficient.

9    *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016).

10          Rule 9(b)'s heightened pleading standard exists to ensure that fraud claims are

11   "responsible and supported, rather than defamatory and extortionate." *Borsellino v. Goldman*

12   *Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citation omitted); *see also United States ex*

13   *rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008) (explaining that Rule 9(b) is

14   meant to protect defendants from "spurious charges of immoral and fraudulent behavior").   As

15   the Eleventh Circuit explained in *United States ex rel. Atkins v. McInteer*:

16          When a plaintiff does not specifically plead the minimum elements of [his]
            allegation, it enables [him] to learn the complaint's bare essentials through
17          discovery and may needlessly harm a defendant's goodwill and reputation by
            bringing a suit that is, at best, missing some of its core underpinnings, and at worst,
18          . . . baseless allegations used to extract settlements.

19   470 F.3d 1350, 1359 (11th Cir. 2006) (citation omitted).  A relator cannot file suit and hope to

20   "learn the complaint's bare essentials through discovery." *United States ex rel. Clausen v. Lab.*

21   *Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002).

22          "Because Rule 8(a) requires the pleading of a plausible claim, . . . claims of fraud or

23   mistake—including FCA claims—must, in addition to pleading with particularity, also plead

24   plausible allegations." *Cafasso*, 637 F.3d at 1055 (citing *Iqbal*, 556 U.S. at 678).  That is, the

25   pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal

26   evidence of [the misconduct alleged]." *Twombly*, 550 U.S. at 556.  Moreover, while courts must

27   accept the plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in their

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

3

1    favor, the court need not accept unsupported legal conclusions as true.  *Iqbal*, 556 U.S. at 678.

2    "Threadbare recitals" of nothing more than the elements of a claim, "supported by mere

3    conclusory statements," are not enough to state a claim and warrant dismissal.  *Id*.[2]

4    ## ARGUMENT

5    ## I.    RELATOR FAILS TO PLEAD A COGNIZABLE FCA CAUSE OF ACTION

6    To state a claim under the "presentment" or "false statement" provisions of the FCA, 31

7    U.S.C. §§ 3729(a)(1)(A)-(B), a relator must sufficiently plead:  "(1) a false statement or

8    fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the

9    government to pay out money or forfeit moneys due."  *United States v. Safran Grp., S.A.*, No.

10   15-CV-00746, 2017 U.S. Dist. LEXIS 8408, at *14-15 (N.D. Cal. Jan. 19, 2017) (*quoting United

11   States. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).  Where

12   allegations that a defendant violated the FCA are "merely *possible* rather than plausible," this

13   standard is not met.  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir.

14   2014) (emphasis in original) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104,

15   1108 (9th Cir. 2013)).

16   In *Escobar*, the Supreme Court set forth a heightened standard for pleading an implied

17   false certification claim under the FCA.  In order for a false certification claim to survive, at a

18   minimum:  (1) the claim for payment must make specific representations about goods or services

19   provided; and (2) a failure to disclose non-compliance with some statutory, regulatory, or

20   contractual provision must make one of those specific representations misleading.  *Escobar*, 136

21   S. Ct. at 1995.  This two-part test was expressly adopted by the Ninth Circuit in *United States ex*

22   *rel. Rose v. Stephens Inst.,* No. 17-15111, 2018 U.S. App. LEXIS 33176, at *13 (9th Cir. Nov.

23   26, 2018) ("We conclude, therefore, that Relators must satisfy *Escobar*'s two conditions to prove

24   falsity, unless and until our court, en banc, interprets *Escobar* differently.").[3]

---

25   [2] Many of the paragraphs in the Complaint are incorrectly numbered.  On page 52, the numbering
26   goes from ¶ 484 to ¶ 457.  In order to avoid any confusion, citations to ¶ 457 through ¶ 484 will
     also include the page number associated with the paragraph being cited.

27   [3] The Ninth Circuit in *Rose* also held that *Ebeid* had been overturned by recent Ninth Circuit
28   decisions requiring the application of *Escobar's* two factor test to show falsity in FCA cases.

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1    *Escobar* also emphasized that the materiality and scienter requirements are "rigorous,"

2    and must be complied with at the pleading stage. *Id*. at 2002, 2004 n.6. The Ninth Circuit has

3    expressly adopted this view as well, rejecting FCA allegations "as a matter of law" where there

4    were no specific representations on the claim form at issue. *Serco*, 846 F.3d at 332 ("[T]here is

5    no evidence that Serco's public vouchers made any specific representations about Serco's

6    performance."); *accord United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016)

7    (affirming dismissal of claims under *Escobar* because relator "offered no evidence that

8    defendant Sanford-Brown College (SBC) made any representations at all in connection with its

9    claims for payment, much less false or misleading representations").[4]

10    District courts in the Ninth Circuit have consistently dismissed FCA complaints since

11    applying the more stringent FCA pleading requirements found in *Escobar* and articulated in

12    *Rose*. *See United States ex rel. Mateski v. Raytheon Co.*, No. 17-56320, 2018 U.S. App. LEXIS

13    34796, at *2-3 (9th Cir. Dec. 11, 2018) (affirming dismissal, finding: (1) with respect to

14    *Escobar's* materiality requirement, a lack of particularity regarding the false claims; and (2) with

15    respect to Rule 9(b), a failure to plead the "what," "when," and "how" of the allegedly false

16    claims); *United States ex rel. Armstrong-Young v. Carelink Hospice Servs.*, No. 15-cv-04095,

17    2018 U.S. Dist. LEXIS 170334, at *5-10 (N.D. Cal. Oct. 1, 2018) (ordering dismissal, finding

18    with respect to Rule 9(b), a lack of particularity regarding which submitted "claims" were

19    "impliedly" false and insufficient details regarding the alleged fraudulent scheme); *United States

20    v. San Bernardino Mts. Cmty. Hosp. Dist.*, No. 17-00002, 2018 U.S. Dist. LEXIS 166889, at

21    *20-27 (C.D. Cal. Sept. 27, 2018) (ordering dismissal, finding, with respect to *Escobar's*

22    materiality requirement, that "False Claims Act plaintiffs must also plead their claims with

23

24    *Rose*, 2018 U.S. App. LEXIS 33176, at *1-3.

