**CUTTER LAW PC**
C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Emails: bcutter@cutterlaw.com
            jparker@cutterlaw.com

**GRANT & EISENHOFER P.A.**
Kyle J. McGee, *Pro Hac Vice*
Laina M. Herbert, *Pro Hac Vice*
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Emails: kmcgee@gelaw.com
            lherbert@gelaw.com

**THOMAS & SOLOMON LLP**
J. Nelson Thomas
Jonathan W. Ferris
Michael J. Lingle
Annette M. Gifford (CA Bar 270777)
693 East Avenue
Rochester, New York 14607
Tel.: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
amgifford@gmail.com

*Attorneys for Relator Malou Tutanes-Luster*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MALOU TUTANES-LUSTER, <br><br> Plaintiff, <br><br> v. <br><br> BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING, <br><br> Defendant. | C.A. No. 3:17-cv-04384 (JST) <br><br> **RELATOR'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER** <br><br> **Date:** February 14, 2019 <br> **Time:** 2:00 p.m. (PST) <br> **Courtroom:** 9 <br> **Judge:** Hon. Jon S. Tigar |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND ...........................................................................................1

ARGUMENT ...................................................................................................................2

I.      LEGAL STANDARD ...........................................................................................2

II.     PLAINTIFF'S CHOICE OF FORUM ..................................................................2

    A.      There Is A Substantial Nexus Between the Northern District of
        California and the Operative Facts .............................................................4

    B.      No Evidence of Forum Shopping ..............................................................8

III.    CONVENIENCE OF THE PARTIES....................................................................8

IV.     CONVENIENCE OF THE WITNESSES...............................................................9

V.      EASE OF ACCESS TO THE EVIDENCE...........................................................12

VI.     FAMILIARITY OF EACH FORUM WITH THE APPLICABLE LAW ............14

VII.    FEASIBILITY OF CONSOLIDATION OF OTHER CLAIMS...........................14

VIII.   ANY LOCAL INTEREST IN THE CONTROVERSY........................................14

IX.     THE RELATIVE CONGESTION AND TIME OF TRIAL IN EACH FORUM.................15

CONCLUSION ...............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. Inc. v. Bargain Software Shop, LLC*,
  2014 WL 6982515 (N.D. Cal. Dec. 8, 2014) ...................................................2

*Adobe Systems Inc. v. Childers*,
  2011 WL 566812 (N.D. Cal. Feb. 14, 2011)...................................................9

*U.S. ex rel. Adrian v. Regents of Univ. of California*,
  2002 WL 334915 (N.D. Cal. Feb. 25, 2002), *aff'd*, 363 F.3d 398 (5th Cir. 2004) .......................2

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
  666 F. Supp. 2d 1109 (C.D. Cal. 2009)...................................................10

*Andrade v. Chase Home Fin'l, L.L.C.*,
  2005 U.S. Dist. LEXIS 32799 (N.D. Ill. Dec. 12, 2005)...................................................6

*Benson v. JPMorgan Chase Bank, N.A.*,
  2010 WL 1445532 (N.D. Cal. Apr. 7, 2010)...................................................12, 16

*Burgess v. HP, Inc.*,
  2017 U.S. Dist. LEXIS 15801 (N.D. Cal. Feb. 3, 2017)...................................................2

*U.S. ex rel. Campie v. Gilead Sciences, Inc.*,
  862 F.3d 890 (9th Cir. 2017)...................................................7

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986)...................................................2, 9

*Empty Barge Lines II, Inc. v. Fisher*,
  441 F. Supp. 2d 786 (E.D. Tex. 2006) ...................................................6

*Fabus Corp. v. Asiana Exp. Corp.*,
  2001 WL 253185 (N.D. Cal. Mar. 5, 2001) ...................................................3

*In re Ferrero Litig.*,
  768 F. Supp. 2d 1074 (S.D. Cal. 2011) ...................................................4

*FTC v. Graco Inc.*,
  2012 U.S. Dist. LEXIS 116826 (D. D.C. Jan. 26, 2012)...................................................15

*Global Touch Solutions, LLC. v. Toshiba Corp.*,
  109 F. Supp. 3d 882 (E.D. Va. June 15, 2015)...................................................6

*Hawkes v. Hewlett-Packard Co.*,
 2012 WL 506569 (N.D. Cal. Feb. 15, 2012) ............................................................14

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
 461 F.3d 1166 (9th Cir. 2006) ..................................................................................7

*Hendricks v. StarKist Co.*,
 2014 WL 1245880 (N.D. Cal. Mar. 25, 2014) .........................................................10

*Hyundai Space & Aircraft Co. v. Boeing Co.*,
 1999 U.S. Dist. LEXIS 16025 (N.D. Cal. Oct. 12, 1999) ..........................................6

*Inlandboatmen's Union of the Pac. v. Foss Maritime Co.*,
 2015 U.S. Dist. LEXIS 444 (W.D. Wash. Jan. 5, 2015) ..........................................12

*Kannar v. Alticor*,
 2009 U.S. Dist. LEXIS 35091 (N.D. Cal. Apr. 9, 2009) ............................................6

*United States ex rel. Kelly v. Serco, Inc.*,
 846 F.3d 325 (9th Cir. 2017) ....................................................................................7

