UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MALOU TUTANES-LUSTER,<br><br>Plaintiff,<br><br>v.<br><br>BROKER SOLUTIONS, INC.,<br><br>Defendant. | Case No. 17-cv-04384-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>Re: ECF Nos. 40, 48, 50 |

Before the Court is a motion to transfer venue filed by Defendant Broker Solutions, Inc. d/b/a New American Funding ("NAF"). ECF No. 40. Plaintiff-Relator Malou Tutanes-Luster opposes the motion. ECF No. 48. For the reasons set forth below, the Court will GRANT the motion.

## I. BACKGROUND

In this *qui tam* action, Relator Tutanes-Luster asserts that Defendant NAF has violated the False Claims Act ("FCA") by presenting false or fraudulent claims for payment or approval to the federal government, making or using false records or statements material to those claims, and using false records or statements to reduce an obligation to transmit money or property to the Government. *See* ECF No. 1 ("Compl."); 31 U.S.C. §§ 3729(a)(l)(A), (B), (G). Although the United States has declined to intervene, Relator maintains this action in the name of the Government. *See* ECF No. 13 at 1 (citing 31 U.S.C. § 3730(b)). Relator alleges that NAF, a lender approved by the Government to originate and underwrite single-family residential mortgages insured by the Government, knowingly approved loans that violated government rules while falsely certifying compliance with those rules. *Id.* ¶ 31.

The Federal Housing Administration ("FHA") and the U.S. Department of Veterans Affairs ("VA") offer mortgage-insurance programs which insure mortgage holders against loss if the borrower defaults on his or her government loan. *Id.* ¶¶ 8, 10. If a homeowner defaults on a government loan, the programs will pay the mortgage holder the full balance of the loan (or 50% of the loan, in the case of VA loans). *Id.* ¶ 11. The Government outsources the loan underwriting process to outside lenders, including NAF, who perform due diligence and certify the loans. *Id.* ¶¶ 22, 28. According to Relator, because NAF earns profits from its underwriting and origination of these loans – but is protected against loss by the Government's insurance programs if a loan fails – it has an incentive to approve as many loans as possible, whether they meet the Government's underwriting requirements or not. *Id.* ¶¶ 23-25.

Relator was employed by NAF as a loan processor in its now-closed San Jose branch office from August 2016 to December 2016. Compl. ¶¶ 60-61; ECF No. 40-2 ¶ 18. She alleges that from at least July 2011 to the present, NAF recklessly originated and underwrote government loans, and falsely certified to the Government that the loans were eligible for government insurance. Compl. ¶ 32. Although Relator was physically located in San Jose, she worked with NAF's locations in multiple states and claims to have observed that NAF's activities related to the improper issuance of government loans were national in scope. *Id.* ¶¶ 62-63.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) ("Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))).

Courts considering transfer must engage in a two-step analysis. First, courts determine whether the action could have been brought in the target district. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Second, courts "weigh in the balance a number of case-specific factors" to undertake an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc.*, 487 U.S. at 29. The factors the Court should consider include:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *see also Jones*, 211 F.3d at 498-99. The moving party bears the burden of showing that the transferee district is the more appropriate forum for the action. *Jones*, 211 F.3d at 499.

### III. DISCUSSION

#### A. Venue in the Target District

Transfer is only appropriate if the action could have been brought in the Central District of California. 28 U.S.C. § 1404(a). "A district court is one in which an action could have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper." *Duffy v. Facebook, Inc.*, Case No. 16-cv-06764-JSC, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017) (citing *Hoffman*, 363 U.S. at 343-44).

The Central District of California meets these requirements. First, there is subject matter jurisdiction because Relator sues under the False Claims Act. *See* 28 U.S.C. § 1331. Second, NAF is subject to personal jurisdiction in the Central District because NAF maintains its corporate headquarters and principal place of business in Tustin, California. *See* ECF No. 40 at 9. Finally, venue is proper under 28 U.S.C. § 1391(b)(1) because NAF, the sole defendant, resides in the Central District. The first requirement for transfer is therefore met.

