**WEINER BRODSKY KIDER PC**

Mitchel H. Kider, CA Bar No. 116479
Joel A. Schiffman, CA Bar No. 90138
Timothy P. Ofak (*Admitted Pro Hac Vice*)
Lindsay L. Buchanan (*Admitted Pro Hac Vice*)
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone: 202.628.2000
Facsimile: 202.628.2011
Email: kider@thewbkfirm.com
        schiffman@thewbkfirm.com
        ofak@thewbkfirm.com
        buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**

Joshua A. Rosenthal, CA Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: 707.570.2200
Facsimile: 510.832.2945
Email: jrosenthal@mhlawcorp.com

*Attorneys for Defendant Broker Solutions, Inc.*
*d/b/a New American Funding*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MALOU TUTANES-LUSTER,<br><br>Plaintiff,<br><br>v.<br><br>BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING,<br><br>Defendant. | Civil Action No. 19-cv-01630-PSG-JPR<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT NEW AMERICAN FUNDING'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Date:** July 8, 2019<br>**Time:** 1:30 pm<br>**District Judge:** Phillip S. Gutierrez<br>**Courtroom:** 6A |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................... i

TABLE OF AUTHORITIES ................................................. iii

INTRODUCTION ......................................................... 1

PROCEDURAL BACKGROUND ................................................ 1

LEGAL STANDARD ....................................................... 2

ARGUMENT ............................................................. 3

    I.    RELATOR FAILS TO PLEAD A FCA CAUSE OF ACTION ....... 3

        A. The Complaint Does Not Identify False Claims For Payment ..... 3

        B. The Amended Complaint Fails to Allege Promissory Fraud ....... 5

        C. Promissory Fraud Cannot Be Used to Circumvent Implied False Certification ................................................ 8

        D. The FCA Cannot Create Liability for Compliant Loans ........... 10

        E. The Annual Certifications Cannot Support FCA Liability ......... 10

        F. Relator Proffers No Specific Allegations Concerning VA Loans ..................................................... 11

        G. The Complaint Does Not Identify A Single False Certification 12

        H. The Amended Complaint Fails to Allege Materiality ............... 13

        I. Relator Fails to Plead Scienter ................................... 16

    II.    The Complaint Does Not Allege a Plausible "Scheme To Defraud" .......................................................... 19

        A. Relator's First Scheme Has Not Been Sufficiently Pleaded ...... 21

        B. Relator's Second Scheme is Deficient ........................... 21

        C. Relator's Third Scheme Also Suffers Pleading Deficiencies ..... 22

        D. Relator's Fourth Scheme Also Fails ............................ 23

        E. Relator's Fifth Scheme is Insufficiently Pleaded ................ 23

        F. Relator's Sixth Scheme is Also Deficient ....................... 24

        G. Relator's Seventh Scheme Does Not Create FCA Liability ....... 25

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1

CONCLUSION.................................................................................................... 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Memorandum In Support of Defendant's Motion to Dismiss
Case No. 3:19-cv-01630-PSG

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
   605 F.3d 1283 (11th Cir. 2010) ............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................2, 3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................2, 3

*Cafasso v. Gen. Dynamics C4 Sys.*,
   637 F.3d 1047 (9th Cir. 2011) ....................................................................2, 3, 12

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ...............................................................................12

*Carlson v. DynCorp Int'l LLC*,
   657 F. App'x 168 (4th Cir. 2016) .........................................................................15

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ..................................................................3, 12, 14

*Gonzalez v. Planned Parenthood of L.A.*,
   759 F.3d 1112 (9th Cir. 2014) ...............................................................................3

*Gunderson v. ADM Inv. Servs., Inc.*,
   85 F. Supp. 2d 892 (N.D. Iowa 2000) .................................................................22

*Hagood v. Sonoma Co. Water Agency*,
   81 F.3d 1465 (9th Cir. 1996) .................................................................................5

*Lesnik v. Se*,
   No. 16-CV-01120, 2018 U.S. Dist. LEXIS 170373 (N.D. Cal. Oct.
   1, 2018) ...................................................................................................................4

*Li v. Kerry*,
   710 F.3d 995 (9th Cir. 2013) .................................................................................2

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

*Lizza v. Deutsche Bank Nat'l Trust Co.*,
   1 F. Supp. 3d 1106 (D. Haw. 2014) ..................................................................22

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) .............................................................................................17

*Shalaby v. Bernzomatic*,
   No. 11-cv-68, 2011 U.S. Dist. LEXIS 102172 (S.D. Cal. Sept. 9, 2011) ...............................................................................................................21

*U.S. ex rel. Nelson v. Sanford-Brown, Ltd.*,
   136 S. Ct. 2506 (2016) ........................................................................................6

*United States ex rel. Campie v. Gilead Scis.*,
   862 F.3d 890 (9th Cir. 2017) ..........................................................................5, 9

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
   290 F.3d 1301 (11th Cir. 2002) ..........................................................................4

*United States ex rel. Creighton v. Beauty Basics Inc.*,
   No. 2:13-cv-1989, 2016 U.S. Dist. LEXIS 83573 (N.D. Ala. June 28, 2016) .......................................................................................................12, 14

*United States ex rel. Durkin v. City of San Diego*,
   No. 15-cv-2674, 2018 U.S. Dist. LEXIS 114744 (S.D. Cal. July 10, 2018) ...........................................................................................................17

*United States. ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ................................................................3, 5, 6, 7

*United States ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) .............................................................5, 6, 7, 8

*United States ex rel. Kelly v. Serco, Inc.*,
   846 F.3d 325 (9th Cir. 2017) ...............................................................1, 3, 9, 13

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ............................................................................18

*United States ex rel. Marcus v. Hess*,
   317 U.S. 537 (1943) ..........................................................................................10

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
   822 F.3d 650 (2d Cir. 2016) ............................................................................7, 8

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*United States ex rel. Purcell v. MVI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) ..............................................................17

*United States ex rel. Rose v. Stephens Inst.*,
    909 F.3d 1012 (9th Cir. 2018)......................................................9, 10, 20

*United States ex rel. Rostholder v. Omnicare, Inc.*,
    745 F.3d 694 (4th Cir. 2014) .............................................................16

*United States ex rel. Se. Carpenters Reg'l Council v. Fulton Cty.*,
    No. 1:14-cv-4071, 2016 U.S. Dist. LEXIS 103054 (N.D. Ga. Aug.
    5, 2016)...........................................................................................15, 25

*United States ex rel. Silingo v. Wellpoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018) .................................................................8

*United States ex rel. Streck v. Allergan, Inc.*,
    894 F. Supp. 2d 584 (E.D. Pa. 2012)....................................................17

*United States ex rel. Unite Here v. Cintas Corp.*,
    No. 06-cv-2413, 2008 U.S. Dist. LEXIS 120044 (N.D. Cal. April
    16, 2008).........................................................................................5, 7, 8

