**WEINER BRODSKY KIDER PC**
Mitchel H. Kider, CA Bar No. 116479
Joel A. Schiffman, CA Bar No. 90138
Timothy P. Ofak (*Admitted Pro Hac Vice*)
Lindsay L. Buchanan (*Admitted Pro Hac Vice*)
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone: 202.628.2000
Facsimile: 202.628.2011
Email: kider@thewbkfirm.com
       schiffman@thewbkfirm.com
       ofak@thewbkfirm.com
       buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**
Joshua A. Rosenthal, CA Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: 707.570.2200
Facsimile: 510.832.2945
Email: jrosenthal@mhlawcorp.com

*Attorneys for Defendant Broker Solutions, Inc.*
*d/b/a New American Funding*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MALOU TUTANES-LUSTER,<br><br>Plaintiff,<br><br>v.<br><br>BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING,<br><br>Defendant. | Civil Action No. 19-cv-01630-PSG-JPR<br><br>**REPLY IN SUPPORT OF DEFENDANT NEW AMERICAN FUNDING'S MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>**Date:** July 8, 2019<br>**Time:** 1:30 pm<br>**District Judge:** Phillip S. Gutierrez<br>**Courtroom:** 6A |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................. 1

    I.    Relator's Failure to Plead Specific Intent is Fatal to Promissory Fraud .. 1

    II.    Specific Misrepresentations are Required to Plead Promissory Fraud ... 3

    III.    Relator Has Not Alleged Any False Claims for Payment ........................ 5

    IV.    The Initial and Annual FHA Certifications are Inapplicable Here ......... 6

    V.    Relator Fails to Adequately Plead Materiality .......................................... 7

    VI.    Relator Fails to Adequately Plead Scienter ........................................... 10

    VII.    Relator Does Not Satisfy 9(b) as to Any of Her Fraudulent Schemes . 11

    VIII.    Relator Fails to Proffer Factual Allegations Concerning VA Loans .... 12

CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cafasso v. Gen. Dynamics C4 Sys.*,
 637 F.3d 1047 (9th Cir. 2011) ................................................................................ 5

*Carlson v. DynCorp Int'l LLC*,
 657 F. App'x 168 (4th Cir. 2016) ........................................................................... 7

*Ebeid ex rel. United States v. Lungwitz*,
 616 F.3d 993 (9th Cir. 2010) .................................................................................. 5

*Lizza v. Deutsche Bank Nat'l Trust Co.*,
 1 F. Supp. 3d 1106 (D. Haw. 2014) ................................................................. 3, 11

*U.S. ex rel. Main v. Oakland City Univ.*,
 426 F.3d 914 (7th Cir. 2005) .................................................................................. 4

*U.S. v. Americus Mortg. Corp.*,
 No. 4:12-cv-02676, 2014 U.S. Dist. LEXIS 121547 (S.D. Tex.
 Aug. 29, 2014) ............................................................................................. 8, 9, 12

*U.S. v. TXL Mortg. Corp.*,
 No. 15-1658, 2016 U.S. Dist. LEXIS 127594 (D.D.C. Sept. 20,
 2016) ................................................................................................................. 8, 9

*U.S. v. Quicken Loans Inc.*,
 239 F. Supp. 3d 1014 (E.D. Mich. 2017) ...................................................... 8, 10, 11, 12

*United States ex rel. Campie v. Gilead Scis.*,
 862 F.3d 890 (9th Cir. 2017) ............................................................................. 5, 9

*United States ex rel. Hendow v. Univ. of Phoenix*,
 461 F.3d 1166 (9th Cir. 2006) ............................................................................ 2, 4

*United States ex rel. Hopper v. Anton*,
 91 F.3d 1261 (9th Cir. 1996) .................................................................................. 2

*United States ex rel. Kelly v. Serco*,
 846 F.3d 325 (9th Cir. 2017) .................................................................................. 9

*United States ex rel. Rose v. Stephens Inst.*,
   909 F.3d 1012 (9th Cir. 2018)..................................................................................4

