**WEINER BRODSKY KIDER PC**
Mitchel H. Kider, CA Bar No. 116479
Joel A. Schiffman, CA Bar No. 90138
Timothy P. Ofak (*Admitted Pro Hac Vice*)
Lindsay L. Buchanan (*Admitted Pro Hac Vice*)
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone: 202.628.2000
Facsimile: 202.628.2011
Email: kider@thewbkfirm.com
       schiffman@thewbkfirm.com
       ofak@thewbkfirm.com
       buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**
Joshua A. Rosenthal, CA Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: 707.570.2200
Facsimile: 510.832.2945
Email: jrosenthal@mhlawcorp.com

*Attorneys for Defendant Broker Solutions, Inc.*
*d/b/a New American Funding*

E-FILED 11/4/19

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* MALOU TUTANES-LUSTER,<br><br>Relator,<br><br>v.<br><br>BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING,<br><br>Defendant. | Civil Action No. 19-cv-01630-PSG-JPR<br><br>**STIPULATED [PROPOSED] ORDER RE: DISCOVERY OF ELETRONICALLY STORED INFORMATION**<br><br>**District Judge:** Phillip S. Gutierrez<br>**Courtroom:** 6A |

## 1.   PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

## 2.   COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.  The parties agree that nothing in this Order alters or amends the parties' respective rights and obligations under the Federal Rules of Civil Procedure.

## 3.   PRESERVATION

The parties agree that preservation of potentially relevant ESI will be reasonable and proportionate.

## 4.   SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery, and filter out ESI that is not subject to discovery.  If necessary, such agreed-upon methods may be appended to this Order by consent of the parties.

Nothing in this Order prevents the parties from using technology assisted review and other techniques insofar as their use improves the efficacy of discovery. The parties agree that the efficacy of discovery can be improved by using additional techniques to reduce and cull non-relevant documents, including, but not limited to, global and custodial email deduplication, removal of non-relevant imbedded images in emails, removal of non-relevant domains, email threading, and use of near duplication technologies.

Nothing in this Order shall require that either party obtain the other party's consent to any particular type of search or review method.  Nothing in this Order requires

the disclosure of counsel's legal impressions concerning the relevancy or non-relevancy of a particular document, or a set of documents, and nothing in this Order shall be construed as waiver of right to object to disclosure on the basis of any privilege.

Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive documents of which it is aware.

    a.    Search Terms:

        1.    The parties agree that the use of keyword searches may aid in the search for discoverable ESI, and also reduce the burden associated with such searches. The parties agree that search terms will most likely be applied to email custodians, but that other forms of ESI may warrant the use of search terms. The parties further recognize that the procedures herein are generally meant to apply to large scale ESI searches, and may not be appropriate for narrow searches utilized to find particular ESI in response to a document request.

        2.    Prior to implementing email search terms (or searching for other large scale ESI), the producing party will provide a list of proposed search terms to the requesting party. The parties will meet and confer regarding any additional terms proposed by the requesting party in an attempt to reach an agreed upon list of search terms. Whether or not a search term list is agreed upon, the producing party will provide a search term hit list or hit report reflecting the proposed search terms. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be

returned by using the proposed search term list (including families).

3. The producing party may raise any objections to specific search terms that would otherwise be available under the Federal Rules of Civil Procedure. If the producing party disputes a specific term as being overly broad, the producing party may choose to review a statistically valid sample of documents from that term to determine if the burden of reviewing the documents returned by the term is proportionate to the needs of the case. For this review, the producing party should endeavor to use a benchmark of a 95% confidence level, with an error rate of 2.5%. The parties may confer about modifying the sampling rate if a party feels a different protocol is warranted. The producing party agrees to produce responsive documents from that review so that the parties can make an informed decision regarding modifications to the specific term in dispute. The parties agree that nothing in this Order requires the aforementioned review to be undertaken, unless the producing party so chooses. The parties further agree that nothing in this Order precludes the producing party from raising other arguments or to use other methods to object to the burden of a particular search term.

