**CUTTER LAW PC**
C. Brooks Cutter, SBN 121407
John R. Parker, Jr., SBN 257761
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 290-9400
Emails: bcutter@cutterlaw.com
        jparker@cutterlaw.com

**GRANT & EISENHOFER P.A.**
Daniel L. Berger *Pro Hac Vice*
Kyle J. McGee, *Pro Hac Vice*
Laina M. Herbert, *Pro Hac Vice*
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Emails: dberger@gelaw.com
        kmcgee@gelaw.com
        lherbert@gelaw.com

**THOMAS & SOLOMON LLP**
J. Nelson Thomas, *Pro Hac Vice*
Jonathan W. Ferris, *Pro Hac Vice*
Michael J. Lingle, *Pro Hac Vice*
Annette M. Gifford, CA Bar 270777
693 East Avenue
Rochester, New York 14607
Telephone.: (585) 272-0540
Emails:
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
amgifford@gmail.com

*Attorneys for Relator*

**WEINER BRODSKY KIDER PC**
Mitchel H. Kider, CA Bar No. 116479
Joel A. Schiffman, CA Bar No. 90138
Timothy P. Ofak, *Pro Hac Vice*
Lindsay L. Buchanan, *Pro Hac Vice*
1300 19th Street, NW Fifth Floor
Washington, DC 20036
Telephone: (202) 628-2000
Email: kider@thewbkfirm.com
        schiffman@thewbkfirm.com
        ofak@thewbkfirm.com
        buchanan@thewbkfirm.com

**MEDLIN & HARGRAVE, PC**
Joshua A. Rosenthal, CA Bar No. 190284
3562 Round Barn Circle, Suite 212
Santa Rosa, CA 95403
Telephone: (707) 570-2200
Email: jrosenthal@mhlawcorp.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. MALOU TUTANES-LUSTER,<br><br>Relator,<br><br>v.<br><br>BROKER SOLUTIONS, INC. d/b/a NEW AMERICAN FUNDING,<br><br>Defendant. | Case No. 19-cv-01630-PSG-JPR<br><br>**FIRST AMENDED JOINT REPORT FOLLOWING FED. R. CIV. P. 26(F) CONFERENCE**<br><br>Order to Show Cause Hearing<br>**Date:** May 4, 2020<br>**Time:** 2:30 p.m. (PST)<br>**Courtroom:** 6A<br>**Judge:** The Honorable Philip S. Gutierrez |

1

In compliance with Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and the Court's Order Setting Scheduling Conference (Dkt. # 103), Relator Malou Tutanes-Luster ("Relator") and Defendant Broker Solutions, Inc. d/b/a New American Funding ("NAF" or "Defendant," and collectively with Relator, the "Parties") hereby submit their First Amended Joint Rule 26(f) Report.

Pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 26-1, an initial conference was held on August 14, 2019 to discuss each of the matters in this Joint Report. Counsel for Relator Kyle J. McGee and Laina M. Herbert, and counsel for Defendant Mitchel H. Kider and Timothy P. Ofak participated in the conference. The Parties timely filed their initial Joint Rule 26(f) Report on August 28, 2019 (Dkt. 106).

A follow-up conference was held on April 7, 2020 to discuss each of the matters herein and any adjustments that were required to the Parties' August 28, 2019 Joint Report in light of the current Coronavirus pandemic. Counsel for Relator Kyle J. McGee and Laina M. Herbert, and counsel for Defendant Timothy P. Ofak and Lindsay L. Buchanan participated. This report updates the Parties' original joint report.

# I. MATTERS TO BE ADDRESSED UNDER FED. R. CIV. P. 26(F)

## A. Nature and Basis of Case and Claims and Defenses

This is a *qui tam* action brought on behalf of the United States of America (the "United States" or the "Government") by Relator against Defendant, a certified Federal Housing Administration ("FHA") Direct Endorsement ("DE Program") lender and Veteran Affairs Home Loan Guaranty Program ("VA Program," and together with the DE Program, "Government Programs") lender permitted to underwrite and endorse eligible residential mortgage loans for government insurance, under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, seeking remedies, including treble damages and civil penalties, under the FCA.