25    [4] The Seventh Circuit's original opinion reached the same conclusion after rejecting outright the
       implied certification theory of liability under the FCA. *See United States v. Sanford-Brown,*

26    *Ltd.*, 788 F.3d 696 (7th Cir. 2015). After remand by the Supreme Court subsequent to its
       decision in *Escobar*, the Seventh Circuit issued a second opinion, leaving all of its previous

27    opinion in place except for section IV(B)(2), which the new opinion replaced. *Sanford-Brown*,
       840 F.3d at 447.

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1  plausibility and particularity…by…pleading facts to support allegations of materiality;" and

2  explaining that, with regard to Rule 9(b), Relators must plead "the facts upon which [a] belief [of

3  scienter] is founded" to be entitled to relief under the FCA.

4          Accordingly, the Complaint here must plead with particularity that:  (1) NAF submitted a

5  claim for payment; (2) the claim contained specific representations about goods or services

6  provided, (3) those representations are misleading due to a failure to disclose noncompliance

7  with statutory, regulatory, or contractual requirements; (4) those requirements that were violated

8  were material to the government's payment decision; (5) NAF *knowingly* violated requirements

9  that they *knew* were material to the government's payment decision; and (6) the government paid

10  out money as a result.  The Complaint does not meet these requirements.

11          A.     <u>The Complaint Does Not Allege A Single Claim For Payment</u>

12          The FCA imposes liability only upon a fraudulent "claim for payment," which the Ninth

13  Circuit has called the "*sine qua non* of an FCA violation." *Serco,* 846 F.3d at 333.  It is not

14  enough for a relator "to describe a private scheme in detail but then allege simply and without

15  any stated reason for his belief that claims requesting illegal payments must have been

16  submitted[.]" *Clausen*, 290 F.3d at 1311.  The relator's complaint "must show an actual false

17  claim for payment being made to the Government." *Lesnik v. Se*, No. 16-CV-01120, 2018 U.S.

18  Dist. LEXIS 170373, at *24 (N.D. Cal. Oct. 1, 2018) (granting motion to dismiss FCA claims)

19  (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2010)) (internal

20  quotation marks omitted).

21          The Complaint, however, does not identify a single claim NAF made to the government

22  for payment.  Relator alleges that NAF "falsely certified to the government that [certain] loans

23  were eligible for government insurance" and that such representations were "material in inducing

24  the government to extend insurance coverage to loans endorsed by NAF and to pay claims on

25  government loans that had been endorsed by NAF."  Compl. ¶¶ 32, 488.  But an application for

26  FHA insurance or a VA mortgage guaranty is not a "claim" within the meaning of the FCA.

27  *United States v. McNinch*, 356 U.S. 595, 598-99 (1958).  "In agreeing to insure a home

28

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

1   improvement loan the FHA disburses no funds nor does it otherwise offer immediate financial

2   detriment.  It simply contracts, for a premium, to reimburse the lending institution in the event of

3   future default, if any." *Id.* at 599.  Thus, loan-level certifications made on applications for FHA

4   insurance and VA guarantees are not actionable under the FCA.

5        Here, Relator does not identify a single claim for payment.  Relator's reference to a single

6   foreclosure on a property within the District in the Jurisdiction and Venue section of the

7   Complaint is also unavailing.  Compl. ¶ 47.  The Complaint does not indicate any wrongdoing

8   committed by NAF with respect to the origination, underwriting, or quality control related to the

9   foreclosed loan or even whether NAF submitted a claim to the government in connection with

10  that loan.

11       Relator merely states vaguely and generally that, "loans endorsed by [NAF] caused the

12  government to sustain claims against it."  Compl. ¶ 548.  Relator asserts that NAF "triggered

13  claims against the government through the government payments of losses on any of NAF's

14  loans."  Compl. ¶ 555.  However, these alleged claims are not described in any detail; nor does

15  Relator assert that NAF submitted any claims.  No information is provided as to who submitted

16  the claims or when the claims were submitted.  Moreover, the Complaint does not allege that the

17  claims made specific representations about either FHA or VA loans.  These vague and general

18  statements cannot support Relator's FCA claims and her Complaint should be dismissed.

19       **B.    Relator Fails to Identify Specific Representations Made False or Misleading**

20       Even if Relator had alleged a claim for payment, which she does not, a false statement on

21  the application for FHA insurance or a VA guarantee will not give rise to a false claim upon

22  default.  *Escobar* and *Rose* only allow for implied certification as a viable theory of liability

23  where two conditions are satisfied:  (1) "the claim does not merely request payment, but also

24  makes a specific representation about the goods or services provided;" and (2) the failure to

25  disclose noncompliance with material requirements makes those specific representations

26  somehow misleading or false.  *Escobar*, 136 S. Ct. at 2000-01.  And the Ninth Circuit, relying on

27  *Escobar*, has ruled that liability under the FCA is attached *only* to specific representations that

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

are on the *actual claim for payment*, and not to any "underlying fraudulent activity." *Serco*, 846 F.3d at 332-33 (finding no misrepresentation where the claims for payment contained no specific representation regarding services provided relating to the alleged regulatory violation).

Relator does not cite to any claim form in the Complaint, and for good reason. *Escobar*, *Rose*, and *Serco* require that the *claim form itself* contain a representation that is allegedly misleading or false. *Escobar*, 136 S. Ct. at 2000-01; *Rose*, 2018 U.S. App. LEXIS 33176, at *13-14; *Serco*, 846 F.3d at 332-33. Relator does not allege that NAF made any representation on a claim form for payment in connection with any FHA or VA loan. This is fatal to Relator's claims, and the Complaint should be dismissed.

### C. The Complaint Does Not Identify A Single False Certification

Even assuming that FCA liability could be premised on the initial, annual, or loan-level certifications alone, which it cannot, Relator has not sufficiently pled that any certification was false with the specificity required by Rule 9(b).[5] "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (quoting *Ebeid*, 616 F.3d at 998). "The '<u>precise</u> statement, document, or misrepresentation,' as well as its contents, must be alleged; a laconic allegation of the <u>existence</u> of a misrepresentation will not do." *United States ex rel. Creighton v. Beauty Basics Inc.*, No. 2:13-cv-1989, 2016 U.S. Dist. LEXIS 83573, at *8 (N.D. Ala. 2016) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)) (emphasis in original) (internal citation omitted). In other words, Rule 9(b) requires the relator to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [relator]." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

---

[5] The certifications are also too broad to establish falsity for FCA liability. *See Escobar*, 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. **The False Claims Act does not adopt such an extraordinarily expansive view of liability.**" (emphasis added)).