*Keys v. Budgetext Corp.*,
 2012 U.S. Dist. LEXIS 40161 (N.D. Cal. Mar. 23, 2012) ........................................12

*Lax v. Toyota Motor Corp.*,
 65 F. Supp. 3d 772 (N.D. Cal. 2014) ...................................................................9, 13

*Leroy-Garcia v. Brave Arts Licensing*,
 2013 U.S. Dist. LEXIS 109872 (N.D. Cal. Aug. 5, 2013) .........................................8

*Lou v. Belzberg*,
 834 F.2d 730 (9th Cir. 1987) ....................................................................................3

*Roling v. E*Trade Sec., LLC*,
 756 F. Supp. 2d 1179 (N.D. Cal. 2010) .....................................................................7

*Saleh v. Titan Corp.*,
 361 F. Supp. 2d 1152 (S.D. Cal. 2005) ....................................................................10

*United States ex rel. Salomon v. Wolff*,
 268 F. Supp. 3d 770 (D. Md. 2017) ...........................................................................6

*SEC v. Rose Fund, LLC*,
 2004 U.S. Dist. LEXIS 22491 (N.D. Cal. Jan. 9, 2004)............................................2

*Signal IP, Inc. v. Ford Motor Co.*,
 2014 U.S. Dist. LEXIS 139357 (C.D. Cal. Sept. 25, 2014) .......................................8

*Sonoda v. Amerisave Mortgage Corp.*,
  2011 WL 2653565 (N.D. Cal. July 6, 2011) ...........................................................10

*Sweet-Reddy v. Vons Cos.*,
  2007 U.S. Dist. LEXIS 24427 (N.D. Cal. Mar. 20, 2007) .........................................4

*Tate v. Brinderson Constructors, Inc.*,
  2016 WL 7387430 (N.D. Cal. Dec. 21, 2016) ................................................11, 13

*United States ex rel. Thrower v. Academy Mortgage Corp.*,
  2018 WL 4053484 (N.D. Cal. Aug. 24, 2018).................................................3, 4, 9, 10

*United States v. Quicken Loans, Inc.*,
  217 F. Supp. 3d 272 (D. D.C. Nov. 14, 2016)................................................4, 14, 15

*Wechsler v. Macke Int'l Trade*,
  1999 U.S. Dist. LEXIS 19800 (S.D.N.Y. Dec. 27, 1999)..........................................6

*Williams v. Bowman*,
  157 F. Supp. 2d 1103 (N.D. Cal. 2001).....................................................................8

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................................................2

31 U.S.C. § 3729 .......................................................................................................3, 8, 9

31 U.S.C. § 3731(a) .........................................................................................................10

31 U.S.C. § 3732(a) .......................................................................................................3, 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

At its core, the question presented by defendant Broker Solutions, Inc. d/b/a New American Funding's ("NAF" or "defendant") motion is whether it has made a strong showing that transfer of this case from the Northern District of California to the Central District of California would be substantially fairer and more convenient, such that the Court should employ its discretion to overturn the relator's choice of venue.

Defendant has not made a showing, let alone a strong showing, of unfairness or inconvenience under the statute warranting transfer. Instead, its Motion to Transfer Venue (D.I. 40) ("Motion" or "Mot.") is based entirely on the fact that its headquarters – and therefore certain of its employees and records – are located in the Central District of California. The convenience and preference of the defendant does not drive venue selection and the remaining factors do not weigh in favor of transfer. NAF's motion should be denied.

**FACTUAL BACKGROUND**

This case has significant ties to this district. As set forth in plaintiff-relator Malou Tutanes-Luster's *Qui Tam* Complaint (D.I. 1) ("Complaint" or "Compl."), and admitted by defendant, relator was employed as a loan processor working on government-insured loans originated and underwritten by defendant in its San Jose, California offices, which are located in this district. From one or more of defendant's four facilities in this district, relator worked with NAF employees located in multiple states throughout the United States and observed NAF's policies and practices, which give rise to the claims in the Complaint. As defendant admits, it can be found and transacts business within this district, and has issued, underwritten, and endorsed government-insured mortgage loans for properties located within this district. At least one of the government-insured mortgages on property underwritten by NAF in this district has defaulted and gone into foreclosure. As discussed in relator's opposition to defendant's motion to dismiss and in the Complaint, these improperly underwritten loans (and subsequent defaults) cause significant government losses emanating from this district.

**ARGUMENT**

## I.   LEGAL STANDARD

To succeed on a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir. 1986).  Courts use a "two-step analysis" to determine when a transfer is proper.  *Burgess v. HP, Inc.*, 2017 U.S. Dist. LEXIS 15801, at *12 (N.D. Cal. Feb. 3, 2017).  First, the Court considers "whether the case could have been brought in the forum to which the moving party seeks to transfer the case."  *Id*. (quoting *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)).  After this question is answered in the affirmative, then the Court has the discretion to consider motions to change venue based on "individualized, case-by-case consideration of convenience and fairness."  *Id*. (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).  Courts have "broad discretion to adjudicate motions for transfer on a case-by-case basis." *Id*. at *13 (quoting *Center for Biological Diversity v. Kempthorne*, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008)).

Courts consider the following factors when determining convenience and fairness:

> (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum.