#### B. Transfer for the Convenience of the Parties and the Interests of Justice

NAF argues that the convenience of the parties and the interests of justice warrant

3

transferring this action because the underlying allegations have their locus in Tustin, California, where NAF maintains its headquarters and principal place of business. ECF No. 40 at 9. NAF emphasizes that the relevant documents are stored in Tustin, *id.*; that NAF's submission of certifications to the FHA and VA took place there, *id.* at 9-10; and that the essential witnesses, evidence, and events of the case reside in or unfolded in the Central District, *id.* Finally, NAF argues that Relator has brought a case outside of her home forum without providing a meaningful reason for bringing the action here. *Id.* at 10.

In response, Relator maintains primarily that her choice of forum should be given deference, ECF No. 48 at 7-9, and further asserts that the events giving rise to the action took place in the Northern District, *id.* at 9-12. Relator points out that NAF transacts business in the Northern District through its four offices located here. *Id.* at 10. Though Relator now resides in Arizona, she was employed at a NAF branch office in the Northern District as a processor of government-insured loans when she observed NAF's policies and practices related to underwriting, endorsing, and certifying the loans in question, as well as other allegedly fraudulent activity giving rise to her FCA claims. *Id.* at 19.

The Court now examines the relevant factors in turn.

### 1. Plaintiff's Choice of Forum

Courts generally accord "great weight" to plaintiff's choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This weight is diminished, however, when the plaintiff is a *qui tam* relator asserting the rights of the Government. *See S.F. Tech. v. Glad Prods. Co.*, No. 10-CV-00966 JF (PVT), 2010 WL 2943537, at *7-8 (N.D. Cal. July 26, 2010) (concluding, in line with "substantial persuasive authority," that in a *qui tam* action plaintiff's choice of forum "is not entitled to the considerable weight it typically receives"); *United States ex rel. Haight v. Catholic Healthcare W.*, No. C-01-1202 PJH, 2001 WL 1463792, at *4 (N.D. Cal. Nov. 9, 2001) (holding that the fact that "the United States, rather than relators, is the real party in interest . . . lessen[s] the deference traditionally accorded the plaintiffs' choice of forum").

A plaintiff's choice of forum also receives less deference when the plaintiff does not reside in that forum. *See Gemini Capital Grp. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir.

1998). Here, Relator does not reside in the Northern District of California, but in Arizona. ECF No. 40-1 at 2. Relator responds by pointing to *United States ex rel. Thrower v. Academy Mortgage Corporation*, Case No. 16-cv-02120-EMC, 2018 WL 4053484 (N.D. Cal. Aug. 24, 2018), a similar *qui tam* action arising under the False Claims Act where the plaintiff-relator resided outside the selected district and the court denied the defendant's motion to transfer venue. ECF No. 48 at 8-9. While Relator is correct that the court in *Thrower* ultimately rejected a motion to transfer, the court specifically afforded the relator's choice of forum "very limited" weight. 2018 WL 4053484, at *5 (emphasis added). Instead, the court based its denial of the motion on the fact that it had already issued a substantive ruling in the matter, the factors overall were largely neutral, and neither party would be significantly inconvenienced should the action remain in the Northern District. *Id.* at *7. Thus, *Thrower* provides little help to the Court in deciding this motion.

A related consideration is the respective parties' contacts with the plaintiff's chosen forum, including the contacts relating to the plaintiff's cause of action. *Jones*, 211 F.3d at 498-99. Here, Relator has some contacts with the chosen forum relating to her causes of action. Relator was employed by NAF in San Jose and physically located there at the time of her employment. ECF No. 48 at 19. As a loan processor, Relator observed NAF's

> policies and practices related to NAF underwriting, endorsing, and certifying the loans in question; making false loan-level certifications; approving exceptions to the government lending guidelines; making "value appeals" to obtain inflated appraisals; manipulating borrower data; failing to perform quality controls and report compliance failures or underwriting deficiencies in government-insured loan files.