*United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*,
    336 F.3d 375 (5th Cir. 2003) .................................................................6

*United States v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2010) .................................................................4

*United States v. McNinch*,
    356 U.S. 595 (1958) .........................................................................4, 11

*United States v. Reunion Mortg., Inc.*,
    No. 13-cv-2340, 2013 U.S. Dist. LEXIS 158505 (N.D. Cal. Nov.
    5, 2013).................................................................................................11

*United States v. Safran Grp., S.A.*,
    No. 15-cv-00746, 2017 U.S. Dist. LEXIS 8408 (N.D. Cal. Jan. 19,
    2017).......................................................................................................3

*United States v. Sanford-Brown, Ltd.*,
    788 F.3d 696 (7th Cir. 2015) .................................................................6

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

*United States v. Sci. Apps. Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010) .................................................................8, 13, 17

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ...............................................................................3

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) .................................................................................*passim*

**Statutes, Rules and Regulations**

2 C.F.R. § 2424.1110 ...............................................................................................16

24 C.F.R. § 25.6 .......................................................................................................15

24 C.F.R. § 25.6(j) ....................................................................................................15

24 C.F.R. § 30.35 ......................................................................................................15

12 U.S.C. § 1708(c) ..................................................................................................15

12 U.S.C. § 1735f-14 ................................................................................................15

20 U.S.C. § 1094(a)(20) .............................................................................................6

31 U.S.C. §§ 3729(a)(1)(A)-(B) ...........................................................................3, 19

31 U.S.C. § 3729(b)(1) .............................................................................................17

31 U.S.C. § 3729(b)(1)(B) ..........................................................................................5

Fed. R. Civ. P. 9(b) ...........................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 2

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1

## **INTRODUCTION**

Relator's amended *qui tam* complaint ("Amended Complaint") alleges that Defendant Broker Solutions, Inc. d/b/a New American Funding ("NAF") violated the False Claims Act ("FCA") in connection with NAF's participation in the Federal Housing Administration's ("FHA") mortgage insurance program and the Department of Veterans Affairs' ("VA") mortgage guaranty program, but falls woefully short of the FCA's stringent pleading standards.  Relator fails to allege the submission of a single false claim for payment to the government, which is the "*sine qua non*" of an FCA action.  *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017).  This deficiency alone defeats Relator's claims.

While the Amended Complaint alleges numerous vague and inconsequential statements, from a handful of employees, regarding independent cases of alleged regulatory non-compliance—or the mere *mention* of non-compliance—Federal Rule of Civil Procedure 9(b) was designed to prevent such vague and implausible pleadings.  Relator further fails to tie such regulatory violations to the submission of any actual claims for payment to the U.S. Department of Housing and Urban Development ("HUD") or VA.[1]  These basic deficiencies fail to satisfy the heightened pleading standards applicable to FCA claims.

Boiled down, Relator is seeking to impose FCA liability on every claim made to HUD and VA on any loan endorsed by NAF regardless of whether the loan was properly underwritten.  This unconscionable use of the FCA should not be countenanced by the Court.  Because Relator fails to meet the plausibility standard required under Rule 12(b)(6), the Amended Complaint fails to state a claim and must be dismissed.

## **PROCEDURAL BACKGROUND**

Relator filed a *qui tam* complaint under seal in the Northern District of

---

[1] FHA is a part of HUD.  *See* Am. Compl. ¶ 6.

California on August 2, 2017. (ECF No. 1). The United States declined to intervene in this action on July 13, 2018. (ECF No. 13). The complaint was subsequently unsealed on August 6, 2018. (ECF No. 17). On January 3, 2019, NAF timely filed a Motion to Dismiss the *qui tam* complaint contemporaneously with its Motion to Transfer Venue to the Central District of California. (ECF Nos. 40 & 41). On March 4, 2019, NAF's Motion to Transfer Venue was granted, and this action was transferred to the Central District of California. (ECF No. 54). On March 15, 2019, the parties filed a Joint Stipulation and Proposed Order allowing Relator to file an Amended Complaint. (ECF No. 72). The Court issued an order granting the stipulation on March 19, 2019. (ECF No. 79). Relator filed her Amended Complaint on April 15, 2019. (ECF No. 94). NAF now timely files this Motion to Dismiss the Amended Complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted unlawfully. 'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citations omitted).

"The heightened pleading standard of Rule 9(b) governs FCA claims." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir. 2011). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about the purportedly

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1  fraudulent statement, and why it is false.'" *Cafasso*, 637 F.3d at 1055 (*quoting*

2  *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).  Broad

3  and conclusory allegations that lack detail or facts in support are not sufficient.

4  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016).

5  "[C]laims of fraud or mistake—including FCA claims—must, in addition to

6  pleading with particularity, also plead plausible allegations." *Cafasso*, 637 F.3d at

7  1055 (citing *Iqbal*, 556 U.S. at 678).  That is, the complaint must state "enough

8  fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the

9  misconduct alleged]." *Twombly*, 550 U.S. at 556.  While courts must accept well-

10  pleaded allegations as true and draw reasonable inferences, the court need not

11  accept legal conclusions. *Iqbal*, 556 U.S. at 678.  "Threadbare recitals" of the

12  elements, "supported by mere conclusory statements," are not enough. *Id*.

13  **ARGUMENT**

14  **I.    RELATOR FAILS TO PLEAD A FCA CAUSE OF ACTION**

15       To state a claim under the "presentment" or "false statement" provisions of

16  the FCA, 31 U.S.C. §§ 3729(a)(1)(A)-(B), Relator must plead:  "(1) a false

17  statement or fraudulent course of conduct, (2) made with scienter, (3) that was

18  material, causing (4) the government to pay out money or forfeit moneys due."

19  *United States v. Safran Grp., S.A.*, No. 15-cv-00746, 2017 U.S. Dist. LEXIS 8408,

20  at *14-15 (N.D. Cal. Jan. 19, 2017) (*quoting United States. ex rel. Hendow v. Univ.

21  of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)).  Where allegations are "merely

22  *possible* rather than plausible," this standard is not met. *Gonzalez v. Planned

23  Parenthood of L.A.*, 759 F.3d 1112, 1116 (9th Cir. 2014).

24       A.    **The Complaint Does Not Identify False Claims For Payment**

25       The FCA imposes liability only upon a fraudulent "claim for payment,"

26  which is the "*sine qua non* of an FCA violation." *Serco,* 846 F.3d at 333.  It is not

27  enough for a relator "to describe a private scheme in detail but then allege simply

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

and without any stated reason for his belief that claims requesting illegal payments must have been submitted[.]" *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002).  The relator's complaint "must show an actual false claim for payment being made to the Government." *Lesnik v. Se*, No. 16-CV-01120, 2018 U.S. Dist. LEXIS 170373, at *24 (N.D. Cal. Oct. 1, 2018) (granting motion to dismiss FCA claims) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2010)) (internal quotation marks omitted).