*United States ex rel. Silingo v. Wellpoint, Inc.*,
   904 F.3d 667 (9th Cir. 2018)...................................................................................12

*United States ex rel. Solis v. Millennium Pharms., Inc.*,
   885 F.3d 623 (9th Cir. 2018)....................................................................................6

*United States ex rel. Thrower v. Academy Mortg. Corp.*,
   No. 16-cv-02120, 2018 U.S. Dist. LEXIS 144648 (N.D. Cal. Aug. 24, 2018).................................................................................................2, 7, 8, 9

*United States ex rel. Unite Here v. Cintas Corp.*,
   No. 06-cv-2413, 2008 U.S. Dist. LEXIS 120044 (N.D. Cal. April 16, 2008).......................................................................................................3

*United States v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002)....................................................................................5

*United States v. Rivera*,
   55 F.3d 703 (1st Cir. 1995).......................................................................................5

*United States v. Sci. Applications Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010) .............................................................................10

*United States v. Wells Fargo Bank, N.A.*,
   972 F. Supp. 2d 593 (S.D.N.Y. 2013).......................................................8, 9, 10, 12

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   136 S. Ct. 1989 (2016) ..................................................................................4, 7, 8, 9

**Rules**

Fed. R. Civ. P. 8(a) .........................................................................................................11

Fed. R. Civ. P. 9(b) ...................................................................................................*passim*

Relator's Opposition (ECF No. 98) to Defendant New American Funding's ("NAF") Motion to Dismiss fails to reconcile fundamental legal challenges that prevailing authority poses to her case. Promissory fraud is only viable in rare circumstances and is not appropriate here. Unable to identify a single false claim, Relator takes the indefensible position that one need not be pled. This is wrong. The Opposition compounds these errors by contending that any breach of any FHA or VA requirement is material to HUD's and the VA's payment decisions, and would subject all loans to False Claims Act ("FCA") liability. This overreaching application of promissory fraud under the FCA is inappropriate.

The underlying and pervasive pleading defect in Relator's Amended Complaint is the fragmented nature of her allegations. When the conclusory allegations are removed, the Court is left with: (1) allegations of regulatory violations disconnected from any claims for payment on FHA or VA loans; (2) general certifications that cannot support a promissory fraud theory of liability; (3) fraudulent schemes that fail Rule 9(b)'s pleading requirements; (4) no allegations of fraudulent intent for promissory fraud; and (5) no allegations linking her alleged schemes to any of the certifications referenced in the Amended Complaint. Relator bears the burden of supplying these missing links, but she has failed to provide them. The Complaint does not state a claim for relief under the FCA.

## ARGUMENT

**I.  Relator's Failure to Plead Specific Intent is Fatal to Promissory Fraud**

Relator argues that NAF misinterprets the law on promissory fraud. But the law is clear—while promissory fraud may apply to a wider array of base factual scenarios, the Ninth Circuit, and every other Circuit Court of Appeals to address it, requires the specific intent not to perform, which narrows promissory fraud and distinguishes it from other theories of FCA liability. *See* MTD 5-8 (ECF No. 97-1). Ninth Circuit authority requires that any misrepresentation be "an intentional,

palpable lie," which requires specific intent to commit fraud. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *id.* at 1265 ("Thus, some request for payment containing falsities with scienter (i.e., with knowledge of the falsity and with intent to deceive) must exist."). *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1175 (9th Cir. 2006) (alleging that Defendant made its misrepresentation "with the specific intent to deceive the government."). Relator fails this standard by not alleging a specific "intentional, palpable lie."

Relator relies primarily on a single case—*United States ex rel. Thrower v. Academy Mortgage Corp.*, No. 16-cv-02120, 2018 U.S. Dist. LEXIS 144648, at *23 (N.D. Cal. Aug. 24, 2018)—in support of her promissory fraud theory. Opp. 7-8. But *Thrower* is non-controlling precedent and was wrongly decided, failing to address the specific intent requirements of promissory fraud and the Relator's failure to identify specific false representations. 2018 U.S. Dist. LEXIS 144648, at *25-27.