4. If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties may submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance, burden, or any other issue associated with the search terms in dispute. Such disputes shall be submitted to the court within 14 days of the parties agreeing they cannot resolve the issue amongst themselves. If no such letter is filed with the Court, the producing party may utilize the terms it proposed.

b.  Technology Assisted Review:

The producing party may utilize technology assisted review, regardless of whether the parties agree to a protocol. After completing the process above and prior to using predictive coding/technology-assisted-review for the purpose of identifying or culling the documents to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives. This discussion will include:

1. Whether any culling measures were taken prior to the application of TAR. If key terms are used, then the protocol above would apply to that part of the process; and

2. The measures taken to check the quality of the computer decisions. The parties agree that one component of the quality control process will be to review a statistically random sample to validate the computer decision by reviewing documents that the computer decision has determined to be non-responsive (Null Set). The size of the statistically random sample should be calculated by using a confidence level of 95% and a margin of error of 2.5%. The parties agree that this confidence level and margin of error may be adjusted upon conference among the parties, if the circumstances so warrant. If responsive documents are found during the Null Set review, the producing party agrees to: 1) produce the responsive documents in the normal course of document review and production; and 2) recode the documents as responsive within the training set to further train the computer and statistically validate the computer decision, unless doing so would be cost prohibitive and/or not substantially improve the output of the computer decision. The parties may also confer on

additional means to address issues found in the Null Set, such as whether targeted key word searches would cure any apparent deficiencies.

3. The party employing TAR should endeavor to obtain a 75% stabilization rate for its process, meaning that of a hundred random documents sampled from the reviewable set, 75% would be accurately coded by the computer. If the 75% stabilization rate is not reasonably achievable, the parties agree to meet and confer to adjust this number, or adjust or modify the search methods in a manner that is proportional to the needs the case.

## 5. PRODUCTION FORMATS

The parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents as set forth in Appendix A.

The parties agree not to degrade the searchability of documents as part of the document production process. The parties also recognize that in some instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

A producing party may deduplicate a production vertically (i.e., within individual custodians) or horizontally (i.e., across different custodians), provided that

horizontal deduplication will necessitate the inclusion of information for custodians for which the documents have been deduplicated (as specified in the technical production specification attached).

The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**6.   PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI where necessary. Phasing may include, among other things, the prioritized production of: documents most likely to be most responsive to the request, documents subject to a less burdensome search and review process, and documents less likely to be privileged. Following the initial production, the parties will continue to prioritize the order of subsequent productions, and agree that privilege logs produced pursuant to Federal Rule of Civil Procedure 26(b)(5) may be the last phase of production of ESI in response to a particular request or set of requests.

**7.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, through Counsel of Record.

Dated: October 25, 2019

**GRANT & EISENHOFER P.A.**

 /s/ Laina M. Herbert
Daniel L. Berger, *Pro Hac Vice*
Kyle J. McGee, *Pro Hac Vice*
Laina M. Herbert, *Pro Hac Vice*
123 Justison Street
Wilmington, DE  19801
Telephone:  (302) 622-7000
Emails:  dberger@gelaw.com
           kmcgee@gelaw.com
           lherbert@gelaw.com

**CUTTER LAW PC**
C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
401 Watt Avenue
Sacramento, CA 95864
Telephone:  (916) 290-9400
Emails:  bcutter@cutterlaw.com
           jparker@cutterlaw.com

**THOMAS & SOLOMON LLP**
J. Nelson Thomas, *Pro Hac Vice*
Jonathan W. Ferris, *Pro Hac Vice*
Michael J. Lingle, *Pro Hac Vice*
Annette M. Gifford, CA Bar 270777
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
amgifford@gmail.com
*Attorneys for Relator Malou Tutanes-Luster*

Dated: October 25, 2019

**WEINER BRODSKY KIDER PC**

 /s/ Timothy P. Ofak
Mitchel H. Kider, CA Bar No. 116479
Joel A. Schiffman, CA Bar No. 90138
Timothy P. Ofak, *Pro Hac Vice*
Lindsay L. Buchanan, *Pro Hac Vice*
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone: (202) 628-2000
Email:  kider@thewbkfirm.com
           schiffman@thewbkfirm.com
           ofak@thewbkfirm.com
           buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**
Joshua A. Rosenthal, CA Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA  95403
Telephone:  (707) 570-2200
Email:  jrosenthal@mhlawcorp.com