Relator alleges that Defendant has systematically defrauded the U.S. Department of Housing and Urban Development ("HUD") and Department of Veteran Affairs ("VA") by knowingly or recklessly violating numerous mandatory, material certifications it made to those agencies. Relator alleges that Defendant's initial, annual, and loan-level certifications to HUD/FHA and VA were false or fraudulent because, at the time it made such certifications, Defendant had implemented policies and practices in violation of numerous HUD/FHA and VA requirements, including the use of commission-based compensation, the use of a management exception or override policy, the use of value appeals and other means of interfering with the property appraisal process, manipulating the inputs in the electronic underwriting system, manipulating borrower income, debt, and debt-to-income figures to increase the likelihood of approval, and failing to detect, and/or to report and correct, underwriting deficiencies uncovered in quality control audits. Relator alleges that, had HUD/FHA and VA known of these policies and practices, Defendant would not have been able to participate in the Government Programs and/or would not have obtained government insurance on loans it originated and endorsed under those Programs. Relator further alleges that at least tens of millions of dollars in claims have been paid by HUD/FHA and VA on loans endorsed by Defendant that subsequently defaulted.

NAF disputes and denies Relator's allegations that it violated U.S. Department of Housing and Urban Development ("HUD"), Federal Housing Administration ("FHA"), or Department of Veterans Affairs ("VA") requirements or otherwise engaged in any fraudulent scheme to violate the FCA.

**B.     Synopsis of Principal Factual and Legal Issues**

Relator asserts causes of action under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B), which imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly

makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." Relator's claims are proceeding under the theory of "promissory fraud," which the Ninth Circuit has recognized where a person obtains a government benefit on the basis of a fraudulent statement or a fraudulent course of conduct. *See U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1172-74 (9th Cir. 2006). In particular, the promissory fraud theory of FCA liability holds that "liability will attach to each claim submitted to the government under a contract [or benefit], when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *Hendow*, 461 F.3d at 1173 (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787 (4th Cir. 1999)). Under a promissory fraud theory of liability, "subsequent claims are false because of an *original fraud*,' which may include 'a certification or otherwise.'" *United States ex rel. Thrower v. Academy Mortgage Corp.*, 2018 WL 4053484, at *8 (N.D. Ca. Aug. 24, 2018) (quoting *Hendow*, 461 F.3d at 1173) (emphasis in original). To prevail on a promissory fraud theory of FCA liability, a relator must prove: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174.

In its July 8, 2019 Order Denying Defendant's Motion to Dismiss, this Court sustained Relator's FCA claims under the promissory fraud theory of liability. *See* Dkt. # 101.

Relator contends the key issues of material fact to be decided include: (1) whether Defendant compensated any employees, and if so which employees, on a commission basis, or a similar basis; (2) whether Defendant permitted endorsement of loans that did not meet government requirements; (3) whether Defendant's employees interfered with property appraisals; (4) whether Defendant's employees manipulated inputs in the electronic underwriting system to obtain "accept/approve"

ratings; (5) whether Defendant's employees manipulated or improperly computed borrower income in underwriting or endorsing loans; (6) whether Defendant's employees manipulated or improperly computed borrower debts or debt-to-income ratios in underwriting or endorsing loans; (7) whether Defendant's quality control functions with respect to government-insured loans were adequate; (8) the amount of damages resulting from Defendant's conduct; and (9) the number of loans Defendant endorsed for insurance under the Government Programs and the number of such loans that defaulted and resulted in claims made on the government.