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Relator's vague and general allegations here are not sufficient to satisfy this standard. Relator does not identify any specific certification containing a false or fraudulent statement, nor any individual at NAF who made such a statement, much less when and where it was made. Relator does not even allege that any claim was made for payment on any specific loan tied to a specific certification. The Complaint as a whole fails to state a claim upon which relief may be granted, and should be dismissed.

### D.   Relator Makes No Allegations of Reverse False Claims

Relator makes no factual allegations to support her third cause of action for reverse false claims under 31 U.S.C. § 3729(a)(1)(G).  *See Compl.* ¶¶ 577-81.  "[A]llegations of 'reverse false claims' require identification of a 'false claim' or 'statement' made to avoid paying a debt or returning property to the United States."  *United States v. Kaiser Found. Health Plan, Inc.*, No. 12-cv-03896, 2013 U.S. Dist. LEXIS 122859, at *20 n.6 (N.D. Cal. Aug. 28, 2013) (citing *Cafasso*, 637 F.3d at 1056).  Relator fails to identify any existing legal obligation to pay or transmit money or property, which NAF owes to the government.  *See Cafasso*, 637 F.3d at 1056 (affirming dismissal of reverse FCA claim because there was no allegation that the defendant "falsely asserted an entitlement to obtain or retain government money or property").  No such obligation has been alleged here.  Nor does the Complaint allege any false claim or statement tied to any debt or property owed to the government.  *See United States v. United States Bank*, *N.A.*, No. 3:13-CV-704, 2015 U.S. Dist. LEXIS 62175, at *19-20 (N.D. Ohio May 12, 2015) (granting dismissal and finding that the complaint did not allege any obligation the defendant loan originator owed HUD at the time it made the allegedly false claim).  Accordingly, Relator's third cause of action must be dismissed.

### E.   The Complaint Does Not Allege a Plausible "Scheme To Defraud"

In support of her overarching claim that NAF conducted a "national scheme" to defraud HUD and VA through deliberately and recklessly approving ineligible loans, Relator only broadly and generally alleges that "NAF has engaged in a regular policy and practice of reckless origination and underwriting of its government loans and falsely certified to the government that

those loans were eligible for government insurance." Compl. ¶ 224.  Remarkable is the lack of factual content regarding how the alleged national scheme was implemented and perpetuated. Relator does not cite to any formal policies and procedures, meetings, interoffice memos, or teleconferences.   Relator fails to provide any facts in support of the alleged national scheme to defraud HUD that was purportedly pervasive throughout NAF.

Relator's Complaint also fails to define the FCA theories of liability found in her three causes of action; instead, she bundles together and alleges seven fraudulent schemes purportedly committed by NAF in violation of three different provisions of the FCA.  Relator alleges that NAF violated 31 U.S.C. §§ 3729(a)(1)(A), (B), and (G) by engaging in the following seven schemes:

1.  NAF falsely represented to the government that it was not paying employees performing underwriting duties on a commissions basis (Compl. ¶¶ 231-58);

2.  NAF falsely represented to the government that it did not create a management exception policy under which NAF overrode government loan requirements and encouraged employees to do so as well (Compl. ¶¶ 259-351);

3.  NAF falsely certified to the government that it was performing accurate appraisals of properties (Compl. ¶¶ 352-82);

4.  NAF falsely represented to the government that it was not manipulating variables in the AUS/Total system in order to endorse FHA loans for unqualified buyers (Compl. ¶¶ 383-404);

5.  NAF improperly inflated borrowers' income using unallowable exceptions to income calculations (Compl. ¶¶ 405-27);

6.  NAF deliberately excluded debt obligation in order to obtain approvals (Compl. ¶¶ 428-65); and

7.  NAF falsely certified to the government that it maintained a sufficient quality control process (Compl. p. 50-52 ¶¶ 466-84).

These seven schemes, however, have not been pled with sufficient particularity to satisfy *Escobar*, *Rose*, and the heightened 9(b) pleading standard applicable to FCA claims.  Here, Relator "never connects a single loan to a specific fraudulent underwriting practice performed by a specific individual" and never connects an FHA or VA mortgage "obtained through a fraudulent practice to a claim for payment on a defaulted loan made by" NAF.  *United States ex*

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1  *rel. Calderon v. Carrington Mortg. Servs., LLC*, No. 16-cv-00920, 2018 U.S. Dist. LEXIS 5087,

2  at *15 (S.D. Ind. Jan. 10, 2018) (granting mortgage company's motion to dismiss relator's FCA

3  complaint).  Nor does Relator provide any example of individual NAF underwriters acting with

4  the requisite scienter in certifying specific mortgages as eligible when they were, in fact, in

5  violation of FHA or VA requirements, and that these same mortgages defaulted and led to

6  specific claims for payment made by NAF.  *See id.* at *18-19.  For the reasons below, each

7  alleged scheme should be dismissed as a matter of law.

8  ### a.  Relator's First Scheme Has Not Been Pled with Sufficient Particularity

9  Pleading fraud to satisfy Rule 9(b) in connection with FCA claims requires more than

10  mere conjecture, which is all Relator offers in support of her first alleged scheme.  The

11  Complaint claims that NAF "knowingly compensated its employees who performed

12  underwriting activities on governmental files on a commission basis in order to get as many files

13  approved as possible, even when those files did not meet the government's requirements."

14  Compl. ¶ 237.

15  Relator, however, does not identify the specific government underwriting "requirements"

16  violated or tie them to any specific actions by underwriters, which led to claims being paid by

17  the government on any FHA or VA loans.  Moreover, Relator's cryptic mention of an email she

18  received (Compl. ¶ 251) and reference to unsubstantiated hearsay (Compl. ¶ 252-53) by another

19  employee are too vague to satisfy the heightened pleading standard.  *Shalaby v. Bernzomatic*,

20  No. 11cv68, 2011 U.S. Dist. LEXIS 102172, at *18-19 (S.D. Cal. Sept. 9, 2011) (granting

21  dismissal with leave to amend, citing concerns that Plaintiff's allegations were based solely on

22  unsubstantiated hearsay).