*SEC v. Rose Fund, LLC*, 2004 U.S. Dist. LEXIS 22491, at *3-4 (N.D. Cal. Jan. 9, 2004) (citing *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1105-06 (N.D. Cal. 2001)).

## II.   PLAINTIFF'S CHOICE OF FORUM

Generally, a court "should give a plaintiff's choice of forum great deference." *Adobe Sys. Inc. v. Bargain Software Shop, LLC*, 2014 WL 6982515, at *3 (N.D. Cal. Dec. 8, 2014) (quoting *AV Media Pte, Ltd. v. OmniMount Sys., Inc.*, 2006 WL 2850054, at *2 (N.D. Cal. Oct. 5, 2006)).  In a *qui tam* action, where the plaintiff is asserting the rights of the United States government, "a plaintiff's choice of forum is not given substantial weight," but neither is it discounted entirely. *U.S. ex rel. Adrian v. Regents of Univ. of California*, 2002 WL 334915, at *3 (N.D. Cal. Feb. 25, 2002),

*aff'd*, 363 F.3d 398 (5th Cir. 2004) (citing *United States ex rel. LaValley v. First Nat'l Bank of Boston*, 625 F. Supp. 591, 594 (D. N.H. 1985)).  Actions brought pursuant to the False Claims Act, such as this one, "may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred."  31 U.S.C. § 3732(a).

In determining the amount of deference to give plaintiff's choice of forum, courts consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (holding district court did not abuse its discretion in deciding to transfer the action to New York where:  (1) the stock purchase agreement was negotiated and executed in New York; (2) the majority of witnesses lived and worked in the New York area where they were subject to subpoena; (3) all defendants were subject to personal jurisdiction in New York; and (4) the cost of litigation would be drastically reduced if the case were heard in New York)).  Generally, "[t]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence or where the forum chosen lacks a significant connection to the activities alleged in the complaint."  *Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001).  Here, unlike in *Lou*, many of the operative facts occurred within the forum, and the forum has an interest in the parties and the subject matter.  *Lou*, 834 F.2d at 739.  Thus, relator's choice of forum should not be disturbed.

NAF, like the defendant in *United States ex rel. Thrower v. Academy Mortgage Corp.*, 2018 WL 4053484 (N.D. Cal. Aug. 24, 2018) ("*Thrower*"), a factually analogous *qui tam* case alleging similar misconduct by an originator of government-insured mortgage loans, seeks to transfer venue to the district where its headquarters are located, and raises nearly identical arguments to the ones Judge Chen rejected in denying Academy Mortgage's motion to transfer venue.  Judge Chen respected the *qui tam* plaintiff's choice of venue where transfer would have merely shifted the inconvenience from defendant to plaintiff; plaintiff identified a number of non-party witnesses, including borrowers from around the country; and defendant identified no non-party witnesses, but

argued "its employees at its headquarters in Utah would be critical witnesses, as they are key to [its] certification process, compliance, and quality control"; much of the key evidence, which was largely in electronic format, was at defendants headquarters; Utah had a stronger interest in the controversy because many more claims emanated from Utah than this district, and the District of Utah was slightly less congested." *Id*. at *5-7. Here, unlike the defendant in *Thrower* who had no location in plaintiff's chosen venue, NAF has had branches in this district since 2013, and maintains four locations within this district. Compl. ¶ 45: Bunce Decl. ¶¶ 6,7. As in *Thrower*, the defendant here fails to establish that strong considerations of fairness and convenience require overturning relator's appropriate choice of forum.

### A. There Is A Substantial Nexus Between the Northern District of California and the Operative Facts

Relator properly brought this action, pursuant to Section 3732(a), in the Northern District of California. Here, unlike in *United States v. Quicken Loans, Inc.*, 217 F. Supp. 3d 272, 276-77 (D. D.C. Nov. 14, 2016), there is a substantial nexus between the Northern District of California and the factual circumstance underlying relator's FCA allegations. *See also Sweet-Reddy v. Vons Cos.*, 2007 U.S. Dist. LEXIS 24427, at *7 (N.D. Cal. Mar. 20, 2007) (granting motion to transfer to the District of Nevada where the plaintiff resided in Nevada "at all times," and the complaint revealed none of the events supporting the plaintiff's claims occurred in California). Several of the operative facts giving rise to NAF's alleged violations occurred in this jurisdiction, which weighs against transfer. *See In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1078 (S.D Cal. 2011) (holding that because some of the operative facts occurred in the district, the class action plaintiffs resided in the district, and did not engage in forum shopping, plaintiffs' choice of forum and the contacts relating to plaintiffs' cause of action with the forum weighed against transfer). NAF transacts business in the Northern District of California and formerly employed relator in the Northern District of California. NAF also took at least the following actions in this district giving rise to the Complaint's FCA claims:

- underwrote, endorsed, and certified many loans for government insurance under government lending programs, including the Direct Endorsement ("DE") program;

- made false loan-level certifications to government agencies, including the Department of Housing and Urban Development ("HUD") and Department of Veteran Affairs ("VA");

- approved exceptions to government lending guidelines to push unqualified loans through for endorsement under the DE and VA programs;

- made "value appeals" to property appraisers to obtain inflated appraisal values;

- manipulated borrower data, including borrower income, debt, and debt-to-income ratios; and

- concealed and withheld from the government subsequently discovered underwriting deficiencies related to government-insured loans.