*Id.* It is unclear from both the Complaint and Relator's opposition to the instant motion whether the activities alleged took place *in* the Northern District, or if Relator merely observed them from her physical location there, for example, over email or by phone. For example, the Complaint states that "[a]lthough Relator was physically located in San Jose, Relator worked with NAF's locations in multiple states around the country and observed that NAF's policies and practices described in this Complaint were national in scope." Compl. ¶ 62. Similarly, regarding her allegations that NAF's management would dictate the approval of loans even if they did not meet

5

the Government's requirements, "Relator reviewed files from around the country and it was true across all locations that management was empowered in the same way to override underwriting decisions." *Id.* ¶ 275. Relator recalls three loan officers specifically who submitted non-qualifying files for approval, but she does not state their location at the time of submission. *Id.* ¶¶ 284-88. Thus, overall Relator has some ties to the Northern District related to her causes of action, but they appear to be insignificant in comparison to the national scope of her allegations.

NAF maintains it has limited contacts in the Northern District. NAF has four branch offices here, out of 182 nationwide, and three underwriters, out of 120. ECF No. 40-2 ¶¶ 6, 16. From July 1, 2012 to November 30, 2018, NAF originated 861 FHA-insured mortgage loans for properties located in the Northern District, or 1.6% of the 52,912 FHA loans it originated in total for the same period. *Id.* ¶ 13. During that period, NAF originated 257 VA-insured mortgage loans for properties in the Northern District, out of 19,321 total, or 1.3%. *Id.* ¶ 14. In sum, NAF transacts business in the Northern District, employs underwriters here, and originates loans for some properties located within the district. Like Relator, NAF has some, but not extensive, contacts in the Northern District.

Another question courts may consider in determining the level of deference to grant plaintiff's choice of forum is whether "the operative facts" of the case "occurred within the forum of original selection" and whether that forum had any "particular interest in the parties or the subject matter." *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1079 (S.D. Cal. 2011) (quoting *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). "The Ninth Circuit affirms transfers in cases where the district court finds 'no significant connection between [the forum] and the facts alleged in the complaint.'" *Id.* (quoting *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007)).

NAF argues that the operative facts did not occur in the Northern District because the management-level decisions about loan underwriting, certification, and quality control policy underlying Relator's allegations occurred at its central headquarters in Tustin, California. *See* ECF No. 40 at 12-14. Relator responds with a litany of actions she alleges NAF "took in [the Northern D]istrict giving rise to the Complaint's FCA claims," including, *inter alia*, underwriting,

6

endorsing, and certifying loans for government insurance; making false loan-level certifications to government agencies; and approving exceptions to government lending guidelines to push through unqualified loans. ECF No. 48 at 9-10.

Relator fails to offer any specifics regarding whether the individuals who took these actions were located in the Northern District while doing so. Relator states that *she* was in this district when NAF employees "wrote and transmitted numerous emails and documents" giving rise to her FCA claims, without noting the location of those employees. *Id.* at 10. As NAF points out in its reply, the Complaint repeatedly mentions Kevin English, NAF's Vice President of Operations – who works in Tustin – as a key participant in the management override policy. ECF No. 50 at 5. Moreover, Relator alleges that NAF's activities were national in scope and identifies nothing about those activities that is particular to this district. The Court is persuaded by NAF's characterization of the operative facts in this case as national in scope, not significantly connected to the Northern District, and driven in large part by decisions made by NAF management in the Central District.

In sum, the lawsuit is a *qui tam* action brought on behalf of the U.S. Government, Relator does not reside in the Northern District, and she has minimal contacts in the selected forum. Relator's allegations are grounded in decisions made in Tustin, California, where NAF's corporate officers, underwriting supervisors, compliance and quality assurance staff, and insuring department are all located. ECF No. 40 at 13. Accordingly, the Court affords minimal deference to Relator's chosen forum.