Relator does not identify a single *false* claim NAF made to the government for payment.  Relator alleges that NAF "falsely certified to the government that [certain] loans were eligible for government insurance" and that such representations were "material in fraudulently inducing the Government to extend insurance coverage to loans endorsed by NAF and to pay claims on Government loans that had been endorsed by NAF."  Am. Compl. ¶¶ 200, 438.  But an application for FHA insurance or a VA mortgage guaranty is not a "claim" within the meaning of the FCA.  *United States v. McNinch*, 356 U.S. 595, 598-99 (1958).

To avoid this FCA pleading requirement, Relator alleges that 66 claims for FHA insurance were made on NAF-originated FHA loans since December 31, 2015, and "hundreds of additional claims or requests for payment [were] made to the government on NAF-originated loans" over a longer duration.  Am. Compl. ¶¶ 461, 467.   The Amended Complaint, however, does not indicate any wrongdoing committed by NAF with respect to the origination, underwriting, or quality control of these specific loans.  Nor does Relator connect these loans to her seven alleged fraudulent schemes.  Am. Compl. ¶¶ 457-67.  Relator has not proffered reliable indicia of the submission of false claims and, due to this pleading deficiency, her Amended Complaint warrants dismissal.

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

B.     **The Amended Complaint Fails to Allege Promissory Fraud**

Relator's Amended Complaint focuses on promissory fraud as its sole theory of liability.  Promissory fraud, however, is a narrower class of liability than implied false certification.  *See* § I.C., *infra*.  While the elements for a claim of promissory fraud are similar to those for implied false certification (*United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 902 (9th Cir. 2017); *Hendow*, 461 F.3d at 1174), promissory fraud is necessarily a narrower theory of liability, as it requires "a false claim wherein the falsity is ***knowingly perpetrated*** and the underlying ***fraud*** is material to the government's decision to pay."  *Campie*, 862 F.3d at 902 (emphasis added).  This requirement of knowing and willful fraud—*i.e.* a specific intent to defraud—distinguishes the promissory fraud theory of liability from a standard FCA allegation:  promissory fraud requires specific intent, where other theories of FCA liability do not.  *See* 31 U.S.C. § 3729(b)(1)(B).  Relator's theory of promissory fraud necessarily fails because she does not plead the requisite intent.

"[A]lthough promissory fraud may be actionable in rare circumstances under the FCA, the promise must be false when made."  *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996).  It must be an "intentional, palpable lie."  *Id.* (citing *Hagood v. Sonoma Co. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996)).  Regulatory violations are not sufficient.  *Campie*, 862 F.3d at 899.  "Under the 'promissory fraud' theory, the plaintiff is [. . .] required to allege ***specific misrepresentations*** made by the defendant, as it must show that the government contract was 'originally obtained through false statements or fraudulent conduct.'"  *United States ex rel. Unite Here v. Cintas Corp.*, No. 06-cv-2413, 2008 U.S. Dist. LEXIS 120044, at *24 (N.D. Cal. April 16, 2008) (emphasis added).

The Ninth Circuit in *Hendow* offered an example of the kind of specific

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

misrepresentation required to allege a present intent to defraud. *Hendow* involved the U.S. Department of Education's financial assistance grant regimes—and the promissory fraud alleged there arose from a direct misrepresentation about a specific prohibition of incentive payments to recruiters by the participant—a statutory requirement. *See Hendow*, 461 F.3d at 1168-70; *see also* 20 U.S.C. § 1094(a)(20) (requiring explicit certification with the incentive ban in participation agreement).

*Hendow* found that a false certification of future compliance with an explicit statutory provision in a participation agreement could be the basis of a promissory fraud theory of liability. But Relator proffers no such allegations here. Nowhere does Relator plausibly allege that NAF intended to violate the FHA requirements when it entered the DE Program, when it certified to its ongoing compliance with FHA requirements, or when it certified any specific FHA or VA loan. Instead, Relator relies on broad certifications, general allegations that fall short of Rule 9(b), and assertions of disconnected regulatory violations in the hopes of advancing a baseless lawsuit. *See, e.g.*, Am. Compl. ¶¶ 207-430.

Prior or subsequent breaches of a contract or obligation, however, cannot alone demonstrate present intent. *Hopper*, 91 F.3d at 1268 ("Hopper argues that past regulatory noncompliance creates an inference that the [Defendant] lied when certifying future compliance. This is not sufficient evidence to establish knowing fraud under the Act."); *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 710 (7th Cir. 2015) ("Absent evidence of fraud before entry, non-performance after entry into an agreement for government subsidies does not impose liability under the FCA.")[2]; *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (no inference of fraudulent intent "from the

---

[2] Vacated sub nom. *U.S. ex rel. Nelson v. Sanford-Brown, Ltd.*, 136 S. Ct. 2506 (2016), reinstated in part, superseded in part, 840 F.3d 445 (7th Cir. 2016).

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

mere fact that a promise made is subsequently not performed."). "[A] plaintiff proceeding on a theory of promissory fraud must allege more than that a defendant signed a contract and then failed to comply with the terms of the contract—otherwise, any regulatory violation or breach of contract claim involving a government contractor could give rise to an FCA claim." *Unite Here*, 2008 U.S. Dist. LEXIS 120044, at *24.[3]

In an analogous matter overturning a jury verdict grounded in promissory fraud with respect to mortgages sold to Fannie Mae and Freddie Mac (the "GSEs"), the Second Circuit found subsequent failure to comply with the GSEs' myriad and complex loan requirements did not demonstrate present intent:

> In sum, a contractual promise can only support a claim for fraud upon proof of fraudulent intent not to perform the promise at the time of contract execution. Absent such proof, a subsequent breach of that promise—even where willful and intentional—cannot in itself transform the promise into a fraud. Far from being an arcane limitation, the principle of contemporaneous intent is, like materiality, one without which "the common law could not have conceived of 'fraud.'"

*United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662 (2d Cir. 2016).[4] The claims brought forth by Relator here are no different than

---

[3] Importantly, the *Unite Here* decision strikes the proper balance between the *Hopper* and *Hendow* decisions: "while the court in *Hendow* indicated that an FCA claim could proceed under a theory of promissory fraud, it did not overrule *Hopper*, which held that merely alleging a violation of regulations or laws is not sufficient to state a claim under the FCA." *Unite Here*, 2008 U.S. Dist. LEXIS 120044, at *24-25.