To establish fraudulent intent, Relator must proffer factual allegations to support an inference of knowing fraud tied to the certifications at issue, but she has failed to do so in her Amended Complaint. *See Hopper*, 91 F.3d at 1267 (holding, as to promissory fraud, that the evidentiary records were devoid of facts to support an inference of knowing fraud). Despite this deficiency, Relator refers the Court to her alleged fraudulent schemes. Opp. 12-13. But these schemes are insufficiently pled and are disconnected from the certifications at issue. Relator is asking the Court to make a logical leap and assume specific intent to defraud the government without providing supporting factual assertions.

As to the FHA and VA initial certifications, Relator asserts no factual allegations concerning the execution of these certifications, let alone allegations to support an inference of knowing fraud.[1] Similarly, as to the FHA annual

---

[1] Relator incorrectly characterizes NAF's discussion of the initial certifications as a statute of limitations argument and claims that NAF has not argued that the annual

certifications, Relator fails to plead any details about when each alleged fraudulent scheme began and which yearly certifications were affected by those schemes. Relator also fails to allege any facts concerning the Company's specific intent to violate material FHA requirements at the time each certification was executed. *See Lizza v. Deutsche Bank Nat'l Trust Co.*, 1 F. Supp. 3d 1106, 1121 (D. Haw. 2014) (holding that speculation and conclusory allegations fall short of Rule 9(b)).

As to the loan-level certifications, Relator also fails to offer a sufficient level of detail to satisfy the heightened pleading standard. Promissory fraud focuses on the intent of the defendant at the time the contract at issue was executed. Relator, however, fails to offer any examples identifying: (1) a specific loan file; (2) the underwriter who worked on the file; or (3) the signatory's intent when executing the certification. Without sufficient information concerning the alleged certifications at issue, Relator cannot support promissory fraud under the FCA.

## II. Specific Misrepresentations are Required to Plead Promissory Fraud

Relator's assertion—that she has alleged specific misrepresentations made by NAF to HUD and VA (Opp. 12-13)—is belied by the nature of her allegations and the general language of the certifications she relies upon. "Under the 'promissory fraud' theory, the plaintiff is [. . .] required to allege ***specific misrepresentations*** made by the defendant, as it must show that the government contract was 'originally obtained through false statements or fraudulent conduct.'" *United States ex rel. Unite Here v. Cintas Corp.*, No. 06-cv-2413, 2008 U.S. Dist. LEXIS 120044, at *24 (N.D. Cal. April 16, 2008) (emphasis added).

The initial, annual, and loan-level certifications referenced by Relator are, by their plain language, general certifications. Relator, however, attempts to turn

---

certifications were submitted outside of the limitations period. *See* Opp. 15. NAF did not proffer a statute of limitations argument, but rather a pleading deficiency concerning the initial certifications. Relator bears the burden of pleading plausible factual allegations to support promissory fraud as to the initial FHA and VA certifications. The Amended Complaint is lacking in this regard.

these general certifications into a request to certify compliance to *all* statutes, regulations, HUD Handbooks, VA Pamphlets, HUD Mortgagee Letters, and other guidance issued by HUD and VA during the relevant time period. *See, e.g.*, Am. Compl. ¶¶ 66, 77, 108, 111-114, 125, 137, 154, 160, 170, 234, 454. But the certifications at issue do not reference any specific statutory or regulatory provisions implicated by Relator's allegations and cannot support her promissory fraud cause of action. *See Hendow*, 461 F.3d at 1168-70 (requiring explicit certification with the incentive ban in the participation agreement).

Relator also claims that NAF is seeking to "erase the line between promissory fraud and implied false certification" (Opp. 8), but she misses the import of NAF's argument. Even though Relator has expressly disclaimed the application of implied false certification to her claims, she relies on regulatory non-compliance to create an implication of falsity in broadly-worded certifications—a case of implied false certification. Relator's allegations implicate alleged false representations of compliance with FHA and VA requirements, and this false certification must be implied, as no express certifications are alleged.