*Attorneys for Defendant Broker Solutions, Inc.*
*d/b/a New American Funding*

# Appendix A

## Technical Specifications for Production

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi.
- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).
- Media may be delivered on CDs, DVDs External USB hard drives, or via other secured electronic methods such as FTP. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).
- Each delivery should be accompanied by an image cross reference file that contains document breaks.
- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator, ASCII character 020: "¶"

    Quote Character, ASCII character 254 "þ"

    Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately

formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference field should also be included in the delimited text file populated with the relative path to the text file for that document on the production media.

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

    Beginning Production Number

    Ending Production Number

    Beginning Attachment Range

    Ending Attachment Range

    Custodian

    Other Custodian (custodians who had duplicate copies of the

| | |
|---|---|
| 1 | document but were deduplicated using horizontal deduplication) |
| 2 | Confidentiality Designation |
| 3 | Original Location Path |
| 4 | Email Folder Path |
| 5 | Document Type |
| 6 | File Extension |
| 7 | Application |
| 8 | File Name |
| 9 | Title (Office Property) |
| 10 | File Size |
| 11 | MD5 Hash Value |
| 12 | Date Last Modified (Format: MM/DD/YYYY) |
| 13 | Time Last Modified |
| 14 | Date Created (Format: MM/DD/YYYY) |
| 15 | Time Created |
| 16 | Date Last Accessed (Format: MM/DD/YYYY) |
| 17 | Time Last Accessed |
| 18 | Date Sent (Format: MM/DD/YYYY) |
| 19 | Time Sent |
| 20 | Date Received (Format: MM/DD/YYYY) |
| 21 | Time Received |
| 22 | Author (either email or lose file) |
| 23 | Recipients |
| 24 | CC |
| 25 | BCC |
| 26 | Email Subject |
| 27 | Path to Native File |
| 28 | |

WEINER BRODSKY KIDER PC
A Professional Corporation formed in the District of Columbia

Path to Extracted Text File

Conversation Index

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- The parties will confer on the appropriate manner to address foreign language text files, if such files become an issue in the litigation.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to tiff images in accordance with the above protocol).

- The parties recognize that this litigation may involve the production of substantial number of residential loan files that are often already stored in PDF or other imaged formats, and that re-processing those files into TIFF format with separate text files in the process above may impose significant costs. The parties agree that the standards above may require modification in the event residential loan files are produced on a large scale, and will confer on appropriate and proportional methods of production, if a party deems that such a modification is warranted.

- Notwithstanding the language of Federal Rule of Civil Procedure 34,

upon review the requesting party may ask for certain other documents and\or databases that were initially produced in their petrified (tiff or pdf) format to be produced in their native format in the event that the petrified version is not reasonably usable. If this is the case, the requesting party will submit a list of bates numbers identifying the documents. The documents should be produced in their unaltered native format with an accompanying text delimited text file (using the delimiters above) that contains the following fields:

    Beginning Production Number
    Ending Production Number
    Beginning Attachment Range
    Ending Attachment Range
    Path to Native File
    MD5 Hash Value

PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Generally, databases should be produced in a mutually agreeable data exchange format. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information. To the extent a database contains responsive and non-responsive information, only potentially responsive information needs to be disclosed:

    Database Name
    Type of Database
    Software Platform
    Software Version
    Business Purpose

1. A List of Standard Reports
2. Database Owner or Administrator's Name
3. Field List
4. Field Definitions (including field type, size and use)

Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

**[~~PROPOSED~~] ORDER**

PURSUANT TO THE FOREGOING AGREEMENT, AND FOR GOOD CAUSE SHOWN, THE [PROPOSED] ESI PROTOCOL FILED BY THE PARTIES ON OCTOBER 25, 2019 IS APPROVED.

Dated: 11/1/19

**PHILIP S. GUTIERREZ**
HON. PHILIP S. GUTIERREZ
United States District Judge