NAF respectfully disputes and denies Relator's "principal factual issues," and submits that the following legal issues are in dispute: whether the Amended Complaint (1) fails to state a plausible claim against NAF under the FCA to support its allegations that the Company engaged in a broad scheme to violate FHA and VA guidelines under a promissory fraud theory of liability; (2) sufficiently pleads facts that, if proven, would establish the "falsity" element of an FCA claim, where it does not specifically allege the submission of any plausible false statements in connection with any FHA or VA certification, or any claim for FHA insurance or a VA guaranty; (3) sufficiently pleads facts that, if proven, would establish the heightened "materiality" element under the standards articulated by the United States Supreme Court in *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), where the Amended Complaint does not allege that the falsity of any certification of compliance with any specific statute, regulation, or contractual provision was material to the Government's decision to pay FHA insurance or VA guaranty claims; and (4) sufficiently pleads facts that, if proven, would establish the "scienter" element of an FCA claim under a promissory fraud theory of liability. NAF respectfully submits that the Amended Complaint does not meet any of the foregoing requirements.

### C. Additional Parties

No additional parties have been added to date. The parties reserve the right to seek to join additional parties if and when warranted by the facts and circumstances of the case.

### D. Motion Schedule

#### 1. Last Day to Hear Motions

Per the Court's Standing Order for a Jury Trial, motions *in limine* shall be filed and served no later than forty-five (45) days before trial; oppositions to motions *in limine* shall be filed and served no later than twenty-five (25) days before trial; and all replies thereto shall be filed and served no later than ten (10) days prior to trial.

#### 2. Anticipated Motions

The parties filed (i) a stipulated protective order governing disclosure of confidential information, and the Court granted that stipulation with changes on November 12, 2019 (Dkt. 114); and (ii) a joint motion for entry of an electronically stored information ("ESI") protocol, which this Court granted on November 1, 2019 (Dkt. 112).

Relator anticipates moving for summary judgment at the appropriate time.

Defendant anticipates moving for summary judgment at the appropriate time.

The parties intend to work cooperatively in resolving any discovery disputes, but anticipate that certain discovery disputes may require resolution by the Court.

### E. Possibility of Early Resolution

Pursuant to Local Rule 16-15.4, the parties believe that, at this time, mediation before a neutral mediator selected from the Central District's Mediation Panel would be the most appropriate early resolution procedure and respectfully recommend it to the Court.

The parties' position is that they should participate in such a procedure after the close of Fact Discovery, unless otherwise agreed to by the parties.

### F. Proposed Discovery Plan

#### 1. Initial Disclosures

The parties have exchanged initial disclosures pursuant to Rule 26(a)(1).

#### 2. Status of Discovery

On July 24, 2019, Relator served her first set of interrogatories and first set of requests for production of documents on Defendant. On September 13, 2019, Defendant served its objections to Relator's first set of interrogatories and first set of requests for production of documents. On November 14, 2019, Defendant served its responses and objections to Relator's first set of interrogatories. On November 22, 2019, Defendant served its objections and responses to Relator's first set of requests for production of documents.

On September 20, 2019, Defendant served its first set of requests for production of documents on Relator. On October 21, 2019, Relator served her responses and objections to Defendant's first set of document requests.

On October 15, 2019, Defendant served a Notice of Subpoena to U.S. Department of Housing and Urban Development on Relator.

On December 5, 2019, Relator served a notice of deposition pursuant to Rule 30(b)(6). This deposition was noticed for a January 2020 date but rescheduled for March 2020, and subsequently rescheduled for May 2020, in light of scheduling conflicts and initial reports concerning the Coronavirus. However, due to the current pandemic, the Parties are in the process of rescheduling it for July 2020.

On December 11, 2019, Defendant served a Notice of Subpoena to U.S. Department of Veterans Affairs on Relator.

On February 18, 2020, Relator served her second request for production of documents on Defendant. Defendant served responses and objections to these requests on March 19, 2020.

On February 18, 2020, after meeting and conferring with Defendant, Relator also served her amended first request for production of documents related to request numbers 20-23, 25-27, 30, 37, 39, 43-44, 47-49, 55-57 and 63.  Defendant served responses and objections to these requests on March 19, 2020.

On February 19, 2020, sent a *Touhy* letter to the U.S. Department of Housing and Urban Development.