23  Moreover, Relator does not tie these conclusory allegations to any actual claims for

24  payment, which must be pled under *Escobar* and *Rose*.  Because Relator fails to plead her first

25  alleged scheme with the requisite particularity under Rule 9(b), her FCA claims pertaining to this

26  scheme should be dismissed.

27

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

b. <u>**Relator's Second Scheme Has Not Been Pled with Sufficient Particularity**</u>

Relator's second scheme suffers the same Rule 9(b) and FCA pleading deficiencies as her first.  Relator claims that "[d]espite being required to comply with all government requirements, NAF instead created a management override process under which management would dictate that loans being [*sic*] endorsed even if they did not meet the government's requirements."  Compl. ¶ 262.  Relator does not, however, specify which "government requirements" were violated.  This form of general pleading is exactly the type that *Escobar* prohibits.  *See Escobar,* 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.  ***The False Claims Act does not adopt such an extraordinarily expansive view of liability****.")* (emphasis added).

Moreover, while Relator makes a number of general allegations about how underwriting decisions were overridden (*see* Compl. ¶¶ 259-351), she fails to provide any specific examples of any FHA or VA loans that were improperly underwritten as a result of this scheme and for which NAF submitted a claim for payment.   The "who, what, when, where, and how" are missing.  Simply alleging a general scheme without any particular details and without any specific false claims for payment is not enough.  Relator's claims pertaining to the second alleged scheme should therefore be dismissed.

c. <u>**Relator's Third Scheme Has Not Been Pled with Sufficient Particularity**</u>

Relator's third scheme—that NAF would "falsely inflate the value of the collateral which NAF did through a value appeal process"—has not been pled with sufficient particularity required under Rule 9(b).  Compl. ¶ 354.  Relator argues that "NAF pressured appraisers with 'value appeals' whereby they pressured the appraisers to come up with an inflated property value to enable the loan to go through."  Compl. ¶ 365.  The Complaint, however, does not allege that NAF had authority or control over these third party appraisers.

Nor does Relator allege firsthand knowledge of how these appraisers ultimately made

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1   their value determinations.  Relator does not even identify an appraiser and/or an appraisal

2   affected by this scheme, let alone a fraudulent claim for payment submitted by NAF as a result

3   of the scheme.  Speculation and innuendo cannot satisfy Rule 9(b)'s particularity requirements.

4   *See Lizza v. Deutsche Bank Nat'l Trust Co.*, 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014)

5   ("[S]peculation and conclusory allegations fall short of the specificity required by Rule 9(b).");

6   *Gunderson v. ADM Inv. Servs., Inc.*, 85 F. Supp. 2d 892, 904 (N.D. Iowa 2000) ("Rule 9(b)[] …

7   is not intended to allow plaintiffs to 'base claims of fraud on speculation and conclusory

8   allegations...'").  Accordingly, claims related to this scheme should be dismissed.

9            **d.   Relator's Fourth Scheme Has Not Been Pled with Sufficient Particularity**

10         Relator's fourth scheme—that "NAF instructed employees to systemically manipulate

11   the data that was entered into NAF's AUS system to determine variables that would lead to an

12   approval"—also fails for a lack of particularity.  Compl. ¶ 383.  Relator offers only one alleged

13   example to support her fourth scheme.  She claims that, "on NAF's internal File No.

14   120016109350, an FHA file, the AUS was run 22 times after a Decline so that the Loan Officer

15   Travis Dungca could reverse engineer and find out what data needed [sic] be made up to get an

16   approval using incorrect asset information to get the file approved" and used "incorrect

17   information to get the file approved."  Compl. ¶¶ 401-02.

18         Relator, however fails to allege which FHA requirements are violated simply by the

19   submission of multiple reports into the AUS system by either loan officers or underwriters.  It is

20   entirely plausible that these multiple reports were submitted for reasons other than to determine

21   qualifying data point values.  Relator's allegations amount to nothing more than her subjective

22   disagreement on the most prudent course of action, which is not a sufficient basis for a fraud

23   claim.

24         Moreover, Relator fails to plead the kind of information necessary to substantiate a

25   fraudulent FCA claim.  For instance, Relator does not allege (1) what incorrect information was

26   used for this loan, (2) the underwriter assigned to the loan, (3) whether the loan was manually

27   underwritten, (4) whether a claim was made to FHA on this loan, or (4) who made the claim.

28

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1   This lack of specificity cannot satisfy Rule 9(b).  Therefore, Relator's claims as they relate to her

2   fourth alleged scheme should be dismissed.

3                    **e.   Relator's Fifth Scheme Has Not Been Pled with Sufficient Particularity**

4            Relator's fifth scheme—that "NAF falsely certified to the government that it was

5   properly calculating borrowers' income"—alludes to three examples of improper calculation but

6   provides no particular details about them.  Compl. ¶ 405.  Relator asserts that (1) NAF "used the

7   borrower's present earnings as their 'historical' earnings," (2) NAF "would use the historical

8   earnings, overtime, and year-end bonuses for tomato pickers in California," and (3) a loan officer

9   "wanted" to impermissibly factor in a one-time $98,000 bonus as part of the borrower's

10  earnings.  Compl. ¶¶ 415, 417, 420-21.

11          These examples, however, are deficient for the same reasons that plague Relator's other

12  alleged schemes.  Relator offers no particular details to explain how and why these examples

13  resulted in false claims to the government.  For instance, Relator does not provide any

14  information concerning the borrower with the alleged $98,000 bonus.  She does not (1) provide

15  any information to identify the loan application, (2) what type of loan was applied for, (3)

16  whether it was an FHA or VA loan, (4) the underwriter who worked on the file, or (5) whether

17  the loan was even approved.  Also missing is any allegation that this loan or any other loan

18  resulted in a claim for payment made to the government.  Without more, Relator cannot satisfy

19  the heightened Rule 9(b) pleading standards and her claims as they relate to this scheme are ripe

20  for dismissal.