Moreover, relator was in this district when NAF's employees and/or agents wrote and transmitted numerous emails and documents in and to this district giving rise to relator's FCA claims, and she participated in many of the conversations described in the Complaint in this district.

In addition, since at least 2013, defendant had four offices within this district. Declaration of Christy Bunce in Support of Defendant New American Funding's Motion to Transfer Venue ¶¶ 6-7 (D.I. 40-2) ("Bunce Decl."). Relator was physically located in San Jose when she was employed by NAF as a loan processor working on government loans. During her employment with NAF, relator worked out of one or more of NAF's offices in this district where she interacted with NAF personnel in locations across the country, and observed NAF's policies and practices related to the improper issuance of government loans that form the basis of the FCA claims in the Complaint. Compl. ¶¶ 62, 301; *see* Bunce Decl. ¶¶ 18-19. As defendant acknowledges, between July 1, 2012 and November 30, 2018, NAF originated both FHA-insured and VA-insured mortgage loans in this district, and some of defendant's underwriters were located in this district. Bunce Decl. ¶¶ 13-14, 16; *see*, *e.g.*, Compl. ¶ 46. Relator has specified at least one of the government mortgages on property underwritten by NAF in this district that has defaulted and gone into

foreclosure. Compl. ¶¶ 46-47. At all times relevant to the allegations in the Complaint, relator was employed by defendant as a loan processor in its San Jose, California offices, which are located in this district. Compl. ¶¶ 60-61; Bunce Decl. ¶¶ 18-19. As described in the Complaint, relator was in this district when she participated in communications with defendant's employees, agents and/or customers, which give rise to the FCA allegations in the Complaint.

Unlike in *Hyundai Space & Aircraft Co. v. Boeing Co.*, 1999 U.S. Dist. LEXIS 16025, at *21-22 (N.D. Cal. Oct. 12, 1999),[1] where "[n]o party, witness or document [was] located in the Northern District," and "[n]one of the negotiations, transactions, or events that form the basis of [the] dispute" occurred in the district, in this case, crucial witnesses and documentary evidence are located in this district, and events and transactions forming the basis of the Complaint occurred

---

[1] *See also e.g.*, *Kannar v. Alticor*, 2009 U.S. Dist. LEXIS 35091, at *5-6 (N.D. Cal. Apr. 9, 2009) (granting motion to transfer in patent case to district plaintiff proposed in a cross-motion to transfer venue rather than district proposed by defendants because plaintiff's proposed district was more convenient for several non-party witnesses and significantly more convenient for non-party witnesses who lived outside of the United States, and noting that the convenience of the witnesses identified by defendants, who were also employees of defendants, *did not* receive "primary consideration"); *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 775 (D. Md. 2017) (none of the conduct occurred in the district plaintiff selected); *Empty Barge Lines II, Inc. v. Fisher*, 441 F. Supp. 2d 786, 800 (E.D. Tex. 2006) (granting motion to transfer to the district where, *inter alia*, the collision between the vessels giving rise to plaintiff's claims arose, both parties' principal places of business were located and all of the potential, key party and non-party witnesses were located); *Andrade v. Chase Home Fin'l, L.L.C.*, 2005 U.S. Dist. LEXIS 32799, at *16-17 (N.D. Ill. Dec. 12, 2005) (granting transfer where plaintiffs did not live in their chosen forum and none of the actions giving rise to their claim occurred there); *Global Touch Solutions, LLC v. Toshiba Corp.*, 109 F. Supp. 3d 882, 898-99 (E.D. Va. June 15, 2015) (granting motion to transfer patent cases where the fact that some defendants had stores or dedicated sales people in the district to market and sell such products was not unique to Virginia even by the plaintiff's own allegations, it appeared the defendants "likely have the same contact with every other state in this nation" and plaintiff did not have a dedicated corporate office in the district, its registration and/or business licenses had lapsed and its strongest argument for a legitimate presence in the jurisdiction was that the corporate president lived in the district and was "familiar" with the corporation's undisclosed operations); *Wechsler v. Macke Int'l Trade*, 1999 U.S. Dist. LEXIS 19800, at *12-13, 26 (S.D.N.Y. Dec. 27, 1999) (finding the action had no material connection to plaintiff's chosen forum in patent infringement action where product at issue was designed by an industrial engineer residing in Los Angeles; the president, secretary and sole employee of defendant company lived in California and approximately one hundredth of 1% of all of the company's sales were shipped by the company directly to individual customers residing within the Southern District of New York, and the only connections to the Southern District of New York were that plaintiff's records related to the application and prosecution of the patents were located in New York where he lived and worked).

Relator's Opposition to Defendant's Motion to Transfer
Case No. 3:17-cv-04384 (JST)

here.  When "there is no evidence that plaintiffs engaged in forum shopping and both plaintiff[] and defendant have significant contacts with the Northern District of California, plaintiff['s] choice of forum carries significant weight." *Roling v. E\*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010) (finding plaintiffs' choice of forum carried significant weight and finding no evidence of forum shopping where plaintiffs appeared to have filed suit where they thought it would be easiest for defendant to defend itself, one of the named plaintiffs lived within the district, and both plaintiffs and defendant had significant contacts within the district).