### 2. Convenience of the Parties

Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient." *Adobe Sys. Inc. v. Childers*, No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *9 (N.D. Cal. Feb. 14, 2011) (citing *Van Dusen*, 376 U.S. at 646). Transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986)). "Defendants must show that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum." *Id.*

7

As explained above, the "strong presumption in favor of plaintiff's choice of forum" is weakened here by the facts that the case is a *qui tam* action, that Relator does not reside in the chosen forum, and that the allegations appear to stem from management-level decisions in the Central District. NAF argues transfer is more convenient for the parties because NAF's headquarters and principal place of business is located in Tustin, California, and its potential witnesses and records are located there. ECF No. 40 at 14. The Court agrees that the Central District would be more convenient for NAF.

Relator responds that transfer is inappropriate where "the effect is simply to shift the inconvenience to the plaintiff." ECF No. 48 at 14 (quoting *Adobe Sys., Inc.*, 2011 WL 566812, at *9). But Relator does not describe any inconvenience she will face if the litigation is transferred to the Central District. Relator cites to *Leroy-Garcia v. Brave Arts Licensing*, No. C 13-01181 LB, 2013 WL 4013869 (N.D. Cal. Aug. 5, 2013), where the defendant's motion to transfer was granted because the plaintiff was a resident of Spain and "did not argue it was more difficult to litigate in Los Angeles than San Francisco." ECF No. 48 at 13. Relator implies that this case is unlike *Leroy* but does not actually identify the distinction. Instead, the case is obviously similar to the one before the Court: Relator is also a resident of another district and has made no argument that it would be more difficult for her to litigate in the Central District than the Northern District. *Leroy-Garcia* supports transfer here.

Similarly, *Thrower* – which Relator relies on repeatedly, including with regard to this factor – does not support denying Defendant's motion to transfer based on the relative convenience to the parties. There, the relator filed her action in the Northern District of California, but resided in the Eastern District. *Thrower*, 2018 WL 4053484, at *5. The defendant moved to transfer to the District of Utah, where its business was headquartered. *Id.* at *4. The court observed that "the Northern District is much closer and therefore more convenient for [Relator] than the District of Utah." *Id.* at *5. In part because the District of Utah was more convenient for the defendant, but less convenient for the relator, the court refused to permit transfer. *Id.* at *7. Here, remaining in the Northern District actually be *less* convenient for Relator, given that she resides in Arizona. *See* ECF No. 40 at 14. Thus, the reasoning in *Thrower*

8

1 does not support transfer in this case.

2 Because the Central District is clearly more convenient to NAF, and Relator offers no reason the Northern District would be more convenient for her, the Court finds this factor weighs in favor of transfer.

### 3. Convenience of the Witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered" in ruling on a motion to transfer venue under § 1404(a). *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (quoting *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005)). In balancing the convenience of witnesses, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony. The convenience of non-party witnesses is a more important factor than the convenience of party witnesses," including party employees. *Id.* (quoting *Catch Curve, Inc. v. Venali, Inc.*, Case No. CV 05-04820 DDP (AJWx), 2006 WL 4568799, at *3 (C.D. Cal. Feb. 27, 2006)). Furthermore, when "establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Hendricks v. StarKist Co.*, Case No.: 13-cv-729 YGR, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

NAF argues the Central District will be more convenient for party witnesses, primarily its own employee witnesses. ECF No. 40 at 15. Although NAF fails to name any specific potential witnesses, it argues that "the relevant witnesses will be the NAF employees responsible for creating and administering nationwide policies and procedures for submitting loans to the FHA and VA." *Id.* These witnesses reside near NAF headquarters in Tustin, California, where this policy development and decision-making occurs. *Id.*; *see also* ECF No. 40-2 ¶¶ 15, 17. The Court agrees that the Central District would be more convenient to NAF's employee witnesses.

Relator, for her part, does not identify any party or non-party witness who would be inconvenienced by either granting or denying the motion to transfer. She identifies no witnesses who are presently in the Northern District. Therefore, it is unclear at best whether Relator's witnesses would find it more convenient to participate in litigation in either the Northern or

9

1 Central District.

As neither party has identified any inconvenience to non-party witnesses that would result from either transferring or staying, but NAF has argued that its employee witnesses reside in the Central District, this factor weighs slightly in favor of transfer.