[4] While *O'Donnell* construes the federal mail and wire fraud statutes, the basic concepts and standards of construction are the same. Indeed, just like the FCA, the federal mail and wire fraud statutes contain a lower scienter standard, generally. *O'Donnell*, 822 F.3d at 662. However, once a plaintiff enters the realm of promissory fraud, heightened standards apply, requiring common law concepts of fraud to be incorporated as part of the pleading and proof standards. *See O'Donnell*, 822 F.3d at 656-662. The Supreme Court similarly applied common law concepts to the FCA in *Escobar. Universal Health Services, Inc. v. United*

1   those proffered in *Hopper, O'Donnell*, or *Unite Here*:  Relator asks this Court to

2   infer a present intent to deceive based on either prior instances of regulatory non-

3   compliance or subsequent regulatory non-compliance.  Neither creates a

4   reasonable inference of a specific intent to defraud, and the Amended Complaint

5   should be dismissed.

6   C.      **Promissory Fraud Cannot Be Used to Circumvent Implied False
        Certification**

7

8   Relator's promissory fraud theory also fails because the falsity alleged is

9   implied false certification—*i.e.,* the false statement supporting her promissory

10  fraud theory is regulatory non-compliance in connection with a general

11  certification of compliance with regulations.  *See* Am. Compl. ¶ 110-60.  In order

12  to plausibly allege the falsity stated here, Relator must comply with the two-part

13  test articulated by the Supreme Court in *Universal Health Services, Inc. v. United*

14  *States ex rel. Escobar*, which she has failed to do.  136 S. Ct. 1989, 1995 (2016).

15  Falsity for purposes of the FCA may be established through factually false

16  statements or legally false statements.  *United States ex rel. Silingo v. Wellpoint,*

17  *Inc.*, 904 F.3d 667, 675-76 (9th Cir. 2018).  A statement is factually false "because

18  it involves an incorrect description of goods or services provided or a request for

19  reimbursement for goods or services never provided."  *United States v. Sci. Apps.*

20  *Int'l Corp.*, 626 F.3d 1257, 1266 (D.C. Cir. 2010) ("SAIC") (internal quotation

21  marks omitted).  A statement is legally false—and is also known as a false

22  certification claim—where a claim for payment "rests on a false representation of

23  compliance with an applicable federal statute, federal regulation, or contractual

24  term."  *Id.*  Express certification requires a direct falsity on the claim form, while

25  implied false certification relies on omission of information that makes statements

26  on the claim form false or misleading.  *See Silingo*, 904 F.3d at 675-76.

27  _____

28  *States ex rel. Escobar*, 136 S. Ct. 1989, 1999-2000 (2016).

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Because Relator's allegations of falsity center only on false representations of compliance with FHA and VA requirements, the falsity alleged can only be false certification.  And that false certification must be implied, as there are no express certifications alleged.  Because Relator relies on implied false certification as her theory of falsity, she must satisfy the requirements of *Escobar*.

In *Escobar*, the Supreme Court set forth a heightened standard for pleading an implied false certification claim under the FCA, requiring that:  (1) the claim for payment make specific representations about goods or services provided; and (2) a failure to disclose non-compliance with some statutory, regulatory, or contractual provision must make one of those specific representations misleading.  136 S. Ct. at 1995.  This two-part test has been adopted by the Ninth Circuit.  *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018) ("We conclude, therefore, that Relators must satisfy *Escobar*'s two conditions to prove falsity, unless and until our court, en banc, interprets *Escobar* differently.").  *See also Campie*, 862 F.3d at 901; *Serco*, 846 F.3d at 332.  *Escobar* also emphasized that the materiality and scienter requirements under the FCA are "rigorous," and must be met at the pleading stage regardless of the theory—false certification or promissory fraud—asserted.  136 S. Ct. at 2002, 2004 n.6.

Accordingly, the Amended Complaint must plead with particularity that:  (1) NAF submitted a claim for payment that contained specific representations about goods or services provided, and those representations are misleading due to a failure to disclose noncompliance with specific statutory, regulatory, or contractual requirements; (2) that those requirements that were violated were material to the government's payment decision; (3) that NAF *knowingly* violated specific requirements that it *knew* were material to the government's payment decision; and (4) that the government paid out money as a result.  The Amended Complaint does not meet these requirements.  Relator's attempt to circumvent the holdings of

*Escobar* and *Rose* should not be countenanced.

### D. **The FCA Cannot Create Liability for Compliant Loans**

Relator is alleging that "each and every claim made to the Government on any loan endorsed under NAF's fraudulent certifications is tainted, constituting a separate false claim." Am. Compl. ¶ 31. However, a few instances of alleged regulatory non-compliance do not "taint" all FHA or VA loans originated by NAF. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943) (collusive bidding eliminated "all possible competition" from "competitive bidding," so all payments made pursuant to the contracts were inflated). Loans that were properly underwritten and endorsed cannot form the basis for FCA liability. Relator's attempt to improperly expand the applicability of the FCA should not be permitted.

### E. **The Annual Certifications Cannot Support FCA Liability**

As an initial matter, the Amended Complaint does not allege that NAF submitted any annual certifications under the VA guaranty program. *See generally* Am. Compl. Relator tries to muddy the waters by referencing the initial certification regarding the VA program. However, the Amended Complaint does not (1) allege that it was signed within the relevant time period for the statute of limitations, (2) allege any facts to support a conclusion that the initial VA certification was false in any way, or (3) offer any facts to support a conclusion that NAF intended to violate any regulations it said it would comply with at the time it submitted the initial certification. These arguments apply equally to the initial FHA certification. Relator does not and cannot plead FCA claims as to the initial certifications mentioned in her Amended Complaint.

The annual certifications for the FHA DE Program also cannot form the basis for liability under the FCA because they do not give NAF the ability to submit claims for payment. Relator argues that NAF cannot participate in the DE Program absent an annual certification. Am. Compl. ¶ 17. But by obtaining the

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Memorandum In Support of Defendant's Motion to Dismiss
Case No. 3:19-cv-01630-PSG

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1  ability to endorse an application for FHA insurance, NAF does not receive a

2  contract or extension of government benefit that is actionable under the FCA.  *See*

3  *McNinch*, 356 U.S. at 598 ("[A] lending institution's application for credit

4  insurance under the FHA program is not a 'claim' as that term is used in the False

5  Claims Act.").

6      Here, *Reunion Mortgage*, which dealt with FCA claims concerning FHA

7  loans, is instructive.  *United States v. Reunion Mortg., Inc.*, No. 13-cv-2340, 2013

8  U.S. Dist. LEXIS 158505, at *19 (N.D. Cal. Nov. 5, 2013).  The *Reunion*

9  *Mortgage* court explained that the purpose of the "annual certification was—not to

10  obtain the FHA's endorsement as to each loan at issue—but to prospectively

11  maintain Reunion's DEL status with the FHA."  *Id.*  The court further explained

12  that "the government benefit is the FHA's payment on each insurance claim"

13  and in order to obtain those benefits, a lender certifies that each loan is eligible for

14  FHA insurance through a loan-level certification.  *Id.*

15      As in *Reunion*, the annual certifications at issue here are only alleged to make

16  general statements of compliance with respect to maintaining DE status with the

17  FHA.  Am Compl. ¶¶ 110-14.  The annual certifications therefore cannot be the

18  basis for FCA liability under a promissory fraud theory of FCA liability.