Despite Relator's attempt to recast her allegations under a promissory fraud theory of liability, the nature of the certifications at issue and the conduct alleged fall exclusively under the implied false certification theory of FCA liability. And Relator must satisfy the requirements of *Escobar* and *Rose* to properly plead her FCA claims as they are alleged in her Amended Complaint. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016); *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018) (holding that "Relators must satisfy *Escobar*'s two conditions to prove falsity").[2]

---

[2] Relator's reliance (Opp. 8.) on *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005) is misplaced. Unlike the general certifications at issue in the matter before this Court, the participation agreement at issue in *Main* had an explicit certification prohibiting contingent fees to recruiters. *Id*. at 916.

## III. Relator Has Not Alleged Any False Claims for Payment

Contrary to Relator's Opposition, NAF has not misstated the law. Opp. 10. In fact, it is Relator that gives the elements of liability under the FCA short shrift by contending that she does not have to allege a "false" claim to state a cause of action. According to the Ninth Circuit, the elements of promissory fraud require the submission of false claims for payment or reimbursement. *United States ex rel. Campie v. Gilead Scis.*, 862 F.3d 890, 902 (9th Cir. 2017) ("The elements of a claim for promissory fraud are very similar to those necessary for an implied false certification claim, requiring a false claim wherein the falsity is knowingly perpetrated and the underlying fraud is material to the government's decision to pay."). Similarly, under any theory of FCA liability, the Ninth Circuit, as well as the statute, unambiguously require a false request for payment: "The FCA attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'… An actual false claim is 'the *sine qua non* of an FCA violation.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (brackets and internal citation removed) (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) and *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002)). Relator has not alleged any false claims for payment.

Nor has Relator proffered "reliable indicia" of the submission of false claims. To do so, Relator must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a ***strong inference*** that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (emphasis added) (internal quotations marks and citation omitted). Relator offers no factual allegations which would lead this Court to a "strong inference" that false claims were submitted as a result of her fraudulent schemes. Relator does not plausibly allege that her schemes would necessarily

cause borrowers to default on their mortgage loans, that the loans would ultimately be foreclosed upon, and that corresponding claims would be submitted to HUD or VA for payment. Relator has provided no factual allegations which link NAF's actions to such results. Reliable indicia are lacking. *See United States ex rel. Solis v. Millennium Pharms., Inc.*, 885 F.3d 623, 629 (9th Cir. 2018) ("Solis's complaint provides no other details linking the alleged scheme to any claim submitted to a federal healthcare program. It was Solis's burden to supply these missing links and he has failed to do so.").

Finally, alleging claims disassociated from any fraudulent conduct cannot create FCA liability, and Relator's contention to the contrary is incorrect. Opp. 9-11. There can be no plausible scheme to submit "false" claims without the actual submission of false claims to the government. *See Solis*, 885 F.3d at 629 ("Even assuming these efforts established a scheme to submit false claims, [the defendant] has failed to identify a single claim submitted pursuant to the scheme."). As to the loan-level certifications, Relator cannot proceed without plausibly alleging the submission of false claims as to each fraudulent scheme. And as to the initial and annual certifications, the general nature of the certifications, coupled with the Rule 9(b) pleading deficiencies, preclude properly underwritten loans from being subject to promissory fraud. A few instances of alleged regulatory noncompliance—that have not been plausibly tied to any initial or annual certification executed with the requisite fraudulent intent—cannot support Relator's overly broad application of promissory fraud.

**IV.     The Initial and Annual FHA Certifications are Inapplicable Here**

Relator incorrectly argues that the FHA and VA initial certifications and the FHA annual certifications support FCA liability for every claim made on an FHA or VA loan endorsed during the FCA's six-year statute of limitations. Opp. 15-16. This opportunistic application of promissory fraud fails for a number of reasons.