On March 3, 2020, Relator sent a *Touhy* letter to the U.S. Department of Veterans Affairs.

On April 8, 2020, Relator served her third request for production of documents on Defendant.

Relator intends to notice additional fact witness depositions, and the Parties anticipate beginning depositions in July 2020.

### 3. **Discovery Subjects:**

Relator's Position:  Relator presently anticipates taking discovery into and/or has served discovery relating to:

 a. the certifications Defendant made to the HUD/FHA and/or the VA to participate in the Government Programs, including its initial certifications, annual certifications, and loan-level certifications;
 b. Defendant's communications with the HUD/FHA and/or the VA concerning the Government Programs;
 c. Defendant's underwriting files for loans submitted to the HUD/FHA and/or VA under the Government Programs;
 d. Documents or data sufficient to show or identify each loan that Defendant submitted to the HUD/FHA and/or the VA that subsequently defaulted and/or resulted in claims made on the government;

e. Documents showing all claims or requests for payment made to the government on any loan originated by Defendant under the Government Programs;

f. Documents showing all payments Defendant received from the HUD/FHA and/or the VA;

g. Documents showing all government-insured loans Defendant sold after origination;

h. Materials created or used by Defendant to train its employees in the areas of underwriting, origination, endorsement, and quality control of loans originated under the Government Programs;

i. Documents concerning each of the seven different alleged means or methods of wrongdoing described in the Amended Complaint, and the identity of each of Defendant's past and current employees involved in these seven categories of wrongdoing;

j. Defendant's knowledge of enforcement actions, consent judgments, and/or stipulations of settlement between the government and lenders accused of violating HUD/FHA or VA requirements;

k. Defendant's financial statements and reports;

l. "Conversation logs" from NAF's Encompass system;

m. Insurance policies obtained for the benefit of Defendant or its officers and/or directors, which may provide full or partial coverage for any of the claims asserted in this action;

n. Defendant's communications with any federal or state government entity or agency concerning its compliance (or lack thereof) with the HUD/FHA and/or VA regulations;

o. Defendant's organizational structure, and the key decision-makers within Defendant's organization; and

     p. Expert discovery.

**Defendant's Position:**

Defendant presently anticipates taking discovery into areas such as, but not limited to:

    a. Relator's employment with NAF;

    b. Documents and information in Relator's possession that she obtained from the Company or any of its current or former employees;

    c. Documents and information obtained from third parties concerning Relator's allegations;

    d. Communications between Relator and NAF's current and former employees; and

    e. Relator's communications with the Government concerning this lawsuit.

Defendant presently anticipates taking discovery from HUD and VA into areas such as, but not limited to:

    a. The initial, annual, and loan-level certifications;

    b. Documents and information concerning how HUD and VA determine that a certification is false, fraudulent or contains a material omission, and documents reflecting companies HUD or VA have determined submitted a certification that was false, fraudulent, or contained a material omission;

    c. Documents, information, and reviews concerning and related to NAF's origination, underwriting, and quality control practices;

    d. Documents and information concerning HUD's or VA's payment of claims in relation to Relator's seven alleged fraudulent schemes and how HUD and VA have dealt with such alleged instances of regulatory non-compliance;

e. Documents and information concerning loans originated and underwritten by NAF on which claims were paid by HUD or VA; and

f. Documents and information provided to Relator pursuant to FOIA requests.

As to Relator's request for "underwriting files for loans submitted to the HUD/FHA and/or VA under the Government Programs," NAF believes that such discovery should be limited to FHA and VA loans on which claims were paid by the government. Relator disagrees with this proposed limitation. The Parties continue to meet and confer regarding this and other discovery-related disputes in an effort to avoid motion practice.

### 4. Discovery Logistics

The parties agree that discovery shall be conducted pursuant to the Federal Rules of Civil Procedure, with any modification to default rules—including the number of interrogatories or depositions—to be agreed to by the parties if and when the need arises, and presented to this Court for resolution in any instance in which such agreement is not secured.