21                   **f.   Relator's Sixth Scheme Has Not Been Pled with Sufficient Particularity**

22          Relator's sixth scheme alleges that NAF "falsely certified to the Government Programs

23  that borrowers' debt obligations were within the ratios allowed by the government in order to

24  obtain approvals by deliberately excluding certain debts of borrowers."  Compl. ¶ 428.  Relator

25  refers to three loans in support of this scheme and claims that NAF failed to include certain debts

26  when calculating the debt-to-income ("DTI") ratio for these loans.

27          Missing, however, are the specifics required to support her examples.  For instance,

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

1    Relator does not (1) identify the underwriter who worked on each file, (2) identify the amount of

2    each debt not included, (3) explain whether the underwriter was aware of the alleged missing or

3    excluded debts, or (4) state why the underwriter did not include the debts in the DTI calculation.

4    More importantly, Relator has not alleged that any claims were paid by the government in

5    connection with these loans.  Relator cannot support her allegations of fraud with bare-bones

6    examples that do not satisfy the heightened 9(b) pleading requirements, and her claims as they

7    relate to this scheme should be dismissed.

8            **g.  Relator's Seventh Scheme Has Not Been Pled with Sufficient Particularity**

9            Relator's seventh scheme alleges that "NAF falsely certified to the government that it

10   was following audit findings and adopting proper quality control mechanisms, even though NAF

11   knew that it was hiding and destroying such documents."  Compl. p. 50 ¶ 466.  Relator, however,

12   does not provide the level of detail required to satisfy Rule 9(b).  Relator makes general

13   references to deficiencies found by a quality control auditor, who she does not identify, and a

14   conclusory assertion that the audit department ignored these problems (Compl. p. 51-52 ¶¶ 480-

15   82), but offers no factual support except for a vague reference to a conversation between the

16   auditor and another employee.  When this conversation occurred and what was specifically

17   discussed are not alleged.  These allegations are far too general and attenuated.

18           Finally, the Complaint fails to tie this alleged scheme to any claim for payment made to

19   the government.  Relator fails to offer any explanation for how a false claim can independently

20   arise from an alleged deficiency in NAF's quality control process.  *See United States v. Quicken*

21   *Loans, Inc.*, 239 F. Supp. 3d 1014, 1024 n.3 (E.D. Mich. 2017) ("[T]he Government states that it

22   'is not alleging that any false claims independently arise'" from "implementing a quality control

23   process that failed to adequately assess its compliance with FHA requirements.").  Accordingly,

24   Relator's claims related to this scheme must be dismissed.

25           **F.       Relator Proffers No Specific Allegations Concerning VA Loans**

26           When Relator's conclusory allegations are stripped from the Complaint, it becomes clear

27   that she has proffered no plausible factual allegations concerning VA loans originated and

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

1   underwritten by NAF.  The Complaint does not identify a single claim NAF made to VA for

2   payment or even a specific VA loan that was affected by Relator's alleged fraudulent schemes.

3        Relator has identified only four loans associated with two of her alleged schemes, as well

4   as one loan that went into foreclosure.  She does not, however, allege that any of these are VA

5   loans.  Compl. ¶¶ 47, 401, 438, 452, p. 50 ¶ 462.  Moreover, the Complaint ***does not*** identify (1)

6   any claims made by NAF on VA loans, (2) any VA loans originated by NAF, (3) any VA loans

7   underwritten by NAF, or (4) any specific VA loans affected by Relator's alleged schemes.

8        Relator has failed to provide any facts demonstrating the "who, what, when, where, and

9   how" any purported "fraudulent scheme" was accomplished concerning actual VA loans.  This

10  utter lack of specificity cannot satisfy the Rule 9(b) pleading standard that applies to FCA

11  claims.  Accordingly, Relator's FCA claims as they relate to VA loans should be dismissed.

### G.     The Complaint Fails to Allege Materiality

13       The Complaint does not, and cannot, meet the heightened materiality standard of

14  *Escobar*.  "A misrepresentation about compliance with a statutory, regulatory, or contractual

15  requirement must be material to the Government's payment decision in order to be actionable

16  under the False Claims Act."  *Serco*, 846 F.3d at 333 (quoting *Escobar*, 136 S. Ct. at 1996).  The

17  FCA's materiality requirement is "rigorous" and "demanding," and "is not an all-purpose

18  antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory

19  violations."  *Escobar*, 136 S. Ct. at 2003-04 (internal quotation marks and citations omitted).

20  Furthermore, *Escobar* rebuked arguments that "materiality is too fact intensive for courts to

21  dismiss False Claims Act cases on a motion to dismiss," emphasizing that "False Claims Act

22  plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of

23  Civil Procedure 8(a) and 9(b) by, for instance, pleading facts to support allegations of

24  materiality."  *Id.* at 2004 n.6.

25       An alleged misrepresentation "cannot be deemed material merely because the

26  Government designates compliance with a particular statutory, regulatory, or contractual

27  requirement as a condition of payment," nor where the government merely "would have the

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Defendant's Notice of Motion and Motion to Dismiss
Case No.  3:17-cv-04384-JST

*option* to decline" payment.  *Id.* at 2003 (emphasis added).  Equally, materiality "cannot be found where noncompliance is minor or insubstantial."  *Id.* (citation omitted).  The materiality requirement must be rigorously enforced to "ensure that government contractors will not face 'onerous and unforeseen FCA liability' as the result of noncompliance with any of 'potentially hundreds of legal requirements' established by contract."  *Serco*, 846 F.3d at 333 (quoting *United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1271 (D.C. Cir. 2010) ("*SAIC*")).

*Escobar's* stringent pleading requirements preclude Relator's Complaint, which alleges a medley of non-determinative legal conclusions, including that a "reasonable person would not have extended loan insurance," (Compl. ¶¶ 490) and "would not have allowed NAF to participate in the Government Programs" (*Id.* ¶¶ 491, 506) had he or she known that NAF allegedly had not followed "the required underwriting process" (*Id.* ¶¶ 491, 506).  The Supreme Court clearly stated that the alleged misrepresentation of compliance with a specific statutory, regulatory, or contractual requirement "must be material to the Government's *payment decision*" to be actionable under the FCA.  *Escobar*, 136 S. Ct. at 2002 (emphasis added).