Defendant incorrectly focuses on implied certification, which is not at issue (Mot. at 6), and its citation to *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) misses the point.  *Id.*  Relator's complaint asserts a promissory fraud theory of FCA liability, whereas the Ninth Circuit in *Kelly* affirmed the district court's grant of summary judgment on Kelly's FCA claim for submitting false or fraudulent claims for payment under an implied false certification theory of liability.  The promissory fraud theory of FCA liability, "rather than specifically requiring a false statement of compliance with government regulations, is somewhat broader.  It holds that liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct."  *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006).  NAF's argument that "Relator fails to identify a single claim made to the government for payment in connection with any FHA or VA loan originated by NAF from [this district]" (Mot. at 6) is irrelevant because liability "attach[es] to each claim submitted to the government under a contract, when the contract or extension of the government benefit was *originally obtained through false statements or fraudulent conduct.*"  *U.S. ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (citing *Hendow*, 461 F.3d at 1173) (emphasis added).  Here, the government receives a demand for payment from the holder of the insured loan only after the loan defaults, but the promissory fraud theory turns on NAF's "original fraud," *i.e.* the use of false certifications to obtain a government benefit.  *Hendow*, 461 F.3d at 1173.

**B.      No Evidence of Forum Shopping**

To counter relator's choice of forum, defendant alleges, without support, that relator is forum shopping.  Mot. at 4-5.  Defendant's unsupported allegations of forum shopping should be rejected because there is simply no evidence of forum shopping, this district is a proper forum, and the cases defendant cites are inapposite.  *See Bowman*, 157 F. Supp. 2d at 1106-07  (giving plaintiff's choice of forum some deference and finding no evidence of forum shopping where plaintiff was incarcerated outside of the district, asserted a genuine intention to reside in the district, presented objective evidence of that intention, would reside in the district before a trial in the case could occur, and presented evidence that she had family and close friends in the district, although it was speculative whether plaintiff would have the option of being paroled in the district); *Signal IP, Inc. v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 139357, at *8 (C.D. Cal. Sept. 25, 2014) (finding plaintiff's incorporation in the jurisdiction less than two months before filing the action, and the design and engineering of the accused vehicles occurred outside of the district "weighs *somewhat* against transfer") (emphasis added).  Thus, plaintiff cannot be accused of forum shopping when defendant transacts business in this district, formerly employed relator in this district, and several acts proscribed by 31 U.S.C. § 3729 and described in the Complaint occurred here.  Moreover, defendant does not argue that this district is a legally improper forum for this case.

Accordingly, this factor weighs against transfer.

**III.     CONVENIENCE OF THE PARTIES**

Defendant claims "[t]he Central District of California is a far more convenient forum for the parties."  Mot. at 7.  There are only two parties to this action.  The only party for which the Central District is more convenient is defendant.  This Court is not required to transfer the case simply because defendant's principal place of business is located in the Central District of California.  And defendant cites no case that stands for this proposition.  *See Leroy-Garcia v. Brave Arts Licensing*, 2013 U.S. Dist. LEXIS 109872, at *49-50 (N.D. Cal. Aug. 5, 2013) (granting motion to transfer venue where the new venue could hear the action in its entirety, and plaintiff, a resident of Spain, did not argue it was more difficult for her to litigate in Los Angeles than in San Francisco).  While

courts generally "do not consider the convenience to parties that have chosen to bring a case in a forum where they do not reside," Mot. at 7 (quoting *Brown v. Abercrombie & Fitch Co.*, 2014 U.S. Dist. LEXIS 19414, at *12-13 (N.D. Cal. Feb. 14, 2014), "transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Adobe Systems Inc. v. Childers*, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (denying motion to transfer where neither forum appeared to be appreciably more convenient for potential witnesses, and any additional expenses for defendants as a result of having to litigate in the foreign jurisdiction could be "mitigated through the use of electronic filing, telephonic appearances, and obtaining *pro hac vice* status for their counsel); *Decker Coal*, 805 F.2d at 843 (9th Cir. 1986); *see also Thrower*, 2018 WL 4053484, at *5, 7 (declining to transfer where effect would merely be to shift inconvenience from one party to another).  As discussed above, there is no evidence of forum shopping, and there is a substantial nexus between the allegations in the Complaint and this district.  Relator worked in this district at one or more of NAF's locations during her employment with NAF.  Defendant transacts business in this district, and many acts proscribed by 31 U.S.C. § 3729 and described in the Complaint occurred in the Northern District of California.

The fact that relator no longer resides in this district should be given no weight because the Complaint asserts substantial wrongdoing committed in this district and uncovered and substantiated by relator while she worked for defendant in this district, and defendant, *inter alia*, has offices in this district and conducts business here, employs loan processors and managers with knowledge of the wrongdoing in this district, and maintains relevant, discoverable evidence in this district.

Accordingly, this factor is neutral and favors not disturbing the relator's choice of venue.