#### 4. Ease of Access to the Evidence

Courts generally do not regard "the transportation of documents . . . as a burden because of technological advances in document storage and retrieval." *Hendricks*, 2014 WL 1245880, at *4 (citing *Van Slyke v. Capital One Bank,* 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007)). While this diminishes the weight of this factor in the transfer determination, ease of access to the evidence remains a factor to consider. *Roe v. Intellicorp Records, Inc.*, No. 12-CV-0256-YGR, 2012 WL 3727323, at *3 (N.D. Cal. Aug. 27, 2012) (citing *Patent Mgmt. Found., LLC v. Analog Devices, Inc.*, Case No. C-10-3620 SBA, 2011 WL 197831, at *4 (N.D. Cal. Jan. 20, 2011)).

NAF argues this factor favors transfer because this case "will primarily focus on documents pertaining to loan files and corporate records" which are managed "at the company's headquarters in Tustin." ECF No. 40 at 16. Relator responds that "the fact that records are located in a particular district is not itself sufficient to support a motion for transfer," particularly when those documents are available electronically. ECF No. 48 at 17 (quoting *Benson v. JPMorgan Chase Bank, N.A.*, Nos. C-09-5272 EMC, C-09-5560 EMC, 2010 WL 1445532, at *6 (N.D. Cal. Apr. 7, 2010)).

NAF replies that although electronic transfer of documents lessens the weight of this factor, venue transfer should be granted when all evidence is located in the transferee district and the plaintiff fails to establish any evidence in its chosen district. ECF No. 50 at 8 (citing *Inlandboatmen's Union of the Pac. v. Foss Mar. Co.*, No. C14-1403JLR, 2015 WL 64933, at *5 (W.D. Wash. Jan. 5, 2015)). While this one factor is not dispositive, NAF's point is well taken. Although the ease of electronic discovery reduces the importance of this factor, "costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013) (citing *Italian Colors Rest. v. Am. Express Co.*, No. 03-3719, 2003 WL 22682482, at *5

(N.D. Cal. Nov. 10, 2003)); *see also FTC v. Graco, Inc.*, Civil Action No. 11-cv-02239 (RLW), 2012 WL 3584683, at *6 (D.D.C. Jan. 26, 2012) (acknowledging that "these technological advances do not obviate the access to evidence inquiry entirely"). Relator appears to acknowledge that the relevant records are held in the Central District, arguing simply that the ease of electronic discovery and the fact that NAF has identified no specific physical evidence located there should lead the Court to find this factor neutral. *See* ECF No. 48 at 17-19.

While NAF does not identify specific physical documents located in the Central District, it states that "all pertinent files" are located there. ECF No. 50 at 8. NAF's corporate records, computer systems, and electronic databases are stored and managed at its Tustin headquarters. ECF No. 40 at 16. Relator, meanwhile, offers no examples of evidence located in the Northern District. On balance, while acknowledging the benefits of electronic discovery in reducing the importance of this factor, the ease of access to evidence here slightly favors transfer.

### 5. Familiarity of Each Forum with the Applicable Law

As the FCA is a federal statute, the Northern District and the Central District are equally equipped to adjudicate Relator's claims. This factor is neutral. *See Roe*, 2012 WL 3727323, at *4.

### 6. Feasibility of Consolidation of Other Claims

As there are no pending actions that could be consolidated with this one, this factor is neutral.

### 7. Any Local Interest in the Controversy

In evaluating the interests of justice, a court may consider public interest factors, including local interests in deciding local controversies. *Decker Coal Co.*, 805 F.2d at 843.