19      F.    **Relator Proffers No Specific Allegations Concerning VA Loans**

20      Relator has proffered no plausible factual allegations concerning VA loans

21  originated and underwritten by NAF.  The Amended Complaint does not identify a

22  single claim NAF made to VA for payment or even a specific VA loan that was

23  affected by Relator's alleged fraudulent schemes.  Relator has failed to provide any

24  factual allegations demonstrating the "who, what, when, where, and how" of any

25  purported "fraudulent scheme" concerning VA loans.  This utter lack of specificity

26  cannot satisfy the Rule 9(b) pleading standard that applies to FCA claims.

27  Relator's FCA claims as they relate to VA loans should be dismissed.

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

### G.      The Complaint Does Not Identify A Single False Certification

Even assuming that FCA liability could be premised on the initial, annual, or loan-level certifications alone, which it cannot, Relator has not sufficiently pled that any certification was false with the specificity required by Rule 9(b).[5]  "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'"  *Cafasso*, 637 F.3d at 1055 (quoting *Ebeid*, 616 F.3d at 998).  "The 'precise statement, document, or misrepresentation,' as well as its contents, must be alleged; a laconic allegation of the existence of a misrepresentation will not do."  *United States ex rel. Creighton v. Beauty Basics Inc.*, No. 2:13-cv-1989, 2016 U.S. Dist. LEXIS 83573, at *8 (N.D. Ala. June 28, 2016) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)) (emphasis in original) (internal citation omitted).  In other words, Rule 9(b) requires the relator to state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the [government]."  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

Relator's vague and general allegations here are not sufficient to satisfy this standard.  Relator does not identify any specific individual, annual, or loan-level certification containing a false or fraudulent statement, nor any individual at NAF who made such a statement, much less when and where it was made.  Citing the general language of the initial, annual, and loan-level certifications is not enough.  As a whole, the Complaint fails to state a claim upon which relief may be granted.

---

[5] The certifications are also too broad to establish falsity for FCA liability.  *See Escobar*, 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.  ***The False Claims Act does not adopt such an extraordinarily expansive view of liability.***" (emphasis added)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

## H.   <u>**The Amended Complaint Fails to Allege Materiality**</u>

The Amended Complaint does not, and cannot, meet the heightened materiality standard of *Escobar*.  "A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act."  *Serco*, 846 F.3d at 333 (quoting *Escobar*, 136 S. Ct. at 1996).  The FCA's materiality requirement is "rigorous" and "demanding," and "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations."  *Escobar*, 136 S. Ct. at 2003-04 (internal quotation marks and citations omitted).   Furthermore, *Escobar* rebuked arguments that "materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss," emphasizing that "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8(a) and 9(b) by, for instance, pleading facts to support allegations of materiality."  *Id.* at 2004 n.6.

An alleged misrepresentation "cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment."  *Id.* at 2003.  Additionally, materiality is not satisfied where the government would merely "have the *option* to decline" payment.  *Id.* (emphasis added).  Materiality "cannot be found where noncompliance is minor or insubstantial."  *Id.* (citation omitted).  The materiality requirement must be rigorously enforced to "ensure that government contractors will not face 'onerous and unforeseen FCA liability' as the result of noncompliance with any of 'potentially hundreds of legal requirements' established by contract."  *Serco*, 846 F.3d at 333 (quoting *SAIC,* 626 F.3d at 1271).

*Escobar's* stringent pleading requirements preclude Relator's Amended Complaint, which alleges a medley of non-determinative legal conclusions,

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

including that a "reasonable person would not have extended loan insurance," (Am. Compl. ¶ 447) and "would not have allowed NAF to participate in the Government Programs" (*Id.* ¶¶ 448, 451) had he or she known that NAF allegedly had not followed "the required underwriting process" (*Id.* ¶¶ 447, 448).  The Supreme Court clearly stated that the alleged misrepresentation of compliance with a specific statutory, regulatory, or contractual requirement "must be material to the Government's *payment decision*" to be actionable under the FCA.  *Escobar*, 136 S. Ct. at 2002 (emphasis added).

Relator has not alleged any facts to show that HUD and VA regularly decline claims for technical violations of their regulations on the basis of either the FHA annual or loan-level certifications.  *See Escobar*, 136 S. Ct. at 2003-04 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").  Apart from conclusory allegations that NAF's compliance with all applicable government regulations was material, (*see, e.g.*, Am. Compl. ¶¶ 24, 25, 92, 118, 164, 438, 450), the Amended Complaint fails to allege that the supposed violations are "so central" to the FHA and VA programs that the government "routinely rescinds contracts" for FHA insurance and VA guarantees when it learns of those violations.  *Escobar*, 136 S. Ct. at 2001, 2004; *see also Ebeid*, 616 F.3d at 1000 ("Ebeid baldly asserts that had [defendant] not concealed or failed to disclose information affecting the right to payment, the United States would not have paid the claims.  This conclusory allegation is insufficient under Rule 9(b).") (citation omitted); *United States ex rel. Creighton v. Beauty Basics*, No. 2:13-cv-1989, 2016 U.S. Dist. LEXIS 83573, at *9 (N.D. Ala. June 28, 2016) ("The pleadings do not contain sufficient factual matter about 'specific representations about the goods or services provided' to satisfy the 'rigorous' standard of materiality for a false representation.") (internal citation

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

omitted); *United States ex rel. Se. Carpenters Reg'l Council v. Fulton Cty.*, No. 1:14-cv-4071, 2016 U.S. Dist. LEXIS 103054, at *22 (N.D. Ga. Aug. 5, 2016) (dismissing allegations that defendants were required to comply "with all provisions" of a statute under *Escobar*).

Relator's arguments amount to nothing more than an allegation that any violation of any regulation may set the table for a valid false claim.  Am. Compl. ¶¶ 454-56.  But *Escobar* rejected this very argument.  *See Escobar,* 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.  ***The False Claims Act does not adopt such an extraordinarily expansive view of liability*.**") (emphasis added).  *See also Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 174 (4th Cir. 2016) ("Surely we cannot be expected to hold that any failure to follow an accounting regulation or best practice on any government contract makes a company a fraudster ineligible to even bid for further business with the United States government?") (citing *Escobar*, 136 S. Ct. at 2002-04).