First, the initial and annual certifications are general certifications that cannot support FCA liability under promissory fraud. Second, Relator has failed to provide plausible factual allegations—such as when each fraudulent scheme began—and she has failed to link any of her fraudulent schemes to either the FHA or VA initial certifications or to any of the FHA annual certifications during the relevant time period. Third, promissory fraud requires Relator to plead fraudulent intent as to each certification at issue and she has failed to do so. Finally, the initial and annual certifications allow NAF to participate in the DE program; only the loan-level certifications allow the Company to obtain government insurance.

Relator relies primarily on *Thrower* in support of her argument that the initial and annual certifications may form the basis of a promissory fraud theory of FCA liability. Opp. 15. But *Thrower* is non-controlling precedent, did not address FHA or VA initial certifications, and failed to, among other things: (1) address the specific intent requirements of promissory fraud; (2) conduct a Rule 9(b) analysis of the relator's fraudulent schemes; or (3) analyze the representations made in the FHA annual certification. The legal and factual analysis lacking in *Thrower* is what supports dismissal in the case before this Court.

## V.     Relator Fails to Adequately Plead Materiality

Relator's allegations amount to nothing more than a contention that any violation of any regulation can give rise to a valid false claim. *See, e.g.*, Am. Compl. ¶¶ 66, 77, 108, 137, 170, 234, 454. But the FCA "does not adopt such an extraordinarily expansive view of liability." *Escobar*, 136 S. Ct. at 2004 ("[I]f the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material.").

Relator's only attempt to plead materiality is the bare statement that NAF's certifications of compliance were "material to the Government's decision to insure

NAF-originated loans and to pay out subsequent claims for insurance." *See* Am. Compl. ¶¶ 25, 118, 164, 484, 493. But such conclusory statements are deficient under *Escobar*. *See Escobar*, 136 S. Ct. at 2003 ("A misrepresentation cannot be deemed material merely because the Government designates compliance . . . as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.").

Relator's reliance on distinguishable case law to support her argument—that "violated regulations are material to HUD's decision to insure the loans"—is also unavailing. Opp. 18. Relator relies on *Quicken,* a non-controlling case that runs afoul of *Escobar*. *U.S. v. Quicken Loans Inc.*, 239 F. Supp. 3d 1014, 1040 (E.D. Mich. 2017). Ignoring *Escobar's* materiality guideposts, the *Quicken* court held that, because a loan-level certification of compliance with all FHA regulations, rules, and other requirements is required to endorse each loan for FHA insurance, the loan-level "certification *requirement* is material[.]" *Id.* at 1040 (emphasis added). This broad reading of the FCA's materiality element requires strict compliance with any FHA regulation, rule, or guidance, and cannot be squared with *Escobar*. *Compare id.* (concluding that the "certification requirement is material" because "the existence of a lender's certification to [all] FHA requirements is a prerequisite to the endorsement of FHA insurance.") *with Escobar*, 136 S. Ct. at 2004 ("if the Government required contractors to aver their compliance with the entire U.S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. The False Claims Act does not adopt such an extraordinarily expansive view of liability.").[3] *TXL*, *Americus*, and *Wells Fargo* are also

---

[3] Relator also relies on *Thrower*, which similarly misapplied *Escobar*. *See Thrower*, 2018 U.S. Dist. LEXIS 144648, at *29-30 ("Academy's participation in the DE program and therefore its ability to endorse loans and make claims on them was conditioned on Academy's annual certification. Likewise, a loan-level

inapposite to the determination of materiality in the present case. *U.S. v. TXL Mortg. Corp.*, No. 15-1658, 2016 U.S. Dist. LEXIS 127594 (D.D.C. Sept. 20, 2016) (considering a motion for default judgment and failing to specifically examine the materiality of regulatory requirements); *U.S. v. Americus Mortg. Corp.*, No. 4:12-cv-02676, 2014 U.S. Dist. LEXIS 121547 (S.D. Tex. Aug. 29, 2014) (offering no meaningful analysis of the FCA's materiality requirement); *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616-20 (S.D.N.Y. 2013) (decided prior to *Escobar* and devoting barely a paragraph to the issue of materiality).