### 5. Proposed Schedule for Discovery, Expert Discovery, and Trial

| Event | Deadline |
| --- | --- |
| Fact discovery cutoff | December 18, 2020 |
| Opening expert reports due | March 22, 2021 |
| Rebuttal expert reports due | May 6, 2021 |
| Expert discovery cutoff | June 21, 2021 |
| Trial | December 6, 2021, or as soon thereafter as the Court's calendar permits |

**6.     Protective Order and Privilege/Work Product**

The parties agree to use the procedures set forth in Fed. R. Civ. P. Rule 26(b)(5) regarding any claims of privilege or protecting materials asserted as being for trial preparation. The parties filed a stipulated protective order governing disclosure of confidential information, and the Court granted that stipulation with changes on November 12, 2019 (Dkt. 114).

**7.     Issues Concerning Preservation of Discoverable Information**

Relator has been unable to access certain personal electronic mail files due to apparent hacking efforts by unknown third parties. To Relator's knowledge, such files do not contain discoverable information not otherwise available to Defendant.

Defendant is not presently aware of any issues concerning preservation of discoverable information.

**8.     Expert Communications**

Notwithstanding anything in the Federal Rules of Civil Procedure, the Local Rules of the Central District of California, or any other applicable rules of discovery, the parties agree that the following materials shall not be subject to discovery in this litigation: (i) draft expert reports, draft studies, draft affidavits or draft declarations; (ii) notes, outlines, and any other materials used to prepare any draft expert report; (iii) oral and/or written communications between testifying or consulting experts and his or her assistants and/or clerical or support staff and counsel regardless of the form of communication, unless such communications are relied upon as a basis for any opinions provided in any expert report or expert testimony; (iv) information, analyses, opinions, or other materials from any outside consultant or expert for the purpose of litigation, unless such information, analyses, opinions, or other materials are relied upon as a basis for any opinions provided in an expert report or expert testimony; (v) materials or information that may have been reviewed or considered, but not relied upon by the expert. Materials, communications, and other information exempt from discovery under this paragraph shall be treated as attorney-work product

privileged, but need not be logged on a privilege log. This provision does not change the existing protections for expert discovery and the exceptions thereto set forth in Fed. R. Civ. P. 26(b)(4).

### 9. Issues Related to Discovery of Electronic Information

i. The parties filed a joint motion for entry of an electronically stored information ("ESI") protocol, and this Court granted it on November 1, 2019 (Dkt. 112).

## G. Trial

Relator has made a jury demand for this case.

### 1. Pre-trial Disclosures

All pre-trial disclosures will be exchanged on or before 30 days before trial. Any objections to pre-trial disclosures will be governed by Fed. R. Civ. P. 26(a)(3)(B).

### 2. Pre-trial Conference

The Parties propose that the time for a final pre-trial conference shall be not later than 21 days before trial is set to commence at 2:30 p.m. (PST).

### 3. Memoranda of Contentions of Fact and Law, Joint Witness List and Joint Exhibit List

Per the Court's Standing Order for a Jury Trial, the Memoranda of Contentions of Fact and Law, Joint Witness List and Joint Exhibit List shall be filed twenty-one (21) days before the Final Pre-Trial Conference.

### 4. Pre-Trial Conference Order

Per the Court's Standing Order for a Jury Trial, the proposed Pre-Trial Conference Order shall be lodged seven (7) calendar days before the Pre-Trial Conference.

### 5. Jury Instructions/Special Verdict Forms

Per the Court's Standing Order for a Jury Trial: (a) thirty-five (35) days before trial, Relator shall serve Relator's proposed jury instructions and special verdict form

on Defendant; (b) twenty-eight (28) days before trial, Defendant shall serve on Relator Defendant's objections to Relator's instructions together with any additional instructions Defendant intends to offer; (c) twenty-one (21) days before trial, Relator shall serve on Defendant Relator's objections to Defendant's instructions; (d) twenty-one (21) days before trial, counsel shall meet and confer to come to an agreement on the proposed jury instructions; (e) sixteen (16) days before trial, counsel shall file with the Court a joint set of jury instructions on which there is an agreement, and each party shall file its proposed jury instructions which are objected to by the other party, accompanied by points and authorities in support of those instructions, as described in more detail in the Court's Standing Order for a Jury Trial.