Relator has also not alleged any facts to show that HUD and VA regularly decline claims for technical violations of their regulations on the basis of loan-level certifications.  *See Escobar*, 136 S. Ct. at 2003-04 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").  Apart from conclusory allegations that NAF's compliance with all applicable government regulations was "the essence of the bargain," (Compl. ¶ 495, 510, 524, 538), the Complaint fails to allege that the supposed violations are "so central" to the FHA and VA programs that they "routinely rescinds contracts" for FHA insurance and VA guarantees when they learn of those violations.  *Escobar*, 136 S. Ct. at 2001, 2004; *see also Ebeid*, 616 F.3d at 1000 ("Ebeid baldly asserts that had [defendant] not concealed or failed to disclose information affecting the right to payment, the United States would not have paid the claims.  This conclusory allegation is insufficient under Rule 9(b).") (citation omitted); *United States ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745, 2016 U.S. Dist. LEXIS 93248, at *20 (N.D.

Cal. July 18, 2016) ("The Amended Complaint alleges in several places that the government would not have paid Defendants' claims had they known of Defendants' fraudulent conduct, but does not explain why.  This does not meet [*Escobar's*] heightened materiality standard[.]") (internal citations omitted); *United States ex rel. Zwirn v. ADT Sec. Servs.*, No. 10-cv-2639, 2014 U.S. Dist. LEXIS 88841, at *30-31 (D.N.J. June 30, 2014) ("But that the government 'would not have paid' had it known about noncompliance is a conclusory statement.").

Further, the Complaint does not allege that any false statements were material to HUD's or VA's decision to pay a claim on a single defaulted loan.  No specific loans are alleged to have even gone into default, nor does the Complaint allege that HUD or VA paid any claim (and by extension, *decided* to pay any such claim) as a result of any purportedly false representation of compliance with any allegedly material requirements.  *Safran*, 2017 U.S. Dist. LEXIS 8408, at *15 ("the [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment, that is, the fraudulent actions that cause the government to make a payment") (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)) (quotations omitted).  Relator pleads only generally that the government "paid insurance claims, and incurred losses, related to government-insured mortgages wrongfully endorsed by NAF because of NAF's wrongful conduct."  Compl. ¶ 570, 575, 580.

Relator's arguments amount to nothing more than an allegation that any violation of any regulation may set the table for a valid false claim.  *See, e.g.*, Compl. ¶¶ 89, 99, 133, 162, 170, 197, 259, p. 52 ¶ 458-59, p. 53 ¶ 468, 498, 513.  But *Escobar* rejected this very argument.  *See Escobar*, 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.  ***The False Claims Act does not adopt such an extraordinarily expansive view of liability*.**") (emphasis added).  *See also Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 174 (4th Cir. 2016) ("Surely we cannot be expected to hold that any failure to follow an accounting regulation or best practice on any government contract makes a company a fraudster ineligible to even bid for further

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1    business with the United States government?") (citing *Escobar*, 136 S. Ct. at 2002-04).

2           Finally, the FCA is not a tool to enforce technical compliance with federal regulations

3    and contractual provisions. *Escobar,* 136 S. Ct. at 2003. For instance, Congress clearly

4    envisioned an administrative process to police technical compliance with regulations and created

5    the Mortgagee Review Board to enforce the requirements of the FHA. 12 U.S.C. § 1708(c). *See*

6    *also* 12 U.S.C. § 1735f-14 (setting forth authority for civil money penalty actions against

7    lenders). Moreover, HUD and VA have a multitude of tools at their disposal to do so through

8    administrative process. *See, e.g.*, 24 C.F.R. § 25.6 (setting forth grounds upon which HUD may

9    institute administrative action);[6] 24 C.F.R. § 30.35 (setting forth discretion of Mortgagee Review

10   Board to institute civil money penalty actions against lenders); 2 C.F.R. § 2424.1110 (setting

11   forth circumstances in which HUD may issue a limited denial of participation); VA Lenders

12   Handbook, VA Pamphlet 26-7, Ch. 17 ("VA Sanctions Against Program Participants"). "The

13   existence of these significant remedial powers . . . buttresses our conclusion that Congress did

14   not intend that the FCA be used as a regulatory-compliance mechanism in the absence of a false

15   statement or fraudulent conduct directed at the federal government." *United States ex rel.*

16   *Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 702-03 (4th Cir. 2014).

17          Relator, in effect, argues materiality as a "but-for" causation event—without the

18   purported misrepresentations, HUD and VA never would have allowed NAF to remain in their

19   programs. But this rubric fails as there are no plausible allegations that NAF falsely obtained

20   approval to issue FHA-insured and VA-guaranteed loans, but only allegations regarding

21   technical violations of a few regulatory or contractual requirements among thousands that may

22   or may not have swayed an individual determination on approval of FHA insurance or a VA

23   guaranty. These determinations are better left to the administrative process specifically designed

24   to address such issues.

25

26   [6] 24 C.F.R. § 25.6(j) in fact specifically addresses regulatory violations, allowing administrative
     action for: "Violation of the requirements of any contract or agreement with the Department, or
27   violation of the requirements set forth in any statute, regulation, handbook, mortgagee letter, or
     other written rule or instruction."

28

                                                          Defendant's Notice of Motion and Motion to Dismiss
                                                           Case No.  3:17-cv-04384-JST

1

**H.     The Complaint Fails to Allege that NAF Knowingly Violated Provisions They Knew Were Material to HUD's Payment Decision**

The Complaint does not set forth facts to meet either of the dual prongs of the FCA's "stringent" scienter element.  Under *Escobar*, the Relator must plead that NAF (i) knowingly violated specific FHA or VA requirements, and (ii) knew that compliance with those requirements was material to the government's decision to pay claims.  *Escobar,* 136 S. Ct. at 1996; *see also Serco,* 846 F.3d at 331 ("concerns about fair notice and open-ended liability 'can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements,' which 'are rigorous.'") (quoting *Escobar*, 136 S. Ct. at 2002); *SAIC,* 626 F.3d at 1270-71 ("Strict enforcement of the FCA's scienter requirement will also help to ensure that ordinary breaches of contract are not converted into FCA liability.").