## IV.    CONVENIENCE OF THE WITNESSES

Courts in this district have found "[t]he convenience of non-party witnesses is the most important convenience factor; more important that the convenience of party witnesses." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 780 (N.D. Cal. 2014) (citing *Kaur v. U.S. Airways, Inc.*, 2013 WL 1891391, *5 (N.D. Cal. May 6, 2013)).  Despite recognizing this critical point (Mot. at 7-

8), defendant again relies on the location of its principal place of business, corporate headquarters, and the location of "relevant NAF employees who may be called as non-party witnesses [who] work and reside within the Central District of California." Mot. at 8. Defendant argues "the Northern District of California will not be more convenient for these current and former NAF employees." *Id.* The convenience of defendant's witnesses is given very little consideration in this analysis, and for good reason.

This factor examines the convenience for *non-party* witnesses and the ability to compel such witnesses to testify. *See Sonoda v. Amerisave Mortgage Corp.*, 2011 WL 2653565, at *6 (N.D. Cal. July 6, 2011). As this case is brought under the False Claims Act, this Court has nationwide subpoena power. *Thrower*, 2018 WL 4053484, at *6; 31 U.S.C. § 3731(a) ("A subpoena requiring the attendance of a witness at a trial or hearing conducted under section 3730 of this title may be served at any place in the United States"). Thus, the only concern under this factor would be the convenience of potential witnesses. *Thrower*, 2018 WL 4053484, at *6.

"Courts give less consideration to the convenience of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur." *Hendricks v. StarKist Co.*, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014); *see Sonoda*, 2011 WL 2653565, at *6 (finding that defendant "will likely be able to arrange to have its key witnesses appear at trial"); *id.* (quoting *In re Funeral Consumers Antitrust Litig.*, 2005 WL 2334362, at *5 (N.D. Cal. Sept. 23, 2005) (noting that "a corporate defendant can be expected to arrange for some present and [even] past employees to testify live and voluntarily but only if their testimony will be favorable on balance to the defense"); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) ("The court accords less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated." (emphasis in original).

While defendant recognizes the court considers both the importance of the non-party witnesses, in addition to their location, *see Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1161 (S.D. Cal. 2005), defendant has not identified any third-party *non-employee* witnesses it will call. *See*

10

Relator's Opposition to Defendant's Motion to Transfer
Case No. 3:17-cv-04384 (JST)

Mot. at 7-8.  Instead, defendant identifies as relevant witnesses "the NAF employees responsible for creating and administering nationwide policies and procedures for submitting loans to the FHA and VA."  Mot. at 8.  Defendant speculates relator "may call important non-party *ex*-employees as witnesses," and concludes these witnesses are more likely located in the Central District rather than the Northern District of California.  Mot. at 8 (emphasis added).  It identifies no such ex-employee witnesses.  This is pure conjecture.

In suggesting many of the witnesses who will need to be deposed will have to travel to this district for their deposition or to testify (Mot. at 8 (quoting *Abercrombie*, 2014 U.S. Dist. LEXIS 19414, at *16; *Herrera v. Command Securities Corp.*, 2012 U.S. Dist. LEXIS 180591, at *15 (N.D Cal. Dec. 20, 2012)), defendant ignores that, "witnesses typically don't travel for their depositions; the lawyers travel to the witnesses."  *Tate v. Brinderson Constructors, Inc.*, 2016 WL 7387430, at *1 (N.D. Cal. Dec. 21, 2016).  While expert witnesses sometimes travel, when they do, they tend to travel to the attorneys, or to a mutually agreed-upon and convenient place for their deposition, and not necessarily to the district where the case is being litigated.  *Id*. at *1 n.1.

Defendant also argues witnesses subject to compulsory process who have to travel outside of his or her home forum to participate in litigation in another forum will suffer inconvenience. Mot. at 8 (quoting *Herrera*, 2012 U.S. Dist. LEXIS 180591, at *15). This factor only matters if the case actually goes to trial, and "[f]or 98.9 percent of civil cases in the federal system, that won't be an issue."  *Tate*, 2016 WL 7387430, at *1 (citing Table C-4, Statistical Tables for the Federal Judiciary—June 2016, Admin. Office of the U.S. Courts, http://www.uscourts.gov/ sites/default/files/data_tables/stfj_c4_630.2016.pdf).  In cases that do go to trial, the location of the litigation is irrelevant to the witnesses' convenience because the attorneys tend to travel to the witnesses for pretrial matters.  *Id*.  In the remaining few cases that do go to trial, "it's not uncommon simply to use an out-of-district witness's videotaped deposition testimony, or to have the witness testify remotely."  *Id*.

Accordingly, this factor is neutral and favors not disturbing the relator's choice of venue.