In *Thrower*, the Court found that the proposed district had a greater local interest in the controversy because "many more claims emanated" from that district than the selected district. 2018 WL 4053484, at *7. Here, it is unclear what volume of claims emanate from each district based on the generalized assertions in Relator's Complaint. *See* Compl. ¶ 282 ("Relator saw this management override happen repeatedly," without identifying where management operated); *id.* ¶ 284 (naming three loan officers who submitted non-qualifying files, without specifying where these employees were located); *id.* ¶ 369 ("Relator heard comments from loan officers that they

11

had been at the property while the appraiser was performing the inspection to help get a good value for the property," again not identifying where this appraisal took place). Without pointing to specific instances of wrongdoing by NAF in the Northern District, Relator instead alleges the practices violating the FCA were "national in scope" based on her work across locations in multiple states. *Id.* ¶ 62.

NAF argues that the Central District has a strong interest in this case because the nexus of the claims is NAF's headquarters in Tustin, where it makes its "executive management decisions and creates, implements, and directs its various national policies and procedures." ECF No. 40 at 17. NAF cites *United States v. Quicken Loans Inc.*, 217 F. Supp. 3d 272 (D.D.C. 2016), an FCA action where the court transferred venue under § 1404(a) because the most significant events underlying the claims occurred where the decisions were made to underwrite, endorse, and certify the loans at issue. *Id.* (citing 217 F. Supp. 3d at 279-80). While NAF employs underwriters in both districts, there are many more operating in the Central District. *See* ECF No. 40-2 ¶ 16 (of 120 FHA and VA underwriters who currently work at NAF, 58 are in the Central District of California and three are located in the Northern District); *id.* ¶ 6 (there are 39 NAF branch offices in the Central District and four in the Northern District). Moreover, a key component of Relator's allegations is that NAF had a policy whereby central management would override the recommendations of lower-level employees in the branch offices. Compl. ¶¶ 275, 282. Management, including the officers with direct supervisory responsibility for the activities described by Relator, is located in Tustin. ECF No. 40-2 ¶¶ 8, 20-21. Also in Tustin are the compliance, quality assurance, and insuring departments, which confirmed the eligibility of the loans at issue and then certified and submitted them to the government. *Id.* ¶¶ 10-12. The Court agrees that the Central District has a stronger interest in resolving the controversy.

Accordingly, this factor weighs in favor of transfer.

### 8. The Relative Court Congestion and Time of Trial in Each Forum

"The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984); *Hendricks*, 2014 WL 1245880, at *6. Relator cites

statistics showing the Central District had 4,000 more cases pending than the Northern District for the 12-month period ending September 30, 2018 (10,180 in the Northern District, while 14,208 were pending in the Central District). ECF No. 48 at 20-21. But over this same period, the time from filing to trial in a civil case in the Central District was 21.3 months, compared to 30.0 months in the Northern District. *Id.* And as NAF points out, while the Central District has more cases pending, it also has more judges to handle the caseload (29 district court judges compared to 19 in the Northern District). ECF No. 50 at 10. Thus, the per-judge caseload in the Central District is actually slightly lower. *See* U.S. District Courts – Federal Court Management Statistics – Comparison Within Circuit (Sept. 30, 2018), https://www.uscourts.gov/file/24854/download (accessed Mar. 4, 2019) (showing 639 total filings per judge in the Northern District of California and 634 filings per judge in the Central District of California for the 12 months ended September 30, 2018).

The per-judge caseload in the Central District and faster time to trial both weigh in favor of transfer. *See Paramount Farms Int'l LLC v. R.A.W. Real & Wonderful, LLC*, CV 14-581 GAF (VBKx), 2014 WL 12597157, at *8 (C.D. Cal. Apr. 4, 2014) (retaining a case in the original district even though it had more total cases than its counterpart, because, emphasizing the "relevant statistic of how many cases per judge each district has," judges in the original district "appear[ed] to run a more efficient docket and set cases for trial, on average, thirteen months faster than their counterparts").

**IV. CONCLUSION**

For the above reasons, the Court GRANTS Defendant's motion to transfer venue to the Central District of California. Accordingly, the Court will not rule on NAF's pending motion to dismiss, ECF No. 41.

**IT IS SO ORDERED.**

Dated: March 4, 2019

_____
JON S. TIGAR
United States District Judge