The FCA is not a tool to enforce technical compliance with federal regulations and contractual provisions.  *Escobar*, 136 S. Ct. at 2003.  For instance, Congress clearly envisioned an administrative process to police technical compliance with regulations and created the Mortgagee Review Board to enforce the requirements of the FHA.  12 U.S.C. § 1708(c).  *See also* 12 U.S.C. § 1735f-14 (setting forth authority for civil money penalty actions against lenders).  Moreover, HUD and VA have a multitude of tools at their disposal to do so through administrative process.  *See, e.g.*, 24 C.F.R. § 25.6 (setting forth grounds upon which HUD may institute administrative action);[6] 24 C.F.R. § 30.35 (setting forth

---

[6] 24 C.F.R. § 25.6(j) in fact specifically addresses regulatory violations, allowing administrative action for:  "Violation of the requirements of any contract or agreement with the Department, or violation of the requirements set forth in any statute, regulation, handbook, mortgagee letter, or other written rule or

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1    discretion of Mortgagee Review Board to institute civil money penalty actions

2    against lenders); 2 C.F.R. § 2424.1110 (setting forth circumstances in which HUD

3    may issue a limited denial of participation); VA Lenders Handbook, VA Pamphlet

4    26-7, Ch. 17 ("VA Sanctions Against Program Participants").  "The existence of

5    these significant remedial powers . . . buttresses our conclusion that Congress did

6    not intend that the FCA be used as a regulatory-compliance mechanism in the

7    absence of a false statement or fraudulent conduct directed at the federal

8    government."  *United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694,

9    702-03 (4th Cir. 2014).

10        Relator, in effect, argues materiality as a "but-for" causation event—without

11   the purported misrepresentations, HUD and VA never would have allowed NAF to

12   remain in their programs.  But this rubric fails as there are no plausible allegations

13   that NAF falsely obtained approval to issue FHA-insured and VA-guaranteed

14   loans, but only allegations regarding technical violations of a few regulatory or

15   contractual requirements among thousands that may or may not have swayed an

16   individual determination on approval of FHA insurance or a VA guaranty.  These

17   determinations are better left to the administrative process specifically designed to

18   address such issues.

19        Finally, Relator's shotgun reference to various lawsuits and settlements does

20   not satisfy the pleading requirement for materiality.  Am. Compl. ¶¶ 444-45.  Even

21   if these cases demonstrate that the Government has gone after other lenders, they

22   do not establish that HUD and VA decline claims for technical violations.  Nor

23   does Relator offer factual allegations to suggest that NAF had any knowledge of

24   the lawsuits and settlements listed in her Amended Complaint.

25        I.    **Relator Fails to Plead Scienter**

26        In addition to failing to plead the heightened scienter element for promissory

27   _____

     instruction."

28

1    fraud, Relator does not set forth facts to meet either prong of the FCA's "stringent"

2    scienter element.  Under *Escobar*, Relator must plausibly allege that NAF (i)

3    knowingly violated specific FHA requirements and (ii) knew that compliance with

4    those requirements was material to the Government's decision to pay claims.

5    *Escobar,* 136 S. Ct. at 1996.

6         Relator fails both prongs of the scienter requirement:  she fails to allege

7    either that NAF (i) knew it violated any FHA or VA requirements prior to

8    approving any FHA or VA loan or (ii) knew that any such requirements were

9    material to HUD's or VA's decision to pay claims.  Relator must show that NAF,

10   at the very least, acted in reckless disregard of its obligations.  31 U.S.C. §

11   3729(b)(1); *United States ex rel. Purcell v. MVI Corp.*, 807 F.3d 281, 288 (D.C.

12   Cir. 2015) (referring to reckless disregard as "the loosest standard of knowledge").

13   Reckless disregard requires that there be an "unjustifiably high risk of harm that is

14   either known or so obvious that it should be known."  *Safeco Ins. Co. of Am. v.*

15   *Burr*, 551 U.S. 47, 68 (2007); *Purcell,* 807 F. 3d at 287-88 (applying *Safeco's*

16   definition of "reckless disregard" to the FCA).  To establish reckless disregard,

17   Relator must allege that NAF's practices "ran a risk of violating the law . . . greater

18   than the risk associated with a reading [of its obligations] that was merely

19   careless."  *United States ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 593

20   (E.D. Pa. 2012) (citing *Safeco*, 551 U.S. at 70).  Collective knowledge, wherein the

21   states of mind of multiple individuals is aggregated to infer corporate intent, is not

22   sufficient.  *SAIC*, 626 F.3d at 1273-76; *United States ex rel. Durkin v. City of San*

23   *Diego*, No. 15-cv-2674, 2018 U.S. Dist. LEXIS 114744, at *14 (S.D. Cal. July 10,

24   2018) (applying *SAIC* on a motion to dismiss).

25        Initially, as set forth above, Relator fails to identify the submission of a false

26   claim, or the submission of any false or misleading statement, and so necessarily

27   does not plead that NAF had knowledge of any such violations.  Because there is

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

no allegation that NAF submitted any false claims for payment, there cannot be any plausible claim that it did so knowingly.

While knowledge may be alleged generally, the Amended Complaint does not "clearly allege sufficient facts to support an inference or render plausible" that NAF knew that its underwriting program did not meet FHA guidelines. *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011). Relator strains to establish scienter by quoting alleged statements of a few managers that loans should not be declined. *See, e.g.*, Am. Compl. ¶¶ 279, 307, 313. But those statements bear no relationship to actual loans submitted for FHA insurance or a VA guaranty, nor are they connected to any specific violation or misrepresentation.

Relator also alleges generally that: "NAF knew, deliberately ignored, and recklessly disregarded the fact that it was far from compliant with HUD-FHA rules and requirements necessary to participate in the DE program, and that many of its loans did not comply with the Government's underwriting requirements and were ineligible for government mortgage insurance" (Am Compl. ¶ 196); and that "NAF's focus was on maximizing these profit-making schemes across all locations in the company so it made sure all locations followed these policies." Am. Compl. ¶ 197. But the first statement is nothing more than a regurgitation of the statutory language—indeed, the three standards are different and require differing levels of factual support, yet Relator claims NAF acted simultaneously with all three requisite states of mind. And there is no factual allegation that any of NAF's training was designed to encourage underwriters to ignore government regulations when underwriting loans, or to encourage *any* employee to submit claims on loans they knew had been underwritten in violation of any regulations.

Finally, *Escobar* held that an FCA complaint must allege facts to show "the defendant knowingly violated a requirement *that the defendant knows is material* to the Government's payment decision." 136 S. Ct. at 1996 (emphasis added).

This means that a complaint must plead facts showing that "the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" at issue. *Id.* at 2003. But the Amended Complaint does not allege, much less plausibly show, that NAF knew that HUD and VA consistently refused to pay claims on the basis of noncompliance with the technical requirements identified in the Amended Complaint. Relator's threadbare allegations regarding NAF's supposed "policies and procedures," and a few off-hand comments by its employees, are insufficient to show knowledge by NAF that the government regularly refuses to pay claims on the basis of noncompliance with any identified requirement.