Relator also incorrectly claims that "*Escobar* is not instructive in a promissory fraud context." Opp. 18. But *Escobar* is the seminal case regarding the definition of materiality under the FCA. As promissory fraud is a theory under the FCA, and materiality is a requirement for FCA liability, *Escobar* undoubtedly applies to promissory fraud FCA cases.

Finally, the appropriate inquiry is not whether the *certification* of compliance itself is material to a participant's eligibility, but whether the *falsity* of the defendant's representation is material to the Government's payment decision. *See, e.g., Escobar*, 136 S. Ct. at 2003 ("a *misrepresentation* about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision") (emphasis added); *id.* at 2002 (weighing the "effect on the likely or actual behavior of the recipient of the alleged misrepresentation"); *United States ex rel. Kelly v. Serco*, 846 F.3d 325, 333 (9th Cir. 2017) (asking whether the Government relied on specific reporting from the defendant and whether alleged omissions therein were material); *Campie,* 862 F.3d

---

certification was required for individual loans to be endorsed." (internal citation omitted)). *Thrower* also found that it was "highly plausible" that the violations at issue were material to HUD's decision to insure loans without citing any factual basis alleged in the complaint supporting such a finding. *Id.* at *31.

at 904-07 (weighing whether "violations," rather than certifications, were material). Here, Relator has failed to plead that any misrepresentation or omission by NAF was material to the Government's payment decision.

## VI. Relator Fails to Adequately Plead Scienter

In addition to the heightened fraudulent intent element for promissory fraud, Relator also fails to plausibly allege that NAF (1) knew of the alleged regulatory violations prior to certification *and* (2) knew that compliance with those requirements was material to the Government's decision to pay claims. As to the first prong, Relator fails to tie her assertions about regulatory violations to a specific misrepresentation in a certification and an associated claim for payment, and therefore cannot establish knowledge. *See* MTD 17-18.

Furthermore, while Relator claims that her allegations are "directly in line" with those deemed sufficient by other courts, such as *Wells Fargo* and *Quicken*, these cases are distinguishable. Opp. 21. The Court in *Wells Fargo* considered allegations that "set [] forth in detail" a "reckless origination scheme," including ten examples of insurance claims as a result of the scheme. *Wells Fargo*, 972 F. Supp. 2d at 617. Notably, the Government alleged, in detail, that Wells Fargo "knew, through monthly reports, that it was originating loans that materially violated HUD requirements and intentionally disregarded [those] reports[.]" *Id*. at 619. No such allegations are present here. Similarly, in *Quicken*, the Government presented ten specific examples of false claims that were submitted to HUD to support allegations that Quicken engaged in a "fraudulent scheme" carried out across four specific practice areas. *Quicken*, 239 F. Supp. 3d at 1023-24.

Again, no such detailed allegations exist in this case. Relator instead relies upon the general statements of low-level employees and a few managers, but the FCA does not permit such a broad construction of knowledge. *See United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274 (D.C. Cir. 2010) ("[U]nder the

FCA, 'collective knowledge' provides an inappropriate basis for proof of scienter because it effectively imposes liability, complete with treble damages and substantial civil penalties, for a type of loose constructive knowledge that is inconsistent with the Act's language, structure, and purpose.").

Finally, as to the second prong, Relator's assertion—that "NAF's annual and loan-level certifications were necessary to participate in the DE and VA Programs and submit loans for government insurance, and as NAF undisputedly did certify its compliance, join the programs, and submit loans under the programs, it knew that such compliance was absolutely necessary to do so and thus was material to the government" (Opp. 21)—is conclusory and fails to satisfy Rule 8(a).

Relator's argument fails for the same reason as does her overbroad materiality theory. *See supra* § V. NAF's knowledge of the mere existence of certifications, which contain only general certifications—or of the "importance" attached to those certifications—cannot alone plausibly show that NAF knew that perfect compliance therewith was required to obtain payment. Relator's far-reaching standard is blatantly inconsistent with *Escobar's* guideposts, which consider knowledge of HUD's and VA's stated or actual decisions to pay or not to pay claims in light of noncompliance with specific statutory, regulatory, or contractual requirements.