### 6. Trial Exhibits

Counsel shall prepare their trial exhibits per the Court's Standing Order for a Jury Trial, and submit the items required by the Court's Standing Order for a Jury Trial to the Courtroom Deputy Clerk on the first day of trial.

### 7. Trial Counsel

Relator's trial counsel will be Grant & Eisenhofer P.A., including the current attorneys of record: Daniel L. Berger, Kyle J. McGee, and Laina M. Herbert.

Defendant's trial counsel will be Weiner Brodsky Kider PC, including the current attorneys of record: Mitchel H. Kider, Timothy P. Ofak, and Lindsay L. Buchanan.

## II. MATTERS TO BE ADDRESSED UNDER L.R. 26-1

### A. Complexity

The parties agree that this is not a complex case and therefore the Manual for Complex Litigation should not be relied upon.

**B.    Motion Schedule**

    **1.    Non-Dispositive and Dispositive Motions**

The parties propose that non-dispositive motions may be filed at any time during the Fact Discovery and Expert Discovery periods. The parties propose that the deadline for filing dispositive pre-trial motions shall be 45 days after the close of expert discovery.

**C.    ADR**

*See supra* Section I.E.

**D.    Trial Estimate**

Relator estimates a 10-day trial. Defendant estimates up to a six-week trial.

Dated: April 21, 2020

| | |
|---|---|
| **GRANT & EISENHOFER P.A.**<br><br> */s/ Kyle J. McGee*<br>Daniel L. Berger, *Pro Hac Vice*<br>Kyle J. McGee, *Pro Hac Vice*<br>Laina M. Herbert, *Pro Hac Vice*<br>123 Justison Street<br>Wilmington, DE 19801<br>Telephone: (302) 622-7000<br>Emails: dberger@gelaw.com<br>         kmcgee@gelaw.com<br>         lherbert@gelaw.com<br><br>**CUTTER LAW PC**<br>C. Brooks Cutter, SBN 121407<br>John R. Parker, Jr., SBN 257761<br>401 Watt Avenue<br>Sacramento, CA 95864<br>Telephone: (916) 290-9400<br>Emails: bcutter@cutterlaw.com<br>         jparker@cutterlaw.com<br><br>**THOMAS & SOLOMON LLP**<br>J. Nelson Thomas, *Pro Hac Vice*<br>Jonathan W. Ferris, *Pro Hac Vice*<br>Michael J. Lingle, *Pro Hac Vice*<br>Annette M. Gifford, CA Bar 270777<br>693 East Avenue | **WEINER BRODSKY KIDER PC**<br><br> */s/ Mitchel H. Kider*<br>Mitchel H. Kider, CA Bar No. 116479<br>Joel A. Schiffman, CA Bar No. 90138<br>Timothy P. Ofak, *Pro Hac Vice*<br>Lindsay L. Buchanan, *Pro Hac Vice*<br>1300 19th Street, NW Fifth Floor<br>Washington, DC 20036<br>Telephone: (202) 628-2000<br>Email: kider@thewbkfirm.com<br>        schiffman@thewbkfirm.com<br>        ofak@thewbkfirm.com<br>        buchanan@thewbkfirm.com<br><br>**MEDLIN & HARGRAVE, PC**<br>Joshua A. Rosenthal, CA Bar No. 190284<br>3562 Round Barn Circle, Suite 212<br>Santa Rosa, CA 95403<br>Telephone: (707) 570-2200<br>Email: jrosenthal@mhlawcorp.com<br><br>*Attorneys for Defendant Broker Solutions, Inc. d/b/a New American Funding* |

Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
jferris@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
amgifford@gmail.com

*Attorneys for Relator Malou Tutanes-Luster*