To plead scienter under the FCA, the Complaint must allege that NAF acted knowingly, with deliberate ignorance, or with reckless disregard for the requirements allegedly violated.  31 U.S.C. § 3729(b)(1).[7]   Reckless disregard requires that there be an "unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007); *see also United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 983 (D.C. Cir. 2008) (applying *Safeco* to the FCA).  But a defendant cannot be held liable under the FCA where a "reading of the [allegedly violated] statute, albeit erroneous, was not *objectively unreasonable*."  *Safeco*, 551 U.S. at 69 (emphasis added); *SAIC*, 626 F.3d at 1274 ("Congress clearly had no intention to turn the FCA . . . into a vehicle for either 'punish[ing] honest mistakes or incorrect claims submitted through mere negligence' . . . .") (citation omitted); *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288-89 (D.C. Cir. 2015) (finding scienter not sufficiently alleged when falsity "turns on a disputed interpretive question" on which defendant's position was "objectively reasonable" and defendant was not

---

[7] If the Complaint cannot plead facts to support allegations that NAF exhibited a reckless disregard, it cannot, by definition, meet the FCA's higher scienter standards.  *See Urquilla Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1058 n.15 (11th Cir. 2015); *United States ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 600 n.11 (E.D. Pa. 2012).

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

specifically "warned . . . away from the view it took").  The Complaint falls far short of the scienter pleading standards of the FCA.

### i.  The Complaint Fails to Demonstrate the Knowing or Reckless Violation of Any FHA or VA Requirement

Initially, as set forth above, the Complaint fails to identify the submission of a false claim, or the submission of any false or misleading statement, and so necessarily does not plead that NAF had knowledge of any such violations.  *See* § I.A., *supra*.  The *sine qua non* of an FCA violation is the submission of a false claim.  *Serco,* 846 F.3d at 333.  Because there is no allegation that NAF submitted any claims for payment, let alone any false claims, there cannot be any plausible claim that they did so knowingly.

While knowledge may be alleged generally, the Complaint does not "clearly allege sufficient facts to support an inference or render plausible" that NAF knew that its underwriting program did not meet FHA guidelines.  *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011).   The Complaint strains to establish scienter by quoting alleged statements of a few managers that loans should not be declined.  *See, e.g.*, Compl. ¶¶ 296-303, 341.  But those statements bear no relationship to the actual loans submitted for FHA insurance or a VA guaranty, nor are they connected to any specific violation or misrepresentation.

Relator also alleges generally that:  "NAF knew, deliberately ignored, and recklessly disregarded the fact that many of its loans did not comply with the government's underwriting requirements, and thus were not eligible for government mortgage insurance. . . ."  (Compl. ¶ 220); and that "NAF's focus was on maximizing [its] profit-making schemes across all locations in the company so it made sure all locations followed [NAF's underwriting and approval] policies."  Compl. ¶ 221.  But the first statement is nothing more than a regurgitation of the statutory language—indeed, the three standards are different and require differing levels of factual support, yet Relator claims NAF acted simultaneously with all three requisite states of mind.  And there is no factual allegation that any of NAF's training was designed to encourage underwriters to ignore government regulations when underwriting loans, or to encourage *any* employee to submit claims for FHA insurance on loans they knew had been underwritten in

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1    violation of any regulations.

2            Finally, the Complaint alleges that NAF knew it was submitting false claims because

3    NAF was compensating underwriting employees on a commissions basis, allowing improper

4    management exceptions to be made to government underwriting requirements and improperly

5    pressuring employees to approve loans, performing inaccurate appraisals of properties,

6    manipulating variables in the AUS/TOTAL system to endorse FHA loans for unqualified buyers,

7    improperly calculating borrowers' income, deliberately excluding borrowers' debt obligations,

8    and failing to maintain sufficient quality control processes.  However, as explained above in §

9    I.A and E, these allegations are disconnected from any reference to an actual claim for payment,

10   and do not support any liability under the FCA.  Simply stating a conclusion does not make it so.

11   Relator cannot rely on those same vague and conclusory allegations to plausibly infer NAF's

12   knowledge.  *See Corinthian Colls.*, 655 F.3d at 997.

### ii.   The Complaint Does Not Plead That NAF Knew That Compliance With the Alleged Regulations Was Material to HUD's Payment Decision

15           *Escobar* held that an FCA complaint must allege facts to show that "the defendant

16   knowingly violated a requirement *that the defendant knows is material* to the Government's

17   payment decision."  136 S. Ct. at 1996 (emphasis added).  This means that a complaint must

18   plead facts showing that "the defendant knows that the Government consistently refuses to pay

19   claims in the mine run of cases based on noncompliance with the particular statutory, regulatory,

20   or contractual requirement" at issue.  *Id.* at 2003.  But the Complaint does not allege, much less

21   plausibly show, that NAF knew that HUD and VA consistently refused to pay claims on the

22   basis of noncompliance with the technical requirements identified in the Complaint.

23           Relator's threadbare allegations regarding NAF's supposed "policies and procedures,"

24   and a few off-hand comments by its employees, are insufficient to show knowledge by NAF that

25   the government regularly refuses to pay claims on the basis of noncompliance with any

26   identified requirement.  Moreover, Relator relies on the statement that NAF "knowingly, or

27   acting with deliberate ignorance and/or with reckless disregard for the truth, presented or caused

28   to be presented, to an officer or employee of the Government, false and fraudulent claims for

1    payment or approval in connection with its endorsement of government-insured mortgages. "

2    Compl. ¶ 569.  Such boilerplate allegations are conclusory statements due to be ignored under

3    Rule 12(b)(6).  *Carlson*, 657 F. App'x at 174 (noting that the Court is not obligated to accept

4    legal conclusions that company violated regulations as true, and that the complaint failed to

5    identify which regulatory provisions were violated); *Beauty Basics,* 2016 U.S. Dist. LEXIS

6    83573 at *8-9 ("This is perhaps a legal conclusion and, if so, is due to be ignored.").

## II.   RELATOR FAILS TO ALLEGE FRAUDULENT INDUCEMENT

8           Relator makes no factual allegations to support a fraudulent inducement theory of

9    liability under the FCA, but to the extent her allegations may be construed as such, that theory

10   must also fail.  Fraudulent inducement liability, also referred to as "promissory fraud," only

11   covers situations in which a contractor or program participant enters into the agreement and

12   makes specific representations about the product or service being offered with the intent not to

13   keep its word.  *United States ex rel. Hansen v. Deming Hosp. Corp.*, 992 F. Supp. 2d 1137, 1154

14   (D.N.M. 2013) (explaining that relator must show that contractor "represented that it would do

15   something that it planned not to do or that it otherwise engaged in fraud to secure the contract or

16   benefit").  Relator only makes general and conclusory assertions regarding NAF's entry into

17   FHA and VA programs, such as that "when NAF stated in its initial certification that its

18   operations [conformed] to governmental requirements, NAF knew this statement was false

19   because NAF [had endorsed and intended to continue] to endorse such deficient files."  *See*

20   *generally* Compl. p. 52-54 ¶¶ 457-66.