V.    **EASE OF ACCESS TO THE EVIDENCE**

In support of this factor, defendant falls back on its familiar refrain, and argues its Motion should be granted because its "corporate records, computer systems, and electronic databases are stored and managed at the Company's headquarters in Tustin, California."  Mot. at 9; Bunce Decl. ¶ 9.  However, "the fact that records are located in a particular district is not itself sufficient to support a motion for transfer," especially where the records are electronic.  *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1445532, at *6 (N.D. Cal. Apr. 7, 2010) (quoting *Royal Queentex Enters. v. Sara Lee Corp.*, *Inc.*, 2000 WL 246599, at *7 (N.D. Cal. Mar. 1, 2000)).  Indeed, "given today's technological advancements, the ability to transfer electronic documents is generally not difficult or burdensome."  *Id.* (citing *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007)).  The cases defendant cites in favor of transfer on this point are inapposite.  *Keys v. Budgetext Corp.*, 2012 U.S. Dist. LEXIS 40161, at *1, 5-6 (N.D. Cal. Mar. 23, 2012) (finding ease of access to evidence was either neutral or slightly favored transfer where defendant's business, a corporation formerly in the business of buying and selling used textbooks, consisted of a single plant in Arkansas and numerous offsite representatives located in approximately 22 states, and there was no evidence that defendant's documents were "electronic, easily searched, and easily transported"); *Inlandboatmen's Union of the Pac. v. Foss Maritime Co.*, 2015 U.S. Dist. LEXIS 444, at *13-14 (W.D. Wash. Jan. 5, 2015) (finding ease of access to sources of proof weighed slightly in favor of transfer where all witnesses identified were located in Hawaii, and noting while key documents were located in Hawaii and the plaintiff failed to identify any that were located in Washington, "the ability to transfer documents electronically with relative ease and expense may lessen the importance of this factor with respect to documentary evidence").  Indeed, as described in the Complaint, the bulk of NAF's pertinent records are electronic.  For example, the government required NAF to electronically process eligible loan requests through an automated underwriting system, and when a borrower defaults the holder of the mortgage submits its initial and final claims for insurance by using HUD's electronic claim system.  *See*, *e.g.*, Compl. ¶¶ 153, 201, 209.  Any relevant NAF records that are not available in electronic format—assuming that any such solely

physical records even exist—can be easily converted to electronic format. As a court in this district so aptly explained:

> in virtually every case, ["ease of access to sources of proof"] has no practical bearing on the question of convenience. Documents are easily transmitted electronically, on discs, or on flash drives, so from a convenience standpoint it doesn't matter where the lawsuit was filed. Moreover, the documents aren't even transmitted to the district where the lawsuit was filed; they're transmitted to the lawyers who filed the lawsuit, wherever they may be.

*Tate*, 2016 WL 7387430, at *1.

Here, "in this type of case, where electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information." *Lax*, 65 F. Supp. 3d at, (citing *Finjan, Inc. v. Sophos Inc.*, 2014 WL 2854490, at *5-6 (N.D. Cal. June 20, 2014); *Fanning v. Capco Contrs., Inc.*, 711 F. Supp. 2d 65, 70 (D. D.C. 2010) ("the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum.").

The Bunce Declaration does not identify how much of the expected discovery will be in hard copy, as opposed to electronic format. Like the defendant in *Lax*, NAF "does not allege that discovery here will implicate any unique types of information that cannot easily be digitized or that on-site inspections will be required in [Tustin, California]." *Lax*, 65 F. Supp. 3d at 780.

Defendant argues "[a]ll of the physical evidence is in the Central District of California at NAF's headquarters," and "[l]itigation should proceed where the case finds its center of gravity."[2] However, neither the Motion nor the Bunce Declaration identifies any physical evidence – let alone any that cannot be digitized. Moreover, NAF's *ipse dixit* argument is not supported by the Complaint.

---

[2] Mot. at 9 (citing *Keys*, 2012 U.S. Dist. LEXIS 40161, at *9 (quoting *Hoefer v. U.S.. Dep't of Commerce*, 2000 U.S. Dist. LEXIS 9299, at *9 (N.D. Cal. June 28, 2000) (finding the "center of gravity" appeared to be in Washington D.C. because the officers and personnel who were involved in negotiating the agreement at issue were located near there, a panel that made recommendations related to the claims met there, and all of the defendants had headquarters or principal offices there).

Thus, this factor is neutral and favors not disturbing the relator's choice of venue.

## VI.   FAMILIARITY OF EACH FORUM WITH THE APPLICABLE LAW

Different district courts are presumptively equally capable of disposing of cases brought under federal law, such as the FCA.  *See*, *e.g.*, *Hawkes v. Hewlett-Packard Co.*, 2012 WL 506569, at *5 (N.D. Cal. Feb. 15, 2012) (quoting *Allstar Mktg.*, 666 F. Supp. 2d at 1133 ("District courts are 'equally capable of applying federal law.'")).   This factor is therefore neutral and favors not disturbing the relator's choice of venue.

## VII.   FEASIBILITY OF CONSOLIDATION OF OTHER CLAIMS

There are no matters that might be consolidated with this one.   Therefore, this factor is neutral and favors not disturbing the relator's choice of venue.

## VIII.   ANY LOCAL INTEREST IN THE CONTROVERSY

The Northern District of California has a strong interest in deciding this action.   As described in the Complaint, and as admitted in the Motion and the Bunce Declaration, at all relevant times alleged in the Complaint, defendant had four offices within this district, and relator was physically located within this district when she worked for defendant, as a processor working on government-insured loans, and observed its policies and practices related to NAF underwriting, endorsing, and certifying the loans in question; making false loan-level certifications; approving exceptions to the government lending guidelines; making "value appeals" to obtain inflated appraisals; manipulating borrower data; failing to perform quality controls and report compliance failures or underwriting deficiencies in government-insured loan files.   She was also in this district when NAF's employees and/or agents wrote and transmitted numerous emails and documents in and to this district giving rise to the FCA claims, and she participated in many of the conversations with co-workers described in the Complaint.   Both FHA-insured and VA-insured mortgage loans were originated in this district, defendant had underwriters located in this district, and at least one government-insured mortgage in this district defaulted and went into foreclosure.

Defendant cites *Quicken*, 217 F. Supp. 3d at 279-80, in support of its argument, suggesting incorrectly that the jurisdictional facts in this case are similar.  Mot. at 10.  In *Quicken*, the plaintiff

did not establish *any* connection with the District of Columbia, other than that "FHA and other government employees in this district received the allegedly false statements and claims made by Quicken, which were submitted and processed through systems administered by FHA staff in this district." *Id.* at 277.  Pointing to prior precedent, the court explained, the "[m]ere involvement . . . on the  part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative of whether plaintiffs' choice of forum . . . receives deference." *Id.* (quoting *Fed. Housing Fin. Agency v. First Tennessee Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D. D.C. 2012)).[3]  Similarly, in *FTC v. Graco Inc.*, 2012 U.S. Dist. LEXIS 116826, at *16 (D. D.C. Jan. 26, 2012), the court found "*no underlying operative facts*" arose in Washington D.C., where the asset purchase agreement was negotiated, drafted, and executed in Minneapolis, the proposed purchaser had its principal place of business in Minnesota, the business that was the subject of the asset purchase agreement was located in the Midwest and its key competitors who would presumably be affected by the proposed acquisition were also located in the Midwest).  *Id.* at *15-16 (emphasis added).

Thus, this factor is neutral, and weighs against transfer.

## IX.   THE RELATIVE CONGESTION AND TIME OF TRIAL IN EACH FORUM

Defendant uses stale statistics regarding relative court congestion to support its transfer application.  Mot. at 11 & nn.5 & 6.  The current statistics as to relative court congestion show that as of June 30, 2018, there were more than 4,000 cases pending in the Central District of California than the Northern District of California.[4]  The difference in time to trial between the two districts is

---

[3] Although the court recognized that the decisions of Quicken employees in its Michigan offices would be a focus in the case, which favored transfer to the Eastern District of Michigan, this finding does not support NAF's transfer bid.  The *Quicken* court was not presented with a choice between, as here, a district in which the defendant's headquarters are located (C.D. Cal.) and a district in which the defendant had multiple offices, employed the relator, implemented its fraudulent policies, made false loan-level certifications, and in which numerous important witnesses and pieces of evidence are located (N.D. Cal.).  It was presented with a choice between a district with no substantive ties to the operative facts (D. D.C.) and a district in which defendant had its main offices (E.D. Mich.).  Accordingly, *Quicken*'s jurisdictional facts are distinguishable.

[4] During the 12-month period ending September 30, 2018, 10,180 cases were pending in the Northern District of California, whereas 14,208 cases were pending in the Central District of

1    8.7 months.  *Id.*  As this district has concluded previously, "relative court congestion is at best, a

2    minor factor in the section 1404 calculus," and "this factor alone cannot control the overall

3    balance." *Benson*, 2010 WL 1445532, at *6 (quoting *Royal Queentex*, 2000 WL 246599, at *8).

4        Therefore, the relative congestion of the courts, just like several of the other considerations

5    described above is neutral, and weighs against transfer.

6                                    **CONCLUSION**

7        Because defendant cannot meet its heavy burden on this motion, and has failed to establish

8    that any of the relevant factors weighs in favor of transfer, relator Malou Tutanes-Luster

9    respectfully requests that the Motion be denied.

10

11   Dated:  January 14, 2019                          **GRANT & EISENHOFER P.A.**

12                                               */s/ Kyle J. McGee*

13                                               Kyle J. McGee, *Pro Hac Vice*
                                                 Laina M. Herbert, *Pro Hac Vice*
14                                               123 Justison Street
                                                 Wilmington, DE  19801
15                                               Telephone:  (302) 622-7000
                                                 Emails:  kmcgee@gelaw.com
16                                                        lherbert@gelaw.com

17   CUTTER LAW PC
     C. Brooks Cutter, SBN 121407
18   John R. Parker, Jr., SBN 257761
     401 Watt Avenue
19   Sacramento, CA 95864
     Telephone:  (916) 290-9400
20   Emails:  bcutter@cutterlaw.com
               jparker@cutterlaw.com
21
     THOMAS & SOLOMON LLP
22   J. Nelson Thomas
     Jonathan W. Ferris
23
     _____
24   California.  *See* Comparison of Districts within the Ninth Circuit – 12-month Period Ending
     September      30,      2018      at      9,      available      at
25   https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2018.pdf.   In
     this same period, cases filed in the Northern District of California had a median time to trial interval
26   of 30.0 months, whereas cases filed in the Central District of California had a median time to trial
     interval of 21.3 months. *Id.*
27

28   _____

1

Michael J. Lingle
Annette M. Gifford (CA Bar 270777)

2

693 East Avenue
Rochester, New York 14607

3

Tel.:  (585) 272-0540
nthomas@theemploymentattorneys.com

4

jferris@theemploymentattorneys.com
mlingle@theemploymentattorneys.com

5

amgifford@gmail.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Relator's Opposition to Defendant's Motion to Transfer
Case No. 3:17-cv-04384 (JST)