## II.    The Complaint Does Not Allege a Plausible "Scheme To Defraud"

In support of her overarching claim that NAF conducted a "national scheme" to defraud HUD and VA through deliberately and recklessly approving ineligible loans, Relator only broadly and generally alleges that "NAF has engaged in a regular policy and practice of reckless origination and underwriting of its Government loans and falsely certified to the Government that those loans were eligible for Government insurance." Am. Compl. ¶ 200. Remarkable is the lack of factual content regarding how the alleged national scheme was implemented and perpetuated. Relator does not cite to any formal policies and procedures, meetings, interoffice memos, or teleconferences. Relator fails to provide any facts in support of the alleged national scheme to defraud HUD and VA that was purportedly pervasive throughout NAF.

Relator's Complaint also fails to define the FCA theories of liability found in her two causes of action; instead, she bundles together and alleges seven fraudulent schemes purportedly committed by NAF in violation of two different provisions of the FCA. Relator alleges that NAF violated 31 U.S.C. §§

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

3729(a)(1)(A) and (B) by engaging in the following seven schemes:

1. NAF falsely represented to the government that it was not paying employees performing underwriting duties on a commissions basis (Am. Compl. ¶¶ 207-33);

2. NAF falsely represented to the government that it did not override government loan requirements, and encouraged employees to override government loan requirements (Am. Compl. ¶¶ 234-317);

3. NAF falsely certified to the government that it was performing accurate appraisals of properties (Am. Compl. ¶¶ 318-46);

4. NAF falsely represented to the government that it was not manipulating variables in the AUS/Total system in order to endorse FHA loans for unqualified buyers (Am. Compl. ¶¶ 347-65);

5. NAF improperly inflated borrowers' income using unallowable exceptions to income calculations (Am. Compl. ¶¶ 366-81);

6. NAF deliberately excluded debt obligation in order to obtain approvals (Am. Compl. ¶¶ 382-413); and

7. NAF falsely certified to the government that it maintained a sufficient quality control process (Am. Compl. ¶¶ 414-30).

These seven schemes, however, have not been pleaded with sufficient particularity to satisfy *Escobar*, *Rose*, and the heightened 9(b) pleading standard applicable to FCA claims.  Here, Relator does not connect a single loan to a specific fraudulent underwriting practice performed by a specific individual and never connects an FHA or VA mortgage obtained through a fraudulent practice to a claim for payment on a defaulted loan.  Nor does Relator provide any example of individual NAF underwriters acting with the requisite scienter in certifying specific mortgages as eligible when they were, in fact, in violation of FHA or VA requirements, and that these same mortgages defaulted and led to specific claims for payment made by NAF.  For the reasons below, each alleged scheme should be dismissed as a matter of law.

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

A. **Relator's First Scheme Has Not Been Sufficiently Pleaded**

Pleading fraud to satisfy Rule 9(b) in connection with FCA claims requires more than mere conjecture, which is all Relator offers in support of her first alleged scheme.  The Amended Complaint claims that NAF "knowingly compensated its employees who performed underwriting activities on governmental files on a commission basis precisely in order to incentivize its employees to maximize the number of endorsed loans, even when those loans did not meet the Government's requirements."  Am. Compl. ¶ 212.

Relator, however, does not tie her general allegation to any specific actions by underwriters, which led to claims being paid by the government on any FHA or VA loans.  Moreover, Relator's cryptic mention of an email she received (Am. Compl. ¶ 226) and reference to unsubstantiated hearsay (Am. Compl. ¶¶ 224-29) by another employee are too vague to satisfy the heightened pleading standard. *Shalaby v. Bernzomatic*, No. 11-cv-68, 2011 U.S. Dist. LEXIS 102172, at *18-19 (S.D. Cal. Sept. 9, 2011) (granting dismissal with leave to amend, citing concerns that Plaintiff's allegations were based solely on unsubstantiated hearsay).  Relator has failed to plead her first alleged scheme with the requisite particularity and her FCA claims pertaining to this scheme should be dismissed.

B. **Relator's Second Scheme is Deficient**

Relator's second scheme suffers the same Rule 9(b) and FCA pleading deficiencies as her first.  Relator claims that "[d]espite being required to comply with all government requirements, NAF instead created a management override process under which management would dictate that loans should be endorsed even if they did not meet the government's requirements."  Am. Compl. ¶ 237. Relator does not, however, specify which "government requirements" were violated.  This form of general pleading is exactly the type that *Escobar* prohibits. *See Escobar,* 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver

1   their compliance with the entire U.S. Code and Code of Federal Regulations, then

2   under this view, failing to mention noncompliance with any of those requirements

3   would always be material. ***The False Claims Act does not adopt such an***

4   ***extraordinarily expansive view of liability***.") (emphasis added).

5       Moreover, while Relator generally alleges that underwriting decisions were

6   overridden (*see* Am. Compl. ¶¶ 234-317), she fails to provide any specific

7   examples of any FHA or VA loans that were improperly underwritten as a result of

8   this scheme and for which NAF submitted a claim for payment.  Simply alleging a

9   general scheme without any particular details and without any specific false claims

10  for payment is not enough.  Relator's claims pertaining to the second alleged

11  scheme should therefore be dismissed.

## C.   Relator's Third Scheme Also Suffers Pleading Deficiencies

13      Relator's third scheme—that NAF would "falsely inflate the value of the

14  collateral, through a 'value appeal' process"—has not been pled with sufficient

15  particularity required under Rule 9(b).  Am. Compl. ¶ 320.  Relator argues that

16  "NAF routinely pressured appraisers with 'value appeals,' whereby NAF loan

17  officers pressured the appraisers to come up with an inflated property value to

18  enable the loan to go through."  Am. Compl. ¶ 331.

19      Relator, however, does not allege firsthand knowledge of how these

20  appraisers ultimately made their value determinations.  Relator does not even

21  identify an appraiser and/or an appraisal affected by this scheme, let alone a

22  fraudulent claim for payment submitted by NAF as a result of the scheme.

23  Speculation and innuendo cannot satisfy Rule 9(b)'s particularity requirements.

24  *See Lizza v. Deutsche Bank Nat'l Trust Co*., 1 F. Supp. 3d 1106, 1121 (D. Haw.

25  2014) ("[S]peculation and conclusory allegations fall short of the specificity

26  required by Rule 9(b)."); *Gunderson v. ADM Inv. Servs., Inc.*, 85 F. Supp. 2d 892,

27  904 (N.D. Iowa 2000) ("Rule 9(b)[] … is not intended to allow plaintiffs to 'base

28

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Memorandum In Support of Defendant's Motion to Dismiss
Case No. 3:19-cv-01630-PSG

claims of fraud on speculation and conclusory allegations...."").  Accordingly, claims related to this scheme should be dismissed.

### D.    **Relator's Fourth Scheme Also Fails**

Relator's fourth scheme—that "NAF instructed employees to systemically manipulate the data that was entered into NAF's automated underwriting system, or AUS, to determine variables that would lead to an approval"—also fails for a lack of particularity.  Am. Compl. ¶ 347.  Relator offers only one alleged example to support her fourth scheme.  She claims that, "on NAF's internal File No. 120016109350, an FHA file, the AUS was run twenty-two (22) times after a Decline (*i.e.*, a 'refer/caution' rating) so that the Loan Officer, Travis Dungca, could reverse engineer and find out what data needed [sic] be fabricated in order to return an approval using false asset information."  Am. Compl. ¶ 362.

Relator, however fails to allege which FHA requirements are violated simply by the submission of multiple reports into the AUS system by either loan officers or underwriters.  It is entirely plausible that these multiple reports were submitted for reasons other than to determine qualifying data point values.  Relator's allegations amount to nothing more than her subjective disagreement on the most prudent course of action, which is not a sufficient basis for a fraud claim.

Moreover, Relator fails to plead the kind of information necessary to substantiate a fraudulent FCA claim.  For instance, Relator does not allege (1) what incorrect information was used for this loan, (2) the underwriter assigned to the loan, (3) whether the loan was manually underwritten, or (4) whether a claim was made to FHA on this loan.  This lack of specificity cannot satisfy Rule 9(b) and Relator's claims as they relate to this scheme should be dismissed.

### E.    **Relator's Fifth Scheme is Insufficiently Pleaded**

Relator's fifth scheme—that "NAF falsely certified to the Government that it was properly calculating borrowers' income"—alludes to four examples of

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

1 improper calculation, but provides no particular details about them.  Am. Compl. ¶

2 366.  Relator asserts that (1) NAF "used the borrower's present earnings as their

3 'historical' earnings," (2) NAF "would use the historical earnings, overtime, and

4 year-end bonuses for tomato pickers in California," (3) a loan officer "wanted" to

5 impermissibly factor in a one-time $98,000 bonus as part of the borrower's

6 earnings; and (4) "NAF would also impermissibly use bonuses that had not yet

7 been earned to inflate the borrowers' income."  Am. Compl. ¶¶ 376, 378-80.

8        These examples, however, are deficient for the same reasons that plague

9 Relator's other alleged schemes.  Relator offers no particular details to explain

10 whether these examples resulted in false claims to the government.  Nor does

11 Relator (1) provide any information to identify any loans subject to these

12 allegations, (2) indicate whether they were FHA or VA loans, (3) name the

13 underwriters who worked on the files, or (4) state whether the loans were even

14 approved.  Relator claims as they relate to this scheme are ripe for dismissal.

15        F.     **Relator's Sixth Scheme is Also Deficient**

16        Relator's sixth scheme alleges that NAF "falsely certified to the

17 Government that borrowers' debt obligations were within the ratios allowed by the

18 Government in order to obtain approvals by deliberately excluding certain debts of

19 borrowers."  Am. Compl. ¶ 382.  Relator refers to three loans in support of this

20 scheme and claims that NAF failed to include certain debts when calculating the

21 debt-to-income ("DTI") ratio for these loans.

22        Missing, however, are the specifics required to support her examples.  For

23 instance, Relator does not (1) identify the underwriter who worked on each file, (2)

24 identify the amount of each debt not included, (3) explain whether the underwriter

25 was aware of the alleged missing or excluded debts, or (4) identify who signed the

26 certifications in connection with these loans.  More importantly, Relator has not

27 alleged that any claims were paid by the government in connection with these

28

Memorandum In Support of Defendant's Motion to Dismiss
Case No. 3:19-cv-01630-PSG

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

loans.  Relator cannot support her allegations of fraud with bare-bones examples, and her claims as they relate to this scheme should be dismissed.

### G.   Relator's Seventh Scheme Does Not Create FCA Liability

Relator's seventh scheme alleges that "NAF falsely certified to the Government that it was properly following audit findings and adopting proper quality control mechanisms, even though NAF knew that it was hiding and destroying such documents."  Am. Compl. ¶ 414.  Relator, however, only makes general references to deficiencies found by a quality control auditor—who she does not identify—and a conclusory assertion that the audit department ignored these problems (Am. Compl. ¶¶ 428-29), but offers no factual support except for a vague reference to a conversation between the auditor and another employee. When this conversation occurred and what was specifically discussed are not alleged.  These allegations are far too general and attenuated.

Finally, the Complaint fails to tie this alleged scheme to any claim for payment made to the government.  Relator fails to offer any explanation for how a false claim can independently arise from an alleged deficiency in NAF's quality control process.  *See Se. Carpenters Reg'l Council*, 2016 U.S. Dist. LEXIS 103054, at *22 ("That Defendants 'should have done [their] job better,' or were negligent, does not establish that they 'certified [their] compliance with [applicable regulations] with reckless disregard for the truth.").  Accordingly, Relator's claims related to this scheme should be dismissed.

## CONCLUSION

Relator's Amended Complaint is long on unsupported allegations of disreputable conduct, but short on substance.  It does not allege sufficient facts to state a claim for relief under the FCA, given the pleading requirements of Rule 9(b), and the recent Supreme Court and Ninth Circuit rulings.  The Amended Complaint fails to state a claim for relief under the FCA and should be dismissed.

Dated:  May 15, 2019

Respectfully submitted,

**WEINER BRODSKY KIDER PC**

/s/ Mitchel H. Kider
Mitchel H. Kider (CA Bar No. 116479)
Joel A. Schiffman (CA Bar No. 90138)
Timothy P. Ofak (*Pro Hac Vice*)
Lindsay L. Buchanan (*Pro Hac Vice*)
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel:  (202) 628-2000
Facsimile:  (202) 628-2011
Email: kider@thewbkfirm.com
schiffman@thewbkfirm.com
ofak@thewbkfirm.com
buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**

/s/ Joshua A. Rosenthal
Joshua A. Rosenthal (CA Bar No. 190284)
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Tel:  (707) 570-2200
Facsimile:  (510) 832-2945
Email:  jrosenthal@mhlawcorp.com

*Counsel for Broker Solutions, Inc.*
*d/b/a New American Funding*

## **CERTIFICATE OF SERVICE**

I certify that, on this 15th day of May, 2019, I caused one copy of the foregoing Defendant's Motion to Dismiss the Amended Complaint to be served on all parties and counsel of record via the Court's CM/ECF system.

/s/ Mitchel H. Kider
Mitchel H. Kider