**VII.  Relator Does Not Satisfy 9(b) as to Any of Her Fraudulent Schemes**

Relator has failed to offer sufficient factual allegations to support her alleged fraudulent schemes. Relator's Opposition only offers a summary of her allegations, but simply stating that she adequately pled something does not make it so. *See generally* MTD; *see Lizza*, 1 F. Supp. 3d at 1121 ("[S]peculation and conclusory allegations fall short of the specificity required by Rule 9(b).").

Relator also cites to *Quicken* and other cases in support of her argument that she adequately pled her case. Opp. 22-25. However, the cases that Relator cites

are easily distinguishable and involve far more detailed factual allegations. *Quicken*, 239 F. Supp. 3d at 1024 ("The complaint then provides ten specific examples of false claims that were submitted to HUD, all of which fall within one of the following four practices Quicken used to carry out its scheme[.]"); *United States of America v. Wells Fargo*, No. 1:12-cv-07527, ECF No. 71 (S.D.N.Y. 2013), at 52-56 (alleging details regarding a specific list of defaulted loans for which *Wells Fargo* submitted—or caused to be submitted—false claims and received FHA insurance payments) (Govt.'s Second Am. Compl.); *United States ex rel. Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 680-81 (9th Cir. 2018) (alleging significant firsthand details of the fraudulent scheme unfolding).[4] Here, Relator has not pled any such information.

## VIII. Relator Fails to Proffer Factual Allegations Concerning VA Loans

Relator's FCA claims as they relate to VA loans warrant dismissal because she does not proffer *any* factual allegations specific to VA loans. Nor has she provided any "reliable indicia" of the submission of false claims on VA loans. Relator argues that she adequately alleged fraud by stating that NAF acted unlawfully in pushing both "unqualified FHA and VA loans through for endorsement," and listing certain "VA requirements that NAF's particular misconduct [allegedly] violates." Opp. 17. These are conclusory assertions with no supporting factual allegations. Relator has failed to satisfy Rule 9(b)'s rigorous pleading standard, and her FCA claims as to VA loans require dismissal.

## CONCLUSION

For the foregoing reasons and those stated in NAF's Motion to Dismiss, Relator's Amended Complaint fails to state a claim for relief under the FCA and should be dismissed.

---

[4] Relator also cites *Americus*, 2013 U.S. Dist. LEXIS 128968, at *6. *See* Opp. 25. However, *Americus* is non-controlling, out-of-circuit precedent that offers no meaningful analysis of the Rule 9(b) requirement.

Dated:  June 24, 2019

Respectfully submitted,  **WEINER BRODSKY KIDER PC**

/s/ Mitchel H. Kider
Mitchel H. Kider (CA Bar No. 116479)
Joel A. Schiffman (CA Bar No. 90138)
Timothy P. Ofak (*Pro Hac Vice*)
Lindsay L. Buchanan (*Pro Hac Vice*)
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Tel:  (202) 628-2000
Facsimile:  (202) 628-2011
Email: kider@thewbkfirm.com
       schiffman@thewbkfirm.com
       ofak@thewbkfirm.com
       buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**

/s/ Joshua A. Rosenthal
Joshua A. Rosenthal (CA Bar No. 190284)
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Tel:  (707) 570-2200
Facsimile:  (510) 832-2945
Email:  jrosenthal@mhlawcorp.com

*Counsel for Broker Solutions, Inc.
d/b/a New American Funding*

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Reply In Support of Defendant's Motion to Dismiss
Case No. 3:19-cv-01630-PSG

13

# **CERTIFICATE OF SERVICE**

I certify that, on this 24th day of June, 2019, I caused one copy of the foregoing Defendant's Reply in support of its Motion to Dismiss the Amended Complaint to be served on all parties and counsel of record via the Court's CM/ECF system.

/s/ Mitchel H. Kider
Mitchel H. Kider