21          Promissory fraud, however, is only actionable "in rare circumstances under the FCA[.]"

22   *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  Moreover, the same

23   elements required by *Escobar* and *Rose* for implied false certification claims must also be met

24   for fraudulent inducement claims.  *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890,

25   902 (9th Cir. 2017) ("The elements of a claim for promissory fraud are very similar to those

26   necessary for an implied false certification claim, requiring a false claim wherein the falsity is

27   knowingly perpetrated and the underlying fraud is material to the government's decision to

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1  pay."). Relator has failed to satisfy the elements under either theory of liability.[8]

2      In cases where a promissory fraud claim has been allowed to proceed, the defendant

3  made a *specific* representation that it complied with a certain requirement despite its knowledge

4  of non-compliance. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541-42 (1943)

5  (contractors fraudulently certified their bids for project were not collusive, obtained approval for

6  contract, then sought payment for work on that contract); *Campie*, 862 F.3d at 903-04

7  (manufacturer fraudulently certified that certain drugs had passed testing necessary to secure

8  approval of Chinese facilities, obtained FDA approval, then sought payment or reimbursement

9  for drugs manufactured in those facilities); *Hendow*, 461 F.3d at 1169 (the university-defendant

10 specifically represented "that it [was] in compliance with [a ban on compensating recruiters on a

11 per-student basis] while intentionally and knowingly violating that requirement").

12     Here, Relator has failed to allege or identify any specific fraudulent representations made

13 by NAF in any initial, annual, or loan-level certification, nor has she alleged that NAF has

14 submitted *any* false claim for payment as required under *Rose* and *Escobar*.[9]  In fact, none of the

15 certifications identified by Relator are submitted during the claim process.

16     Additionally, the annual re-certifications submitted to HUD cannot serve as the basis for

17 a false claim because they do not request payment or make representations about any specific

18 loan. *See Escobar*, 136 S. Ct. at 2001; *Rose*, 2018 U.S. App. LEXIS 33176, at *11-12.  The

19 annual re-certifications are merely general certifications regarding the scope of the DE lender

20 program, they do not make specific representations regarding the goods or services provided.

21 Compl. ¶¶ 135-48.  Nor do the annual re-certifications allow NAF to receive a government

22 benefit for the purposes of the FCA, and so they cannot serve as the basis of a false claim. *See*

23 *United States v. Reunion Mortg., Inc.*, No. 13-cv-2340, 2013 U.S. Dist. LEXIS 158505, at *19

24

25 [8] The District Court's decision in *United States ex rel. Chang v. Acad. Mortg. Corp.*, 16-cv-2120,
   2018 U.S. Dist. LEXIS 70096 (N.D. Cal. Apr. 25, 2018), is of no assistance to Relator because it
26 was decided before *Rose* and failed to properly apply *Escobar's* pleading standard to the
   relator's implied false certification and promissory fraud theories of liability.

27 [9] Relator does not allege that NAF was required to submit annual certifications to the VA.

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1    (N.D. Cal. Nov. 5, 2013) (annual FHA re-certifications not a prerequisite to obtaining a

2    government benefit).  For these reasons, to the extent Relator intended to allege a theory of

3    fraudulent inducement, her conclusory assertions have failed and the FCA claims should be

4    dismissed.

5                                    **CONCLUSION**

6            Relator's Complaint is long on unsupported allegations of disreputable conduct, but short

7    on substance.  It does not allege sufficient facts to state a claim for relief under the FCA, given

8    the pleading requirements of Rule 9(b), and especially given the recent Supreme Court and Ninth

9    Circuit rulings in *Escobar*, *Rose*, and *Serco*.  The Complaint also fails to allege any fraudulent or

10   otherwise wrongful behavior committed by Ms. Arvielo.  The Complaint does not identify a

11   single claim for payment—a deficiency that defeats the entire pleading by itself.  But Relator

12   further fails to provide any facts demonstrating "who, what, when, where, and how" any

13   purported "fraudulent scheme" was accomplished.  Materiality, which must be strictly enforced,

14   is also lacking because the Relator does not tie any alleged misrepresentation to any decision by

15   FHA or VA to pay any claim.  The Complaint further lacks any facts to meet the stringent

16   requirements for scienter—as it provides no allegations showing that NAF knew that any claims

17   it made for insurance contained misrepresentations, nor that NAF knew that the alleged

18   misrepresentations were material to HUD or VA's decision to pay claims.  Accordingly, the

19   Complaint fails to state a claim for relief under the FCA and it should be dismissed.

20

21

22

23

24

25

26

27

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1   Dated:  January 3, 2019

2   Respectfully submitted,         **WEINER BRODSKY KIDER PC**

3                     /s/ Mitchel H. Kider

                      Mitchel H. Kider, California Bar No. 116479

4                     1300 19th Street NW, Fifth Floor

                     Washington, DC 20036

5                     Tel: (202) 628-2000

6                     Facsimile:  (202) 628-2011

                     Email: kider@thewbkfirm.com

7

8                     **MEDLIN & HARGRAVE, PC**

9                     /s/ Joshua A. Rosenthal

10                    Joshua A. Rosenthal, California Bar No. 190284

                     3562 Round Barn Circle, Suite 212

11                    Santa Rosa, CA 95403

12                    Tel: (707) 570-2200

                     Facsimile: (510) 832-2945

13                    Email: jrosenthal@mhlawcorp.com

14                    *Counsel for Broker Solutions, Inc.*

                     *d/b/a New American Funding*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that, on this 3rd day of January, 2019, I caused one copy of the foregoing

Defendant's Motion to Dismiss the Complaint to be served on all parties and counsel of record

via the Court's CM/ECF system:

/s/ Mitchel H. Kider
Mitchel H. Kider

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia